**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JARRETT JENKINS, on behalf of himself and all others similarly situated,<br><br>                           Plaintiff,<br><br>    - against –<br><br>NATIONAL GRID USA,<br>NATIONAL GRID NORTH AMERICA INC.,<br>NATIONAL GRID GENERATION LLC,<br>NEW ENGLAND POWER COMPANY,<br>MASSACHUSETTS ELECTRIC COMPANY,<br>THE NARRAGANSETT ELECTRIC COMPANY,<br>NIAGARA MOHAWK POWER CORPORATION,<br>NIAGARA MOHAWK HOLDINGS, INC.,<br>BOSTON GAS COMPANY,<br>KEYSPAN GAS EAST CORPORATION,<br>KEYSPAN CORPORATION,<br>THE BROOKLYN UNION GAS COMPANY,<br>BRITISH TRANSCO FINANCE INC. AND<br>NATIONAL GRID PLC,<br><br>                           Defendants. | Case No. 15-cv-1219<br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Jarrett Jenkins, by and through his counsel, on behalf of himself and on behalf of

the Automatic Dialer Class and Artificial Voice Class (collectively the "Classes") defined herein,

alleges based upon personal knowledge as to Plaintiff's own acts, and upon information and belief

as to all other matters based upon the investigations conducted by and through Plaintiff's attorneys,

against Defendants National Grid USA, National Grid North America, Inc., National Grid

Generation LLC, New England Power Company, Massachusetts Electric Company, The

Narragansett Electric Company, Niagara Mohawk Power Corporation, Niagara Mohawk Holdings,

Inc., Boston Gas Company, Keyspan Gas East Corporation, Keyspan Corporation, The Brooklyn

Union Gas Company, British Transco Finance Inc. and National Grid PLC and their subsidiaries operating in the United States (collectively "National Grid" or "Defendants"), for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq*.

## **NATURE OF THE ACTION**

1.     Plaintiff brings this action on behalf of himself and Classes of consumers who received unauthorized and unsolicited calls from debt collectors made to Plaintiff's and Class members' cellular telephone numbers.  The debt collectors were retained by Defendants and used an automated telephone dialing system and/or automated or prerecorded voice to call Class members' cellular telephone numbers.  That conduct violates the TCPA.

2.     Neither Plaintiff nor the other members of the Classes provided prior express consent to have Defendants or their debt collectors to make telephone calls to Plaintiff's and Class members' cellular telephone numbers.

3.     National Grid is directly liable and/or vicariously liable to Plaintiff and the Classes for its violations of the TCPA and for the TCPA violations committed by debt collectors they retained to contact Plaintiff and the Class or their cellular telephone numbers.

4.     Plaintiff and the Classes were injured as a direct and proximate result of Defendants' violations of the TCPA and are entitled to recover their actual damages and/or the statutory remedies provided by the TPCA.  The actual harm suffered by Plaintiff and the Classes include the statutory remedies and the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls and the monies paid to their wireless carriers for the receipt of such telephone calls.

5.     Because Defendants' unlawful acts were and are knowing and willful, Plaintiff

and the Classes are entitled to additional remedies and damages.

6.      Plaintiff and the Classes further seek to permanently enjoin Defendants' violations of the TCPA.

## JURISDICTION AND VENUE

7.      Plaintiff invokes the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for all civil actions arising under the laws of the United States, and pursuant to 47 U.S.C. §227(b)(3)).

8.      Plaintiff further invokes the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act ("CAFA").

9.      This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged herein took place in New York and in this District.  Multiple Defendants are authorized to do business in New York and each have sufficient minimum contacts with New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under 28 U.S.C. §1391.

## THE PARTIES

11.     Plaintiff is domiciled in, and is a citizen of, West Hempstead, New York.

12.     Defendants do business in the United States generally under the trade name National Grid and have brought lawsuits in the federal and New York State courts under the trade name and "d/b/a" moniker National Grid.

13.     Defendant National Grid PLC is a company organized in the United Kingdom. According to its Forms 20-F filed with the United States Securities and Exchange Commission

("SEC"), it maintains its principle executive offices in London, England, but owns, operates and controls subsidiaries providing gas and electricity to customers in the United States, and elsewhere.

14.     As represented in National Grid PLC's 2014 Form 20-F filed with the SEC, "The Company's agent in the United States is National Grid USA," located at 40 Sylvan Road, Waltham, MA 02451.

15.     According to Defendants' United States website, National Grid is "an international electricity and gas company based in the UK and northeastern US.  We play a vital role in connecting millions of people safely, reliably and efficiently to the energy they use."  Source:   http://www2.nationalgrid.com/about-us/ (last visited February 25, 2015).

16.     Defendants state on their United States website:

> **National Grid (LSE:  NG; NYSE:  NGG) is an electricity and gas company that connects consumers to energy sources through its networks.  …**  In the northeast US, we connect more than seven million gas and electric customers to vital energy sources, essential for our modern lifestyles.  …  National Grid delivers electricity to approximately 3.4 million customers in Massachusetts, New York and Rhode Island. We own over 4,000 megawatts of contracted electricity generation, providing power to over one million LIPA customers. We are the largest distributor of natural gas in the northeast US, serving approximately 3.6 million customers in New York, Massachusetts and Rhode Island.

Source:  http://www2.nationalgrid.com/about-us/what-we-do/ (last visited February 25, 2015).

17.     Defendant National Grid PLC describes its United States operations in its 2014 Form 20-F as follows:

> What we do
>
> We own and operate electricity distribution networks in upstate New York, Massachusetts, and Rhode Island.   Through these networks we serve

4

approximately 3.4 million electricity consumers in New England[1] and upstate New York.

Our US gas distribution networks provide services to around 3.6 million consumers across the northeastern US, located in service territories in upstate New York, New York City, Long Island, Massachusetts and Rhode Island. We added 31,145 new gas heating customers in these areas in 2013/14.

We own and operate an electricity transmission system of approximately 14,328 kilometres (8,903 miles) spanning upstate New York, Massachusetts, Rhode Island, New Hampshire and Vermont, operating 169 kilometres (105 miles) of underground cable and 521 substations, with a further 12 planned.

We also own and operate 50 fossil fuel-powered units on Long Island that together provide approximately 3,800 MW of power under contract to LIPA. A 15 year Power Supply Agreement (PSA) with LIPA was renewed in May 2013 for 3,634 MW of capacity, comprising eight dual fuel (gas/oil-fired) steam units at three sites, 11 dual fuel combustion turbine units, and 27 oil-fired combustion turbine/ diesel units. Under a separate contract with LIPA, four dual fuel combustion turbine units provide an additional 160 MW of capacity.

We are responsible for billing, customer service and supply services. We forecast, plan for and procure approximately 15 billion standard cubic metres of gas and 32 TWh of electricity annually across three states.

18.    As represented by defendant National Grid PLC in its Forms 20-F, its subsidiaries are, "defined as an entity controlled by the Company [National Grid PLC]. Control is achieved where the Company has the power to affect the returns of an entity to which it is exposed or to which it has rights."

19.    A complete list of Defendant National Grid PLC's subsidiaries annexed to its 2014 Form 20-F is annexed hereto as Exhibit 1. That Form 20-F lists defendant National Grid PLC's "Principal subsidiary undertakings" whose operating results are reported in its consolidated financial statements as of March 31, 2014, and which are wholly-owned by

---

[1]       National Grid defines "New England" in this Form 20-F as, "a region within the northeastern US that includes the states of Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island and Vermont. National Grid's New England operations are primarily in the states of Massachusetts and Rhode Island."

National Grid PLC.  Among those "principal subsidiary undertakings" of defendant National Grid PLC incorporated in the United States are the following named defendants:

| Name: | Principle Activity: |
|---|---|
| (a).  New England Power Company | Transmission of electricity |
| (b).  Massachusetts Electric Company | Distribution of electricity |
| (c).  The Narragansett Electric Company | Transmission and distribution of electricity |
| (d).  Niagara Mohawk Power Corporation | Transmission of electricity and distribution of electricity and gas |
| (e).  Boston Gas Company | Distribution of gas |
| (f).  National Grid Generation LLC | Generation of electricity |
| (g).  Keyspan Gas East Corporation | Distribution of gas |
| (h).  The Brooklyn Union Gas Company | Distribution of gas |
| (i).  National Grid USA | Holding Company |
| (j).  Niagara Mohawk Holdings, Inc. | Holding Company |
| (k).  Keyspan Corporation | Holding Company |
| (l).  National Grid North America Inc. | Holding Company |
| (m).  British Transco Finance Inc. | Holding Company |

20.     Defendants National Grid Generation LLC, Keyspan Corporation, Keyspan Gas East Corporation, Niagara Mohawk Holdings, Inc., Niagara Mohawk Power Corporation and The Brooklyn Union Gas Company are registered with the New York Secretary to do business in New York.

21.     National Grid PLC owns and operates an electricity transmission system it

6

describes in its 2014 Forms 20-F as "spanning upstate New York, Massachusetts, Rhode Island, New Hampshire and Vermont operating 169 kilometres (105 miles) of underground cable and 521 substations, with a further 12 planned.").

22.     Defendant National Grid PLC sold its electricity and gas subsidiaries operating in New Hampshire in 2012.

23.     Defendant National Grid PLC sells its equity and debt securities on the New York Stock Exchange, among other exchanges.

### STATEMENT OF FACTS

24.     Defendants are utility providers of gas and electricity in the Northeastern United States.  During the Class Period, Defendants provided gas or electricity to customers in New York and the New England states.

25.     Defendants retain debt collectors to collect debts allegedly owed by its utility customers residing in the United States.

26.     The debt collectors retained by Defendants placed and continue to place telephone calls to consumers who allegedly owe a debt to Defendants.

27.     The debt collectors retained by Defendants employ automatic telephone dialing systems and artificial or prerecorded voices to call Class members' cellular telephone numbers.

28.     Neither Plaintiff nor the other members of the Classes provided their prior express consent to have Defendant or its debt collectors make telephone calls to their cellular telephone numbers.

29.     Neither Defendants nor the debt collectors retained by Defendants had prior express consent to place the telephone calls to Plaintiff's and Class members' cellular

telephones.

30.     The debt collectors retained by Defendants obtain Class members' cellular telephone numbers by means that include "skip tracing" and "number trapping."

31.     A Federal Communications Commission ("FCC") "Consumer Guide" styled *Unwanted Telephone Marketing Calls*, last reviewed by the FCC on June 14, 2013, states:

> **Automatic Telephone Dialing Systems and Artificial or Prerecorded Voice Calls**
>
> The FCC has specific rules for automatic telephone dialing systems, also known as "autodialers." These devices can be particularly annoying and generate many consumer complaints. The rules regarding automatically dialed and prerecorded calls apply whether or not you have registered your home phone number(s) on the national Do-Not-Call list.
>
> Autodialers can produce, store and dial telephone numbers using a random or sequential number generator. They often place artificial (computerized) or prerecorded voice calls. The use of autodialers, including predictive dialers, often results in abandoned calls – hang-ups or "dead air." Except for emergency calls or calls made with the prior **express consent of the person being called, autodialers and any artificial or prerecorded voice messages may not be used to contact numbers assigned to:**
>
> •     any emergency telephone line;
>
> •     the telephone line of any guest or patient room at a hospital, health care facility, home for the elderly or similar establishment;
>
> •     a paging service, wireless phone service (including both voice calls and text messages) or other commercial mobile radio service; or
>
> •     any other service for which the person being called would be charged for the call.

Emphasis in original.

## TELEPHONE CALLS TO PLAINTIFF'S CELLULAR TELEPHONE

32.     Plaintiff has not provivded Defendants express consent to call his cellular telephone number.

33.     Plaintiff has not provided any debt collector retained by Defendants express consent to call his cellular telephone number.

34.     Nevertheless, a debt collector known as NCO Financial Systems, Inc. ("NCOF") called Plaintiff's cellular telephone number many times, including the following dates during the Class Period:  March 7, 2001, March 9, 2011, March 10, 2011 March 11, 2011 March 12, 2011, June 22, 2011 (twice), June 28, 2011 (twice), July 5, 2011, July 15, 2011 (twice), July 21, 2011 (twice), August 19, 2011, August 24, 2011, August 30, 2011 (twice), September 12, 2011 (twice), September 13, 2011 and September 16, 2011.  *See* Exhibits 2 and 3 annexed hereto.

35.     Records and discovery produced by NCOF to Plaintiff in a pending lawsuit styled *Jenkins v. NCO Financial Systems, Inc.*, E.D.N.Y. Case No. 2-14-cv-4125-SJT-AKT, confirm that NCOF made the telephone calls to Plaintiff's cellular telephone number on the dates identified in the preceding Paragraph using an automatic telephone dialing system.  *See* Exhibit 2 and 3 annexed hereto.  On information and belief, some or all of the remaining telephone calls made by NCOF to Plaintiff's cellular telephone listed in Exhibits 2 and 3 were also made using an automatic telephone dialing system.

36.     Upon information and belief, supported by the records and discovery produced by NCOF to Plaintiff in a pending lawsuit styled *Jenkins v. NCO Financial Systems, Inc.*, E.D.N.Y. Case No. 2-14-cv-4125-SJT-AKT, NCOF made the telephone calls to Plaintiff's cellular telephone number on the dates identified in Paragraph 34 using an artificial or prerecorded voice.  *See* Exhibits 2 and 3 annexed hereto.  On information and belief, some or all of the remaining telephone calls made by NCOF to Plaintiff's cellular telephone listed in Exhibits 2 and 3 were also made using an artificial or prerecorded voice.

37.     NCOF frequently leaves messages on consumers' telephones using prerecorded voice messages.  *See Marisco v. NCO Fin. Sys.*, 946 F. Supp. 2d 287, 289 (E.D.N.Y. 2013); *Santino v. NCO Fin. Sys.*, 2011 U.S. Dist. LEXIS 18185, *9 (W.D.N.Y. Feb. 23, 2011).

38.     The records and discovery produced by NCOF to Plaintiff *Jenkins v. NCO Financial Systems, Inc.*, E.D.N.Y. Case No. 2-14-cv-4125-SJT-AKT, confirm that NCOF was calling Plaintiff's cellular telephone to collect two alleged debts owed to National Grid, formerly known as Keyspan.  *See* Exhibits 2 and 3 annexed hereto.

39.     Upon information and belief, supported by the discovery produced by the NCOF to Plaintiff, and further supported by correspondence sent by NCOF to Plaintiff dated February 26, 2013, February 18, 2013 and February 26, 2013, NCOF was retained by Defendants to engage in debt collection from Plaintiff.

40.     NCOF's computer files pertaining to its efforts to collect alleged debts for Defendants from Plaintiff are annexed hereto as Exhibits 2 and 3 (highlighting added; social security number redacted).

41.      NCOF's computer files annexed hereto as Exhibits 2 and 3 do not indicate prior express consent by Plaintiff to be contacted on his cellular telephone number.

42.     In making the calls to Plaintiff's cellular telephone number, NCOF used an automatic telephone dialing system.  The hardware and software used by NCOF has the capacity to generate and store random numbers, or receive and store lists of telephone numbers, and to dial those numbers, en masse, in an automated fashion without human intervention. NCOF's automated telephone dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls

simultaneously and automatically connecting answered calls to available telemarketers and disconnecting the rest.

43.     NCOF's computer files annexed hereto as Exhibits 2 and 3 indicate calls made by NCOF's automatic telephone dialing systems by the designations "VOX" and "ASP."

44.     Charles Petro is a debt collector formerly employed by NCOF.   He testified during a deposition on October 17, 2013 as follows at page 115 of the transcript:

> Q.     I'm sorry. So let me stop you for a second, do you know what "MN" stands for?
>
> A.      I don't know what the MN is, but I know it's -- I know it's the autodialer.
>
> Q.     And you know that because it says VOX, right?
>
> A.     I know because it's VOX.

45.     NCOF's "VOX" references are to a telephone calling system termed "LiveVox," which has been held to be a predictive dialer and an automatic telephone dialing system for the purposes of the TCPA.  *See Smith v. MarkOne Fin., LLC*, 2015 U.S. Dist. LEXIS 11803, *9 (M.D. Fla. Feb. 2, 2015) ("As the LiveVox system automatically dials numbers from a downloaded list and predicts when a collection agent will be available to pick up the call, it is a predictive dialer and an ATDS."); *Echevvaria v. Diversified Consultants, Inc*., 2014 U.S. Dist. LEXIS 32136, *16-26 (S.D.N.Y. Feb. 28, 2014) ("Rather, the evidence -- including the LiveVox Memo and Diversified's Jamie Sullivan's admission -- is that LiveVox is a predictive dialer that under the FCC's rules interpreting the TCPA, is an ATDS covered by the TCPA."); *Davis v. Diversified Consultants, Inc*., 2014 U.S. Dist. LEXIS 87867, *19 (D. Mass. 2014) *(*"In short, the LiveVox system, as utilized by defendant, was an ATDS.*")*; *see also Donnelly v. NCO Fin. Sys*., 263 F.R.D. 500, 506 (N.D. Ill. 2009) (noting that NCOF produced its contract

with LiveVox and the LiveVox Operations Guide in discovery).

46.     NCOF's "ASP" references are to a telephone calling system termed "Aspect," which has been held to be a predictive dialer and an automatic telephone dialing system for the purposes of the TCPA.  *See Lynn v. Monarch Recovery Mgmt.*, 953 F. Supp. 2d 612, 616 (D. Md. June 17, 2013) ("The calls were made using Aspect dialer equipment, an automatic telephone dialing system ('ATDS')."); *Nelson v. Santander Consumer USA, Inc*., 931 F. Supp. 2d 919, 924 (W.D. Wis. 2013) ("In making these calls, defendant used the Aspect telephony system, a computer telephone software system that routes and places inbound and outbound calls.  Aspect has the capacity to (1) store telephone numbers and then call them; and (2) perform 'predictive dialing' and 'preview dialing.'").

47.     NCOF's computer files annexed hereto as Exhibits 2 and 3 indicate other calls made by use of a "T1" line, which may have employed an automatic telephone dialing system.

48.     Upon information and belief, during the Class Period NCOF further additional predictive dialers and automatic telephone dialing systems.

49.     NCOF promotes it use of an automatic telephone dialing system on its website:

> NCO's Interactive Voice Messaging (IVM) solution uses advanced technology to deliver high quality automated messaging to our clients' customers globally. Whether the goal is to reduce inbound call volume, increase customer self-service, or connect customers to a live agent, NCO's IVM solution enables our clients to deliver branded, repeatable, messaging to its customers while maximizing the customer experience and your revenue.

https://www.ncogroup.com/Turnkey/Communications/Interactive_Voice_Messaging.html (last visited, February 25, 2015).

50.     In addition to NCOF, Defendants retain other debt collectors to collect debts alleged owed by Defendants' customers.  *See Nigro v. Mercantile Adjustment Bureau, LLC*, 769

F.3d 804 (2d Cir. 2014).

51.    Defendants are directly liable and/or vicariously liable to Plaintiff and the Class for its violations of the TCPA and for the TCPA violations committed by debt collectors it retained to contact Plaintiff and the Classes on their cellular telephone numbers.

52.    The FCC has interpreted the TCPA to contemplate vicarious liability "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.  *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6584 ¶28 (2013).  In that ruling, the FCC further found that, "TCPA contemplates that a seller may be vicariously liable under agency principles for violations of section 227(b) notwithstanding the absence of 'on behalf of' liability available for do-not-call violations under section 227(c)."

### CLASS ACTION ALLEGATIONS

53.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on his own behalf and behalf of the following two Classes defined as follows:

**Automatic Dialer Class**:  All persons in the United States and its territories who from March 7, 2011 to the present (the "Class Period") (1) received calls from any debt collector retained by National Grid; (2) made through the use of any automatic telephone dialing system; (3) on a cellular telephone number; (4) when the person called did not consent to receive telephone calls from National Grid or the calling debt collector.

**Artificial Voice Class**:  All persons in the United States and its territories who from March 7, 2011 to the present (the "Class Period") (1) received calls from

any debt collector retained by National Grid; (2) made using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not consent to receive telephone calls from National Grid or the calling debt collector.

Excluded from the Classes are Defendants and their parent(s), subsidiary(ies), officers, directors, employees, partners and co-venturers.  Also excluded are all employees, officers and directors of the debt collectors retained by National Grid.  Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

54.    The Classes both satisfy the Fed. R. Civ. P. 23 numerosity, commonality, typicality, adequacy, predominance, superiority and ascertainability requirements.

55.    Plaintiff does not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of Defendants and their retained debt collectors.  However, Defendants represent to providing gas or electric services to over 7 million customers residing in New York and the New England states.  Accordingly, Plaintiff believes that the Class encompasses hundreds to thousands of consumers.

56.    The identities of the Class members can be readily ascertained from Defendants' and their debt collectors' books and records.

57.    Common question of law and fact raised in this action concerning the Class' claims include the following:

(a)    Whether Defendants or debt collectors retained by Defendants made telephone calls to Class members' cellular telephone numbers;

(b)  Whether Defendants or debt collectors retained by Defendants used an automatic telephone dialing system to call Class members' cellular telephone numbers;

(c)  Whether Defendants or debt collectors retained by Defendants used an artificial or prerecorded voice to call Class members' cellular telephone numbers;

(d)  Whether Defendants violated the TCPA;

(e)  How Defendants or debt collectors retained by Defendants obtained Class members' cellular telephone numbers;

(f)  Whether Plaintiff and the other members of the Classes are entitled to damages, statutory damages, restitution, declaratory relief and/or injunctive relief as a result of Defendants' and its debt collectors' violations of the TCPA; and

(g)  Whether Defendants' violations of the TCPA were knowing and willful.

58.  Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained able counsel with extensive experience in prosecuting consumer class actions. Plaintiff's interests are coincident with, and not antagonistic to, the interests of the Classes.

59.  The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual Class members, including legal and factual issues relating to liability and damages.

60.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.

61.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages, or statutory damages, suffered by

individual members of the Classes may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them.  The Classes are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.  Plaintiff will encounter no difficulty in managing this action as a class action.

62.    Defendants have acted and refused to act, as alleged herein, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief to the Classes.

## FIRST CAUSE OF ACTION

### VIOLATION OF TELEPHONE Consumer PROTECTION ACT

#### (PLAINTIFF AND THE AUTOMATIC DIALER CLASS AGAINST DEFENDANTS)

63.     Plaintiff restates, realleges, and incorporates by reference the foregoing paragraphs.

64.     Plaintiff and the members of the Automatic Dialer Class are "persons" under the TCPA.

65.     Section 227(b)(1)(A) of the TCPA makes it unlawful for:

> [A]ny person within the United States, or any person outside the United States if the  recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. §227(b)(1)(A).

66.     Defendants violated TCPA Section 227(b)(1)(A) with respect to Plaintiff and the Automatic Dialer Class by reason of Defendants' violations of TCPA Section 227(b)(1)(A)(iii), including violations by the debt collectors retained by Defendants to collect debts from Plaintiff and from Automatic Dialer Class members.

67.     Debt collectors retained by Defendants made unsolicited telephone calls to cellular telephone numbers belonging to Plaintiff and members of the Automatic Dialer Class without their prior express consent.

68.     Debt collectors retained by Defendants made the telephone calls to Plaintiff and members of the Automatic Dialer Class using equipment that had the capacity to store or

produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers.

69.     Debt collectors retained by Defendants made the telephone calls to Plaintiff and Automatic Dialer Class members without human intervention.

70.     With respect to Plaintiff, a debt collector retained by Defendants called Plaintiff's cellular telephone many times, including the following dates during the Class Period: March 7, 2001, March 9, 2011, March 10, 2011 March 11, 2011 March 12, 2011, June 22, 2011 (twice), June 28, 2011 (twice), July 5, 2011, July 15, 2011 (twice), July 21, 2011 (twice), August 19, 2011, August 24, 2011, August 30, 2011 (twice), September 12, 2011 (twice), September 13, 2011 and September 16, 2011.  *See* Exhibits 2 and 3 annexed hereto.

71.     Each call to Plaintiff using automatic telephone dialing system and each call to the Automatic Dialer Class members' cellular telephone numbers violated TCPA Section 227(b)(1)(A)(iii).

72.     Defendants' and their debt collectors' violations were willful and knowing. Even if not willful and knowing, Defendant violated the TPCA.

73.     Defendants' violations of the TCPA challenged in this Complaint were done using an "automatic telephone dialing system," as that term is defined in 47 U.S.C. §227(a)(1) and the regulations, decisions, and/or interpretations of the FCC.

74.     Plaintiff and the Automatic Dialer Class are entitled to pursue claims against Defendants during the Class Period for an injunction, pursuant to 47 U.S.C. §227(b)(3)(A), to enjoin Defendants' violations of TCPA Section 227(b)(1)(A)(iii). Plaintiff and the Automatic Dialer Class seek to enjoin Defendants' violations of the TCPA.

75.    Plaintiff and the Automatic Dialer Class are entitled to pursue claims against Defendants during the Class Period for actual damages, or statutory damages of $500.00 for each violation, pursuant to 47 U.S.C. §227(b)(3)(B), to redress Defendants' violations of TCPA Section 227(b)(1)(A)(iii).  Plaintiff and the Automatic Dialer Class seek damages to remedy Defendants' violations of the TCPA.

76.    Defendants' violations of TCPA Section 227(b)(1)(A)(iii) were willful and knowing.  As a result, Plaintiff and the Automatic Dialer Class should be awarded three-times their actual damages, or statutory damages, pursuant to 47 U.S.C. §227(b)(3).

77.    Defendants are directly liable and/or vicariously liable to Plaintiff and the Automatic Dialer Class for its violations of the TCPA and for the TCPA violations committed by debt collectors it retained to contact Plaintiff and the Automatic Dialer Class.

## SECOND CAUSE OF ACTION

### VIOLATION OF TELEPHONE Consumer PROTECTION ACT

#### (PLAINTIFF AND THE ARTIFICIAL VOICE CLASS AGAINST DEFENDANTS)

78.     Plaintiff restates, realleges, and incorporates by reference the foregoing paragraphs.

79.     Plaintiff and the members of the Artificial Voice Class are "persons" under the TCPA.

80.     Section 227(b)(1)(A) of the TCPA makes it unlawful for:

[A]ny person within the United States, or any person outside the United States if the recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. §227(b)(1)(A).

81.     Defendants violated TCPA Section 227(b)(1)(A) with respect to Plaintiff and the Artificial Voice Class by reason of the Defendants' violations of TCPA Section 227(b)(1)(A)(iii), including violations by the debt collectors retained by Defendants to collect debts from Plaintiff and from Artificial Voice members.

82.     Debt collectors retained by Defendants made unsolicited telephone calls to cellular telephone numbers belonging to Plaintiff and members of the Artificial Voice Class without their prior express consent.

83.     Debt collectors retained by Defendants made the telephone calls to Plaintiff and members of the Artificial Voice Class employing a prerecorded or artificial voice.

20

84.     With respect to Plaintiff, a debt collector retained by Defendants called Plaintiff's cellular telephone many times, including the following dates during the Class Period: March 7, 2001, March 9, 2011, March 10, 2011 March 11, 2011 March 12, 2011, June 22, 2011 (twice), June 28, 2011 (twice), July 5, 2011, July 15, 2011 (twice), July 21, 2011 (twice), August 19, 2011, August 24, 2011, August 30, 2011 (twice), September 12, 2011 (twice), September 13, 2011 and September 16, 2011.  *See* Exhibits 2 and 3 annexed hereto.

85.     Each prerecorded or artificial voice call to Plaintiff's and the Artificial Voice Class members' cellular telephone numbers violated TCPA Section 227(b)(1)(A)(iii).

86.     Defendants' and their debt collectors' violations were willful and knowing. Even if not willful and knowing, Defendants violated the TPCA.

87.     Plaintiff and the Artificial Voice Class are entitled to pursue claims against Defendants during the Class Period for an injunction, pursuant to 47 U.S.C. §227(b)(3)(A), to enjoin Defendants' violations of TCPA Section 227(b)(1)(A)(iii). Plaintiff and the Artificial Voice Class seek to enjoin Defendants' violations of the TCPA.

88.     Plaintiff and the Artificial Voice Class are entitled to pursue claims against Defendants during the Class Period for actual damages, or statutory damages of $500.00 for each violation, pursuant to 47 U.S.C. §227(b)(3)(B), to redress Defendants' violations of TCPA Section 227(b)(1)(A)(iii).  Plaintiff and the Artificial Voice Class seek damages to remedy Defendants' violations of the TCPA.

89.     Defendants' violations of TCPA Section 227(b)(1)(A)(iii) were willful and knowing.  As a result, Plaintiff and the Artificial Voice Class should be awarded three-times their actual damages, or statutory damages, pursuant to 47 U.S.C. §227(b)(3).

90.    Defendants are directly liable and/or vicariously liable to Plaintiff and the Artificial Voice Class for its violations of the TCPA and for the TCPA violations committed by debt collectors it retained to contact Plaintiff and the Automatic Dialer Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for judgment against Defendants as follows:

A.    An order certifying this case as a class action under FED. R. CIV. P. 23(a), (b)(2) and (b)(3), and appointing Plaintiff and his counsel to represent the Classes;

B.    An order declaring that Defendants' and its debt collectors' alleged acts and practices constitute violations of the TCPA;

C.    Statutory damages pursuant to the TCPA of $500.00 for each violation, trebled for Defendants' willful and knowing violations of the TCPA;

D.    Three-times Plaintiff's and the Classes' actual and/or statutory damages for Defendants' and its debt collectors' violations of the TCPA;

E.    A permanent injunction to enjoin Defendants' and its debt collectors' violations of the TCPA;

F.    Actual damages for injuries suffered by Plaintiff and the other members of the Classes;

G.    All other equitable remedies available to Plaintiff and Classes;

H.    Reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to the extent authorized by law.

DATED: March 9, 2015

**TUSA P.C.**

/s/ Joseph S. Tusa
Joseph S. Tusa
joseph.tusapc@gmail.com
P.O. Box 566
53345 Main Road, Ste. 10-1
Southold, NY  11971
Tel. (631) 407-5100

***Attorneys for Plaintiff***
***and proposed Class Counsel***