UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
JARRETT JENKINS, EMMOT STEELE, and
FRANCES ROYAL, on behalf of
themselves and all others similarly
situated,

                 Plaintiffs,       <u>MEMORANDUM & ORDER</u>
                                    15-CV-1219(JS)(GRB)

       -against-

NATIONAL GRID USA, NATIONAL GRID
NORTH AMERICA INC., NATIONAL GRID
PLC, NATIONAL GRID USA SERVICE
COMPANY, INC., NATIONAL GRID
ELECTRIC SERVICES, LLC, BOSTON GAS
COMPANY, COLONIAL GAS COMPANY,
ESSEX GAS COMPANY, KEYSPAN
CORPORATION, KEYSPAN GAS EAST
CORPORATION, MASSACHUSETTS ELECTRIC
COMPANY, NANTUCKET ELECTRIC COMPANY,
NIAGARA MOHAWK HOLDINGS, INC.,
NIAGARA MOHAWK POWER CORPORATION,
THE BROOKLYN UNION GAS COMPANY, and
THE NARRAGANSETT ELECTRIC COMPANY,

                 Defendants.
------------------------------------X
APPEARANCES
For Plaintiffs:       Daniel M. Hutchinson, Esq.
                 Lieff Cabraser Heimann & Bernstein LLP
                 275 Battery Street, 29th Floor
                 San Francisco, California 94111

                 Douglas Ian Cuthbertson, Esq.
                 Jonathan D. Selbin, Esq.
                 Lieff Cabraser Heimann & Bernstein LLP
                 250 Hudson Street, 8th Floor
                 New York, New York 10003

                 Joseph S. Tusa, Esq.
                 Tusa, P.C.
                 53345 Main Road, Suite 10-1
                 Southhold, New York 11971

```
For Defendants:        Richard H. Brown, Esq.
                       Day Pitney LLP
                       7 Times Square
                       New York, New York 10036

                       Anthony Joseph Marchetta, Esq.
                       Day Pitney LLP
                       1 Jefferson Road
                       Parsippany, New Jersey 07054
```

SEYBERT, District Judge:

This putative class action arises out of calls allegedly made to Plaintiffs concerning overdue gas and electric bills. Plaintiffs assert that all sixteen Defendants, or those operating on their behalf, made these calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., (the "TCPA") and New York General Business Law ("NY GBL") § 399-p.

Two motions are now pending before the Court. First, Defendants seek to dismiss the Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim.[1] (Docket Entry 135.) Second, if the

---

[1] Only twelve of the sixteen Defendants move to dismiss for lack of subject matter jurisdiction: (1) National Grid PLC; (2) National Grid North America Inc. ("NG NA"); (3) National Grid USA ("NG USA"); (4) Massachusetts Electric Company ("Massachusetts Electric"); (5) The Narragansett Electric Company ("Narragansett Electric"); (6) Boston Gas Company ("Boston Gas"); (7) National Grid Electric Services LLC ("NG Electric"); (8) Colonial Gas Company ("Colonial Gas"); (9) Essex Gas Company ("Essex Gas"); (10) Nantucket Electric Company ("Nantucket Electric"); (11) Keyspan Corporation ("Keyspan Corp."); and (12) Niagara Mohawk Holdings, Inc. ("NM Holdings" and collectively, the "Standing Defendants"). (Defs.' MTD Br., Docket Entry 135-1, at 11.)

Court does not dismiss the Amended Complaint in its entirety, Defendants request that the Court stay the matter pending a decision from the Federal Communications Commission ("FCC") on an issue purportedly related to Plaintiffs' claims. (Docket Entry 141.) For the following reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, and Defendants' motion to stay is DENIED.

BACKGROUND[2]

I.  Factual Background

Defendants all do business under the trade name "National Grid" providing gas and electric services to customers located in New York, Massachusetts, and Rhode Island.[3] (Am. Compl. ¶ 11.) The purpose of the trade name is to avoid customer confusion:

> The National Grid name is the only name used for customer interaction. Within the corporate structure, the legacy regulated retail companies are all wholly-owned subsidiaries of National Grid USA, Inc.
>
> The legacy regulated retail companies are Massachusetts Electric Company, Nantucket

---

[2] The facts alleged in the Amended Complaint are presumed to be true for the purposes of this Memorandum and Order. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572, 127 S. Ct. 1955, 1975, 167 L. Ed. 2d 929 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks and citation omitted)).

[3] National Grid, http://www2.nationalgrid.com/about-us/what-we-do/ (last visited Mar. 31, 2016).

> Electric Company, Colonial Gas Company, and
> Boston Gas Company in Massachusetts; Niagara
> Mohawk Power Corporation, The Brooklyn Union
> Gas Company, and Keyspan Gas East Corporation
> in New York; and The Narragansett Electric
> Company in Rhode Island.
>
> * * *
>
> Thus, "National Grid" is the name that its
> customers are familiar with and associate with
> their service provider.  Placing calls from
> "Boston Gas" or "Nantucket Electric Company"
> will be confusing to customers who are
> unfamiliar with these corporate entities and
> do not understand the legal relationship
> between these entities and National Grid.

(Am. Compl. ¶¶ 43-44 (citing a 2014 National Grid Petition)
(emphasis omitted).)  The following three Defendants specifically
provide either gas, electric, or both services to customers located
in New York: (1) Keyspan Gas East Corporation ("Keyspan Gas"); (2)
The Brooklyn Union Gas Company ("Brooklyn Gas"); and (3) Niagara
Mohawk Power Corporation ("NM Corp.").   (Am. Compl. ¶¶ 20-22.)
Any Defendants that do not provide utility services are either a
holding company or a parent company that "owns and controls
subsidiaries operating and organized in the United States."  (Am.
Compl. ¶¶ 14, 16(b), 16(e), 16(g)-(h), 24; see also McAllister
Decl., Docket Entry 135-2, ¶¶ 14-17, 19-20, 22.)

Plaintiffs, all New York residents, assert that the
sixteen Defendants, either directly or through third-party debt
collectors, used automated telephone dialing systems to call
Plaintiffs and, in many instances, left pre-recorded voice

4

messages.   (Am. Compl. ¶¶ 1-2, 8-10.)   For example, one voice

message stated the following:

> "It's important that we speak to you within
> the next 24 hours.  Please call us at 1-800-
> 930-5003.    Again,   that's   1-800-930-5003.
> Thank you.   National Grid is registered on
> Long Island as Keyspan Gas East."

(Am. Compl. ¶ 102.)   Although the voice message is ambiguous, the

calls were apparently made to collect "overdue bills."  (See, e.g.,

Am. Compl. ¶¶ 73, 84-85.)   Plaintiffs allege that they did not

provide "prior express consent" for these calls and messages.  (Am.

Compl. ¶ 1.)

II.  Procedural History

　　　　Plaintiff Jarrett Jenkins ("Jenkins") originally filed

this lawsuit on March 9, 2015.  (Docket Entry 1.)   The original

Complaint was filed against fourteen "National Grid" companies,

who moved to dismiss the original Complaint on April 30, 2015.

(See Docket Entry 80.)  About five weeks later, the parties entered

into a Stipulation and Order, in which Jenkins could either respond

to the motion to dismiss or file an amended complaint.  (See June

8, 2015 Stip. & Order, Docket Entry 97.)   As discussed above,

Jenkins chose the latter, filing the Amended Complaint on July 2,

2015.  (See Am. Compl., Docket Entry 99.)   The Amended Complaint

adds two Plaintiffs, Emmot Steele ("Steele") and Frances Royal

("Royal" and, collectively with Steele and Jenkins, "Plaintiffs"),

and asserts claims on behalf of three putative classes. (See Am. Compl. ¶¶ 9-10, 110.)

The Amended Complaint asserts three causes of action. Plaintiffs allege two causes of action under the TCPA--one for calls directly made by Defendants ("Count I") and the other for calls made by third-party debt collectors on Defendants' behalf ("Count II"). (Am. Compl. ¶¶ 122-43.) Separately, Steele and Royal assert a cause of action under NY GBL § 399-p ("Count III"). (Am. Compl. ¶¶ 144-60). Essentially, Plaintiffs' "injuries alleged in this action arise from Defendants' business of providing utility services in New York, and result from Defendants' tortuous conduct in violation of the TCPA and New York GBL § 399-p." (Am. Compl. ¶ 39.)

Defendants now move to dismiss the Amended Complaint. (Docket Entry 135.) Defendants argue that this case is not justiciable against the Standing Defendants because Plaintiffs cannot satisfy Article III's requirements.[4] (Defs.' MTD Br. at 11-13.) Defendants also argue that Plaintiffs' claims fail on their own terms. (Defs.' MTD Br. at 7-11.) Specifically, the

---

[4] Defendants alternatively moved for lack of personal jurisdiction against nine Defendants: (1) National Grid PLC; (2) NG NA; (3) NG USA; (4) Massachusetts Electric; (5) Narragansett Electric; (6) Boston Gas; (7) Colonial Gas; (8) Essex Gas; and (9) Nantucket Electric. (Defs.' MTD Br. at 3.) This argument, however, is moot, as the Court finds that the Amended Complaint must be dismissed against those nine defendants for lack of subject matter jurisdiction.

Amended Complaint "lump[s]" together all Defendants without plausibly alleging that each Defendant violated the TCPA or NY GBL. (See Defs.' MTD Br. at 8.)

In opposition, Plaintiffs assert that they have satisfied Article III's requirements against the Standing Defendants because all Defendants operate under the trade name "National Grid." (Pls.' MTD Br., Docket Entry 143, at 8 (citing Am. Compl. ¶¶ 11, 42-44).) Thus, in Plaintiffs' view, it is impossible and inappropriate "prior to discovery for Plaintiffs to parse which Defendant (or Defendants) made which call at which time." (Pls.' MTD Br. at 8.) Plaintiffs, moreover, contend that they have plausibly alleged their claims because "Defendants acted as a single, cohesive and unified business to make illegal, automated calls." (Pls.' MTD Br. at 1.)

Separately, Defendants filed a motion to stay this matter pending a petition for declaratory ruling before the FCC (the "Petition") that may implicate an important issue in Plaintiffs' case--namely, whether Plaintiffs provided "prior express consent" under the TCPA. (Mot. to Stay, Docket Entry 141; see also Defs.' Stay Br., Docket Entry 141-1, at 2.) In doing so, Defendants argue that the FCC's decision could dispose of Plaintiffs' TCPA claims and thus a stay promotes judicial economy. (Defs.' Stay Br. at 10.) Rejecting this contention, Plaintiffs contend that the "scope of the Petition only covers certain types

of informational calls--not debt collection calls." (Pls.' Stay
Br., Docket Entry 145, at 7.)

DISCUSSION

## I.  The Relevant Statutes

As noted at the outset, Plaintiffs assert two claims
under the TCPA.  Congress enacted the TCPA to shield telephone
customers from unwanted intrusions, including automated telephone
calls and voice messages.  Mims v. Arrow Fin. Servs., LLC, 132 S.
Ct. 740, 745, 181 L. Ed. 2d 881 (2012).  This automated technology,
Congress observed, was frequently "a nuisance and an invasion of
privacy" for customers.  TCPA, Pub. L. 102-243, 105 Stat. 2394
(1991).  Thus, subject to exceptions not relevant here, the TCPA
prohibits the use of artificial or prerecorded voice messages to
call residential telephone lines "without the prior express
consent of the called party."  47 U.S.C. § 227(b)(1)(B).  The TCPA
also bans the use of any automatic telephone dialing system or
artificial or prerecorded voice messages, without "prior express
consent," to call any emergency numbers, paging services, cellular
telephone services, or any other services that charges the
individual who receives the call.  47 U.S.C. § 227(b)(1)(A)(iii).

Steele and Royal also asserted a claim under NY GBL
§ 399-p.  The text of that statute provides, in pertinent part:

> Whenever telephone calls are placed through
> the use of an automatic dialing-announcing

8

> device, such device shall do all of the
> following:
>
> (a) state at the beginning of the call the
> nature of the call and the name of the person
> or on whose behalf the message is being
> transmitted and at the end of such message the
> address, and telephone number of the person on
> whose behalf the message is transmitted,
> provided such disclosures are not otherwise
> prohibited or restricted by any federal, state
> or local law . . . .

N.Y. Gen. Bus. Law § 399-p(3)(a).

II. Defendants' Motion to Dismiss

    A. Lack of Subject Matter Jurisdiction

As an initial matter, the Court will address Defendants' standing arguments first, as they implicate this Court's subject matter jurisdiction. First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 377 (S.D.N.Y. 2002); see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (recognizing that a court must consider a motion to dismiss for lack of subject matter jurisdiction first because, if granted, "the accompanying defenses and objections become moot and do not need to be determined" (internal quotation marks and citations omitted)).

    1. Legal Standard

To survive a motion to dismiss under 12(b)(1), a plaintiff must establish subject matter jurisdiction. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)

(citations omitted).  In resolving the motion, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions.  See id. (citing Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).  Although the Court must accept the factual allegations contained in the Complaint as true, the Court will not draw argumentative inferences in Plaintiffs' favor because subject matter jurisdiction must be shown affirmatively.  See Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted).

### 2.  Article III Standing

Defendants argue that "there is no plausible link between [the Standing Defendants] and the 'harm' to Plaintiffs, (i.e., alleged phone calls made in violation of the TCPA and GBL)." (Defs.' MTD Br. at 13 (internal quotation marks in original).) The Court agrees.

"Standing is 'the threshold question in every federal case,' and implicates the Court's subject matter jurisdiction." Cohan v. Movtady, 751 F. Supp. 2d 436, 439 (E.D.N.Y. 2010) (quoting Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008)). To establish standing under Article III of the Constitution, a plaintiff must show that the injury-in-fact is: (1) concrete, particularized, and actual or imminent; (2) fairly traceable to the defendant's conduct; and (3) redressable by a favorable court decision.  Liberty Global Logistics LLC v. U.S. Mar. Admin., No.

13-CV-0399, 2014 WL 4388587, at *3 (E.D.N.Y. Sept. 5, 2014) (citing Carver v. City of N.Y., 621 F.3d 221, 225 (2d Cir. 2010)).  "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (citations omitted).

In the class action context, plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Warth v. Seldin, 422 U.S. 490, 503, 95 S. Ct. 2197, 2207, 45 L. Ed. 2d 343 (1975) (emphasis added).  Thus, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669, 675, 38 L. Ed. 2d 674 (1974) (citations omitted).

Plaintiffs fail to meet the Article III requirements for the Standing Defendants.  Plaintiffs admitted that their "injuries . . . arise from Defendants' business of providing utility services in New York." (Am. Compl. ¶ 39.)  But the Standing Defendants do not provide utility services to customers located in New York. Six of the twelve Standing Defendants provide utility services in New England: (1) Boston Gas, (2) Colonial Gas, (3) Essex Gas,

(4) Massachusetts Electric, (5) Nantucket Electric, and
(6) Narragansett Electric. (Am. Compl. ¶¶ 26-30, 32; <u>see</u> <u>also</u>
McAllister Decl., ¶¶ 2, 4, 6, 8, 10, 12.) The other six Standing
Defendants are holding companies or parent companies: (1) National
Grid PLC, (2) Keyspan Corp., (3) NM Holdings, (4) NG NA, (5) NG
USA, and (6) NG Electric. (Am. Compl. ¶¶ 14, 16(b), 16(e), 16(g)-
(h), 24; <u>see</u> <u>also</u> McAllister Decl. ¶¶ 14-17, 18-22.) Although
National Grid operates under a single trade name, (Am. Compl.
¶ 43), there is no indication that New England utility service
providers or holding companies would "call or have someone else
call on their behalf for a debt owed by Plaintiffs." (<u>See</u> Defs.'
MTD Br. at 13.) On that basis, the Standing Defendants have no
plausible connection to Plaintiffs' alleged injuries.

Plaintiffs contest this conclusion by asserting that
"[t]he unlawful conduct and injury derives from the unauthorized
calls to Plaintiffs' and class members' cellular telephones."
(Pls.' MTD Br. at 25.) But first, this assertion is belied by the
Amended Complaint, as discussed above. (<u>See</u> Am. Compl. ¶ 39
(basing Plaintiffs' injuries on "Defendants' business of providing
utility services in New York").) Second, the standing analysis
focuses only on the lead plaintiffs, not any putative class
members, such as those that receive utility services in New
England. <u>See</u> <u>Warth</u>, 422 U.S. at 503, 95 S. Ct. at 2207.

Sure enough, various Defendants, including the New England utility service providers, entered into debt collection agreements with entities that purportedly made calls to Plaintiff. (Am. Compl. ¶ 80; see Tusa Decl. Ex. 2, Docket Entry 147 (annexing debt collection agreement with NCO Financial Systems, Inc.); Tusa Decl. Ex. 3, Docket Entry 148 (annexing debt collection agreement with Mercantile Adjustment Bureau, LLC)). But still, the Court emphasizes that subject matter jurisdiction must be shown affirmatively, Morrison, 547 F.3d at 170, and Plaintiffs have not provided any reason why New England utility service providers, for example, would contact New York customers for unpaid balances. (See Pls.' MTD Br. at 8 ("The sole purpose of the[] calls was to collect debts purportedly owed to Defendants . . . .")

Plaintiffs' next argument--that the Standing Defendants are liable as co-conspirators--is meritless. (Pls.' MTD Br. at 23-24.) "Under conspiracy law, where a plaintiff alleges injury as a result of a conspiracy where there were non-dealing actors, plaintiff has standing to sue the non-dealing partner-defendants." See Bodner v. Banque Paribas, 114 F. Supp. 2d 117, 125 (E.D.N.Y. 2000) (citations omitted). While both parties acknowledge the relaxed requirement for conspiracy liability, (Pls.' MTD Br. at 23-24; Defs.' MTD Reply Br., Docket Entry 149, at 10), the Amended Complaint contains no allegations of the existence of a conspiracy or some unified front against Plaintiffs.

13

Bodner, 114 F. Supp. 2d at 125 ("[T]his Court has ruled that the presentation of conclusory statements regarding the existence of a conspiracy, without reference to specific facts which might support a conspiracy, do not adequately support a claim of conspiracy in the pleadings.") (citation omitted).

Finally, Plaintiffs' argument under parent-subsidiary liability is likewise without merit. Plaintiffs argue that "[l]iability for TCPA violations is joint and several, reaching even defendants who 'oversaw' the violations." (Pls.' MTD Br. at 24.) But this Court has held that "mere ownership of [an] affiliate" does not automatically confer liability. Precision Assocs., Inc. v. Panalpina World Transp., (Holding) Ltd., No. 08-CV-0042, 2013 WL 6481195, at *15 (E.D.N.Y. Sept. 20, 2013), adopted by, 2014 WL 298594 (E.D.N.Y. Jan. 28, 2014). Indeed, as stated in another context, "a parent and a subsidiary will not be held equally liable . . . where there is no evidence that both were involved in the challenged conduct." Id. (internal quotation marks and citation omitted).[5] So too here. Although the Standing Defendants may be subsidiaries, the Amended Complaint does not indicate that their conduct is fairly traceable to any injury

---

[5] Cf. Agne v. Papa John's Int'l, Inc., 286 F.R.D. 559, 564 (W.D. Wash. 2012) (conferring Article III standing on one defendant who used e-mails to encourage the conduct at issue and other defendants who are alter egos of the company that commissioned the conduct at issue).

suffered by Plaintiffs.   Thus, Plaintiffs' claims are DISMISSED

WITHOUT PREJUDICE for lack of subject matter jurisdiction against

the Standing Defendants.    See JetBlue Airways Corp. v. CopyTele

Inc., No.  15-CV-0086,  2015  WL  6161774,  at  *1  (2d  Cir.

Oct. 21, 2015) ("'Article III deprives federal courts of the power

to dismiss a case with prejudice where federal subject matter

jurisdiction does  not  exist.'")  (quoting  Hernandez v. Conriv

Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999)).

      B.   Lack of Personal Jurisdiction

      Defendants also move to dismiss the Amended Complaint

for lack of personal jurisdiction for nine specific Defendants,

all of which were dismissed above for lack of subject matter

jurisdiction.[6]   (See supra at 10-15.)    Thus, as "there is no

justiciable case or controversy upon which to base jurisdiction,"

Defendants' personal jurisdiction arguments are mooted.   Sanger v.

Reno, 966 F. Supp. 151, 165 (E.D.N.Y. 1997).   The Court will now

address   Defendants'  12(b)(6)   arguments   for   the   remaining

Defendants: (1) NM Corp.; (2) Keyspan Gas; (3) Brooklyn Gas; and

(4) National Grid USA Service Company, Inc. ("NG USA Service").

---

[6] As noted above, these nine Defendants are (1) National Grid
PLC; (2) NG NA; (3) NG USA; (4) Massachusetts Electric; (5)
Narragansett Electric; (6) Boston Gas; (7) Colonial Gas; (8)
Essex Gas; and (9) Nantucket Electric.   (Defs.' MTD Br. at 3.)

C.   Failure to State a Claim

1.   Sufficiency of Pleadings

Every pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Essentially, Rule 8 ensures that a complaint provides a defendant with sufficient notice of the claims against it. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Put another way, the purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Powell v. Marine Midland Bank, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (internal quotation marks, citation, and emphasis omitted).

To satisfy Rule 8, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. Although the Court must accept all allegations in the Amended Complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950.

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). The Court, however, may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citation omitted); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect") (internal quotation marks and citation omitted).

### 2. "Lumping" Technique

Defendants argue that Plaintiffs' claims "improperly lump all Defendants together"--that is, the claims lack specific, individualized allegations against each Defendant. (Defs.' MTD Br. at 8.) The Court disagrees, especially because the Standing Defendants have been dismissed from the case.

A complaint, to be sure, fails to satisfy Rule 8's requirements if it "lump[s] all the defendants together and fail[s] to distinguish their conduct" because those allegations could not provide "adequate notice to the[] defendants as to what they did wrong." Median v. Bauer, No. 02-CV-8837, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004). But as this Court previously observed, "[c]laims based on alleged violations of the TCPA or NYGBL § 399-p3 need not be pled with particularity." McCabe v. Caribbean Cruise Line, Inc., No. 13-CV-6131, 2014 WL 3014874, at *4 (E.D.N.Y. July 3, 2014). Nor is it impermissible to refer to "Defendants" in broad strokes. See Hudak v. Berkley Grp., Inc., No. 13-CV-0089, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014) ("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant."). Rather, dismissal under Rule 8 is appropriate only where the complaint is "'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" Strunk v. U.S. House of Representatives, 68 F. App'x 233, 235 (2d Cir. 2003) (quoting Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1998)).

At this early stage, Plaintiffs need not provide extensive details on their TCPA and NYGBL § 399-p3 claims. See Hudak, 2014 WL 354676, at *4 (rejecting a "lumping" theory because "[p]rior to discovery, plaintiff need not explain the details of

18

each defendant's role in the planning, funding, and executing defendants' alleged joint telemarketing scheme"). "The National Grid name is the only name used for customer interaction," and it is plausible that New York utility service providers, for instance, would be responsible for debt collection calls on bills owed to them. (See Am. Compl. ¶ 43.)

Although superficially similar, the cases cited by Defendants do not compel a contrary conclusion. See, e.g., Bank v. Philips Elec. N. Am. Corp., No. 14-CV-5312, 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (determining that the allegations were insufficient because there was "no basis to believe that [the defendant] was responsible for the two calls alleged in the complaint"); Bank v. Alliance Health Networks, LLC, No. 15-CV-0213, 2015 WL 4645317, at *1-2 (E.D.N.Y. Aug. 4, 2015); McCabe, 2014 WL 3014874 at *2 (finding that the complaint lacked specific, individualized allegations as to why each defendant could be responsible for "free cruise" robocalls); Cellco P'ship v. Plaza Resorts Inc., No. 12-CV-81238, 2013 WL 5436553, at *7 (S.D. Fla. Sept. 27, 2013); Court Appointed Receiver of Lance Offshore, Inc. v. Citco Grp. Ltd., No. 05-CV-60080, 2008 WL 926512, at *3 (S.D. Fla. Mar. 31, 2008) ("By lumping these three defendants together in each claim and providing minimal individualized allegations to distinguish their conduct, even though their roles were different, the Receiver's Complaint challenges the standard of Rule 8."

19

(emphasis added)).  In those cases, the plaintiffs failed to parse out the different roles of each defendant, but now that the Standing Defendants have been dismissed from the case, the Court is left with four Defendants: three of which are New York utility service providers (NM Corp., Keyspan Gas, and Brooklyn Gas), and the fourth is a holding company ostensibly with a large responsibility in utility service (NG USA Service).

Based on the allegations in the Amended Complaint, the remaining Defendants--NM Corp., Keyspan Gas, Brooklyn Gas, and NG USA Service--have sufficient information to prepare a defense. Accordingly, the Court finds that the Amended Complaint does not impermissibly "lump" together Defendants.

### 3.  Vicarious Liability

Next, the Court notes that Plaintiffs have disclaimed a theory of vicarious liability even though Count II appears to be based on that principle.  (Pls.' MTD Br. at 9 ("Plaintiffs' [Amended Complaint] never even mentions 'vicarious liability,' nor pleads any such claims"; see Am. Compl. ¶¶ 122-43.)  Relying on a declaratory ruling issued by the FCC, Plaintiffs argue that third-party debt collectors create direct liability for the creditor. (Pls.' MTD Br. at 5-6 (citing In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C.R. 559 (2008) ("2008 FCC Order")).)  Specifically, the 2008 FCC Order states that "[c]alls placed by a third party collector

on behalf of that creditor are treated as if the creditor itself placed the call."  23 F.C.C.R. at 565 ¶ 10.

But subsequent FCC guidance makes clear that the 2008 FCC Order illustrates vicarious liability, not direct liability. (Defs.' MTD Reply Br. at 3 (citing In re Joint Petition filed by Dish Network, LLC, 28 F.C.C.R. 6574 (2013) ("Dish Network")).)  In fact, under the subsection "Vicarious Liability with Respect to Violations of Section 227(b)," the Dish Network decision quotes the above language from the 2008 FCC Order.  See 28 F.C.C.R. at 6586, and 6589 ¶ 38.  And, to leave no doubt, Dish Network states that the TCPA is "construed to incorporate general common law agency principles of vicarious liability."  28 F.C.C.R. at 6586 ¶ 33; see also Lofton v. Verizon Wireless (VAW) LLC, No. 13-CV-5665, 2015 WL 1254681, at *3 (N.D. Cal. Mar. 18, 2015) (citing Dish Network for the proposition that vicarious liability principles apply to the TCPA); accord McCabe, 2014 WL 3014874, at *3 ("[T]raditional principles of vicarious liability apply to actions brought under the TCPA because any other interpretation would allow companies to evade TCPA liability simply by creative contracting." (internal quotation marks and citation omitted)).

In any event, Plaintiffs have not affirmatively shown a principal-agency relationship with the debt collectors.  See Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015) ("Agency is a 'fiduciary relationship that arises

when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." (quoting Restatement (Third) Agency § 1.01 (2006))). Particularly, despite the presence of the debt collection agreements between various Defendants and debt collectors, there is no indication that Defendants "had the power to give 'interim instructions' . . . the hallmark of an agency relationship." Id. (citing Restatement (Third) Agency § 1.01 cmt. f(1) ("[T]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents.")); see Philips Elec. N. Am., 2015 WL 1650926, at *3.

Thus, Count II is DISMISSED WITHOUT PREJDICE against NM Corp., Keyspan Gas, Brooklyn Gas, and NG USA Service. The Court's usual practice is to allow a plaintiff leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); Hayden v. Cty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) (citing Ronzani v. Sanofi S.A., 889 F.2d 195, 198 (2d Cir. 1990)); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). In any forthcoming complaint, Plaintiffs should make clear whether or not Defendants could give interim instructions to the debt collectors or otherwise exercise the type of control contemplated in principal-agency relationships.

III. <u>Defendants' Motion to Stay</u>

Separately, Defendants request that the Court stay the case pending the resolution of the Petition before the FCC. (Docket Entry 141.)  The Petition asks whether "providing a telephone number to an energy utility constitutes 'prior express consent' to receive non-telemarketing, informational calls at that number related to the customer's utility service."[7]  (FCC Pet., Ex. A, Docket Entry 141-3, at 5.)  Defendants emphasize the importance of this issue because one exemption to TCPA liability is whether the individual called provided "prior express consent" to the caller.  47 U.S.C. § 227(b)(1)(A)(iii) & (B).  In the Amended Complaint, Plaintiffs deny providing "prior express consent" for the calls allegedly made by Defendants.  (Am. Compl. ¶ 1.)  As discussed below, the Court denies Defendants' request.

As an initial matter, the FCC is vested with congressional authority to interpret the TCPA.  47 U.S.C. § 227(b)(2).  Under the primary jurisdiction doctrine, courts must not interfere with any claims whose enforcement "requires the resolution of issues which, under a regulatory scheme, have been

---

[7] Informational calls are generally "warnings about planned or unplanned service outages, messages during natural disasters, service updates, and billing messages that can help customers prevent, plan for, or deal with an interruption in service. And the record demonstrates that utility customers want to receive these notifications."  (Reply Comments to Pet., Ex. B, Docket Entry 141-4, at 1.)

placed within the special competence of an administrative body,"
such as the FCC. United States v. W. Pac. R. Co., 352 U.S. 59,
64, 77 S. Ct. 161, 165, 1 L. Ed. 2d 126 (1956) (citation omitted).
It bears emphasizing, however, that the primary jurisdiction
doctrine has a limited application. See Elkind v. Revlon Consumer
Prods. Corp., No. 14-CV-2484, 2015 WL 2344134, at *9 (E.D.N.Y.
May 14, 2015) ("Courts in the Second Circuit have repeatedly
stressed the doctrine's narrow scope."). Indeed, the doctrines
should be reserved only for those claims that involve "'an issue
of first impression'" or "'a particularly complicated issue that
Congress has committed to a regulatory agency.'" Jovel v. i-
Health, Inc., No. 12-CV-5614, 2013 WL 5437065, at *7 (E.D.N.Y.
Sept. 27, 2013) (quoting Clark v. Time Warner Cable, 523 F.3d 1110,
1114 (9th Cir. 2008)). So "[w]here a legal question is within the
conventional competence of the courts, agency guidance is not
likely to be helpful." King v. Time Warner Cable, 113 F. Supp. 3d
718, 724 (S.D.N.Y. 2015), appeal docketed, No. 15-2474 (2d Cir.
Aug. 6, 2015) (internal quotation marks and citations omitted).

Though "[n]o fixed formula exists for applying the
doctrine of primary jurisdiction," the Second Circuit has
counseled courts to focus on four factors in determining whether
to apply the doctrine:

> (1) whether the question at issue is within
> the conventional experience of judges or
> whether it involves technical or policy

considerations within the agency's particular
field of expertise;

(2) whether the question at issue is
particularly within the agency's discretion;

(3) whether there exists a substantial danger
of inconsistent rulings; and

(4) whether a prior application to the agency
has been made.

Ellis v. Tribune Television Co., 443 F.3d 71, 82-83 (2d Cir. 2006)
(internal quotation marks and citations omitted).  Additionally,
courts should weigh "the advantages of applying the doctrine
against the potential costs resulting from complications and delay
in the administrative proceedings."  Id. (quoting Nat'l Commc'ns
Ass'n, Inc. v. AT&T Co., 46 F.3d 220, 222 (2d Cir. 1995)).

        Viewing the factors collectively, the primary
jurisdiction doctrine is inapplicable here.  Because the Petition
specifically refers to "non-telemarketing, informational calls,"
it is unclear whether the FCC's ruling will relate to debt
collection calls.  (FCC Pet. at 5.)  Nor is it clear when the FCC
will issue a ruling, as the Petition was filed over one year ago.
(FCC Pet. at 17; see Hutchinson Decl., Docket Entry 145-1, ¶ 4
(noting that the FCC received, on average, 4,264 submissions each
year based on 55,430 submissions in a thirteen-year period).)  The
NY GBL claim, moreover, would not be subject to the FCC's ruling.
Compare Molnar v. NCO Fin. Sys., Inc., No. 13-CV-0131, 2015 WL
1906346, at *4 (S.D. Cal. Apr. 20, 2015) ("[T]he Court's interest

in expeditiously resolving this case weighs against a stay pending resolution by the FCC that is both uncertain and may not even address an issue material to this case.") with Mendoza v. UnitedHealth Grp., Inc., No. 13-CV-1553, 2014 WL 722031, at *2 (N.D. Cal. Jan. 6, 2014).

All in all, the Court must underscore that it is the general aim of the courts to secure a "just, speedy, and inexpensive resolution of civil disputes." 28 U.S.C. § 471. Congress, to be sure, vested the FCC with rulemaking authority over the TCPA. 47 U.S.C. § 227(b)(2). Yet the Court is well-equipped to engage in statutory construction. See King, 113 F. Supp. 3d at 724 (denying a motion to stay based on the primary jurisdiction doctrine because the Court was capable of determining the meaning of the clause "prior express consent of the called party" under the TCPA). Thus, in the Court's discretion, Defendants' motion to stay is DENIED. See Trikona Advisors Ltd. v. Kai-Lin Chuang, No. 12-CV-3886, 2013 WL 1182960, at *2 (E.D.N.Y. Mar. 20, 2013) ("It is within the sound discretion of a district court to enter a stay pending the outcome of independent proceedings that are likely to affect a case on its calendar.").

## CONCLUSION

Defendants' motion to dismiss the Complaint (Docket Entry 135) is GRANTED IN PART and DENIED IN PART, and Defendants' motion to stay (Docket Entry 141) is DENIED. The following

Defendants are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction: (1) National Grid PLC; (2) National Grid North America Inc.; (3) National Grid USA; (4) Massachusetts Electric Company; (5) The Narragansett Electric Company; (6) Boston Gas Company; (7) National Grid Electric Services LLC; (8) Colonial Gas Company; (9) Essex Gas Company; (10) Nantucket Electric Company; (11) Keyspan Corporation; and (12) Niagara Mohawk Holdings, Inc. The remaining Defendants are (1) Niagara Mohawk Power Corporation, (2) The Brooklyn Union Gas Company, (3) Keyspan Gas East Corporation, and (4) National Grid USA Service Company, Inc.

Count II of the Amended Complaint is DISMISSED WITHOUT PREJUDICE and with leave to replead in a manner consistent with this Court's opinion. If Plaintiffs wish to file a Second Amended Complaint, they must do so within thirty (30) days of the date of this Memorandum and Order. If Plaintiffs fail to do so, Count II will be dismissed with prejudice.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March __31__, 2016
          Central Islip, New York

27