UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
JARRETT JENKINS, EMMOT STEELE, and
FRANCES ROYAL, on behalf of
themselves and all others similarly
situated,

                         Plaintiffs,          <u>MEMORANDUM & ORDER</u>
                                              15-CV-1219(JS)(GRB)
          -against-

NATIONAL GRID USA, NATIONAL GRID
NORTH AMERICA INC., NATIONAL GRID
PLC, NATIONAL GRID USA SERVICE
COMPANY, INC., NATIONAL GRID
ELECTRIC SERVICES, LLC, BOSTON GAS
COMPANY, COLONIAL GAS COMPANY,
ESSEX GAS COMPANY, KEYSPAN
CORPORATION, KEYSPAN GAS EAST
CORPORATION, MASSACHUSETTS ELECTRIC
COMPANY, NANTUCKET ELECTRIC COMPANY,
NIAGARA MOHAWK HOLDINGS, INC.,
NIAGARA MOHAWK POWER CORPORATION,
THE BROOKLYN UNION GAS COMPANY, and
THE NARRAGANSETT ELECTRIC COMPANY,

                         Defendants.
------------------------------------X
APPEARANCES
For Plaintiffs:      Daniel M. Hutchinson, Esq.
                     Lieff Cabraser Heimann & Bernstein LLP
                     275 Battery Street, 29th Floor
                     San Francisco, California 94111

                     Douglas Ian Cuthbertson, Esq.
                     Jonathan D. Selbin, Esq.
                     Michael Frederick Decker, Esq.
                     Lieff Cabraser Heimann & Bernstein LLP
                     250 Hudson Street, 8th Floor
                     New York, New York 10003

                     Joseph S. Tusa, Esq.
                     Tusa, P.C.
                     53345 Main Road, Suite 10-1
                     Southhold, New York 11971

```
For Defendants:        Richard H. Brown, Esq.
                       Day Pitney LLP
                       7 Times Square
                       New York, New York 10036

                       Anthony Joseph Marchetta, Esq.
                       Day Pitney LLP
                       1 Jefferson Road
                       Parsippany, New Jersey 07054

For Interested
Party Experian
Information
Solutions, Inc.:       Chris J. Lopata, Esq.
                       Jones Day
                       222 East 41st Street
                       New York, New York 10017
```

SEYBERT, District Judge:

In this putative class action, Plaintiffs Jarrett Jenkins ("Jenkins"), Emmot Steele (Steele") and Frances Royal ("Royal" and collectively "Plaintiffs") allege that Defendants Niagara Mohawk Power Corporation, Keyspan Gas East Corporation, the Brooklyn Union Gas Company and National Grid USA Service Company, Inc. ("National Grid USA Services" and collectively "Defendants")[1] violated the Telephone Consumer Protection Act, 47

---

[1] The Court previously dismissed the following twelve defendants for lack of subject matter jurisdiction: (1) National Grid PLC; (2) National Grid North America Inc.; (3) National Grid USA; (4) Massachusetts Electric Company; (5) The Narragansett Electric Company; (6) Boston Gas Company; (7) National Grid Electric Services LLC; (8) Colonial Gas Company; (9) Essex Gas Company; (10) Nantucket Electric Company; (11) Keyspan Corporation; and (12) Niagara Mohawk Holdings, Inc. (collectively, the "Dismissed Defendants"). (See March 2016 M&O, Docket Entry 152, at 15.) The Court will address Plaintiffs' inclusion of the Dismissed Defendants in the Second Amended Complaint in greater detail infra.

U.S.C. § 227, et seq. (the "TCPA") and New York General Business Law ("NY GBL") § 399-p.

Currently pending before the Court are: (1) Defendants' motion to dismiss the Second Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim (Docket Entries 159, 160)[2] and (2) Defendants' motion to dismiss or, in the alternative, to stay Count II of the Second Amended Complaint as to Jenkins (Docket Entry 161).[3]  For the following reasons, Defendants' motion to dismiss for failure to state a claim, lack of subject matter jurisdiction, and lack of

_____

[2] Defendants initially filed a sealed copy of their motion (Docket Entry 159) and a public version of their motion with redactions (Docket Entry 160) without asking for leave from this Court.  Although the parties have a confidentiality order in place, (See Confi. Order, Docket Entry 132-1), they must seek permission to file documents under seal before doing so.  On February 24, 2017, this Court directed Defendants to explain why the motion and attached exhibits should remain sealed. (Electronic Order, Feb. 24, 2017.)  Defendants responded that, with the exception of Exhibit A to the Brown Declaration (Docket Entry 159-4), the motion could be unsealed.  (Defs.' Ltr., Docket Entry 212.)  Accordingly, the motion was unsealed, and a redacted version of Exhibit A to the Brown Declaration was filed as Docket Entry 159-5.  Although Docket Entries 159 and 160 are essentially the same motion, the Court has included both entries here to ensure that both motions are resolved.  However, the Court will refer to Docket Entry 159 as the operative motion.

[3] As of January 2016, the undersigned's Individual Practices require that a party request a pre-motion conference before moving to dismiss under Rule 12.  See Individual Rule IV.G. Despite Defendants' failure to do so, the Court will consider the motions.  However, Defendants are directed to review this Court's rules before engaging in further motion practice.

personal jurisdiction (Docket Entries 159, 160) is GRANTED IN PART and DENIED IN PART, and Defendants' motion to dismiss or stay Count II as to Jenkins (Docket Entry 161) is DENIED.

BACKGROUND

I.   Factual Background[4]

The Court assumes familiarity with the facts of this case, which are detailed in this Court's Order dated March 31, 2016.  (March 2016 Order at 3-5.)

Briefly, National Grid PLC ("National Grid") is a utility company that provides gas and electricity to consumers in the northeast United States.  (Sec. Am. Compl., Docket Entry 214, ¶¶ 21, 23.)[5]   The company has a complex corporate structure,

---

[4] The facts alleged in the Second Amended Complaint are presumed to be true for the purposes of this Memorandum and Order.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572, 127 S. Ct. 1955, 1975, 167 L. Ed. 2d 929 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks and citation omitted)).

[5] Initially, Plaintiffs filed the Second Amended Complaint under seal without asking for leave from this Court. (Sealed Sec. Am. Compl., Docket Entry 158.)  As discussed, permission from the Court is required before filing any document under seal.  See supra note 2.  On February 27, 2017, the Court directed Plaintiffs to explain why the Second Amended Complaint, exhibits and certain other documents should remain sealed.  (Electronic Order, Feb. 27, 2017.)  Plaintiffs subsequently agreed to re-file the Second Amended Complaint and exhibits with redactions and did so on March 7, 2017.  (Pls.' Ltr., Docket Entry 210; Pls.' Sec. Ltr., Docket Entry 213.)  The Court regards the redacted Second Amended Complaint docketed at Docket Entry 214 as the operative complaint in this action.

including several holding companies and numerous regional subsidiaries. (<u>See</u> List of Subsidiaries, Sec. Am. Compl. Ex. 1, Docket Entry 214-1.) Three of the Defendants--Niagara Mohawk Power Corporation ("Niagara Mohawk"), Keyspan Gas East Corporation ("Keyspan East") and the Brooklyn Union Gas Company ("Brooklyn Union")--are distributors of electricity and/or natural gas and subsidiaries of National Grid. (Sec. Am. Compl. ¶¶ 25-28.) The remaining Defendant, National Grid USA Service Company, Inc., "render[s] . . . services, to companies in the National Grid USA holding company system," including, <u>inter</u> <u>alia</u>, accounting, customer services and property acquisition and management. (Sec. Am. Compl. ¶ 29.) For regulatory purposes, National Grid has "retained certain historical legacy corporate names" such as Niagara Mohawk, Keyspan East, and Brooklyn Union; however, National Grid is "the only name used for customer interaction." (Sec. Am. Compl. ¶ 21.) In other words, "regardless of the technical legal name of the company involved," National Grid operates as a "single utility company" and uses the National Grid "name for all public-facing purposes—including marketing, billing, and service matters." (Sec. Am. Compl. ¶ 21.)

Plaintiffs allege that Defendants and their agents violated the TCPA by contacting customers via their cellular telephone numbers using automated telephone dialing systems and automated or prerecorded voice messages without their prior

express consent. (Sec. Am. Compl. ¶ 1.) Plaintiffs further allege that Defendants and their agents called New York customers' residential and cellular telephone numbers and left prerecorded messages that violated NY GBL § 399-p. (Sec. Am. Compl. ¶ 2.) In addition to calls made by Defendants on their own behalf, Plaintiffs maintain that Defendants are vicariously liable for violations of the TCPA and NY GBL § 399 by third parties hired by Defendants. (Sec. Am. Compl. ¶¶ 4, 6.) Such agents included debt collectors hired by Defendants to collect outstanding bills. (Sec. Am. Compl. ¶¶ 7-8.)

## II.  Procedural History

Plaintiff Jenkins filed the original complaint on March 9, 2015 against fourteen National Grid entities. (Compl., Docket Entry 1.) Those entities moved to dismiss on April 30, 2015. (First Mot., Docket Entry 80.) While the motion was pending, the parties agreed to allow Plaintiff to either oppose the motion or file an Amended Complaint, and Plaintiff elected to file an Amended Complaint on July 2, 2015. (Order, Docket Entry 97; Am. Compl., Docket Entry 99.) The Amended Complaint named sixteen National Grid entities and added two Plaintiffs, Royal and Steele. (See, Am. Compl.) On August 24, 2015, the National Grid entities moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6). (Sec. Mot., Docket Entry 135.) Additionally, they filed a motion to stay the case

pending a decision by the Federal Communications Commission on an issue they deemed pertinent to the case. (Mot. to Stay, Docket Entry 141.)

>    A.   The Court's Prior Order

On March 31, 2016, the Court granted the motion to dismiss in part and denied it in part, and denied the motion to stay. (March 2016 Order at 26-27.) The Court summarizes the relevant determinations below.

First, the Court dismissed, without prejudice, the claims against twelve of the sixteen National Grid entities (the "Dismissed Defendants").[6] (Id. at 2 n.1, 15.) The Court held that it lacked subject matter jurisdiction over the Dismissed Defendants because Plaintiff failed to demonstrate an injury-in-fact as required by Article III of the Constitution. (Id. at 10-11.) Specifically, the Court held that the Dismissed Defendants "ha[d] no plausible connection to Plaintiffs' alleged injuries" because the injuries arose from the provision of utility services in New York, and none of the Dismissed Defendants provided utility services in New York. (See id. at 11-12.) The Court rejected Plaintiffs' arguments that the Dismissed Defendants were liable as co-conspirators or as parent companies of National Grid subsidiaries. (Id. at 13-15.) Significantly, the Court declined

---

[6] See supra note 1.

to grant Plaintiffs leave to re-plead subject matter jurisdiction as to the Dismissed Defendants in any subsequent complaint.[7]

Second, the Court addressed the sufficiency of the allegations as to the remaining Defendants--Niagara Mohawk, Keyspan East, Brooklyn Union, and National Grid USA Services.[8] The Court focused on the allegations in Count II of the Amended Complaint, namely, that Defendants were liable for the conduct of third party debt collectors. The Court noted that although Plaintiffs advanced a theory of direct liability, the TCPA "is construed to incorporate common law agency principles of vicarious liability." (Id. at 20-21 (quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C.R. 6574 (2013)).)

The Court then examined whether the allegations demonstrated a principal-agent relationship between Defendants and the debt collectors and found that "Plaintiffs ha[d] not affirmatively shown a principal-agent[ ] relationship with the debt collectors." (Id. at 21.) Specifically, the Court held that

---

[7] Nine of the sixteen National Grid entities named in the Amended Complaint also moved to dismiss for lack of personal jurisdiction. However, because the claims against those nine entities were dismissed due to lack of subject matter jurisdiction, the Court found the personal jurisdiction arguments to be moot. (March 2016 Order at 15.)

[8] Initially, Defendants argued that Plaintiffs' Amended Complaint "lumped" the entities together and failed to set forth specific allegations against each Defendant. (March 2016 Order at 17.) The Court disagreed. (Id. at 18-20.)

"there [was] no indication that Defendants had the power to give interim instructions" to the debt collectors. (Id. at 22 (internal quotation marks omitted).) As a result, the Court dismissed Count II without prejudice but granted to leave to amend. (Id.) The Court directed that "[p]laintiffs should make clear [in their Second Amended Complaint] whether or not Defendants could give interim instructions to the debt collectors or otherwise exercise the type of control contemplated in principal-agency relationships." (Id.)

B.    The Second Amended Complaint

Plaintiffs filed their Second Amended Complaint on May 5, 2016, asserting four causes of action: (1) violations of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A), on behalf of Plaintiffs and a class of customers directly contacted by National Grid (the "TCPA Direct-Dialed Class"); (2) violations of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A), on behalf of Plaintiffs and a class of customers contacted by third parties (the "TCPA Agent-Dialed Class"); (3) violations of NY GBL § 399-p on behalf of Plaintiffs and a class of New York customers directly contacted by National Grid (the "GBL § 399-p Direct-Dialed Class"); and (4) violations of NY GBL § 399-p on behalf of Plaintiffs and a class of New York customers contacted by third-parties (the "GBL § 399-

p Agent-Dialed Class").[9]  (Sec. Am. Compl. ¶¶ 118-182.)  For ease of reference, the Court will refer to the claims as Count I, Count II, Count III, and Count IV.  Although Counts I and III are broadly similar to the First Amended Complaint, Plaintiffs added Count IV, a vicarious liability claim for violations of NY GBL § 399-p. (Sec. Am. Compl. ¶¶ 165-182.)  Of note, Plaintiffs included the Dismissed Defendants in the Second Amended Complaint, which they contend is necessary to preserve their appeal rights.  (Sec. Am. Compl. at 1, 2 n.1.)

Pursuant to the Court's Order, the Second Amended Complaint contains more detailed allegations related to Count II, the TCPA vicarious liability claim.  For example, Plaintiffs allege that Defendants retained numerous third party debt collectors during the relevant class periods, and that Defendants are vicariously liable for violations of the TCPA by those debt collectors based on three theories: (1) express or implied agency, (2) apparent authority, and (3) ratification.[10]  (Sec. Am. Compl.

---

[9] The sealed version of the Second Amended Complaint was filed on May 5, 2016.  However, as indicated above, the Court will treat the redacted version of the Second Amended Complaint, filed at Docket Entry 214, as the operative complaint.  See supra note 5.

[10] The Second Amended Complaint alleges that Defendants hired the following debt collectors during the relevant class periods: "(1) NCO Financial Services, Inc.; (2) Mercantile Adjustment Bureau, LLC; (3) Allied Account Services; (4) Credit Protection Association, L.P.; (5) Rochester Credit Center, Inc., d/b/a The Credit Bureau/NACM New York; (6) Collecto, Inc. d/b/a EOS CCA; (7) I.C. System, Inc.; (8) NRA Group a/k/a National Recovery

¶¶ 57-69.)  Plaintiffs allege that Defendants executed Collection

Agency Account Collection Agreements (the "Agreements") with these

debt collectors which "provid[ed] that Defendants would exercise

control over their debt collectors' collection activities." (Sec.

Am. Compl. ¶ 60.)  They further aver that the Agreements, which

include Scope of Work specifications ("Scope of Work"), "vest

Defendants with the power to provide interim instructions to their

debt collectors directing their debt collection conduct." (Sec.

Am. Compl. ¶ 61.)  Plaintiffs point to several provisions in the

Agreements and Scope of Work to support this theory, including

provisions that give Defendants the authority to determine which

accounts to assign to debt collectors, provisions that require

weekly progress and remittance reports, and provisions requiring

Defendants' approval for certain decisions.[11]  (Sec. Am. Compl.

¶ 62.)  Moreover, the Scope of Work includes minimum work

requirements that debt collectors must meet.  (Sec. Am. Compl.

¶ 64.)  As to the apparent authority theory, Plaintiffs allege

that "Defendants vest their debt collectors with apparent

authority . . . by permitting their debt collectors to represent

---

Agency, Inc.; (9) Penn Credit Corporation; (10) RUI a/k/a
Recovery's Unlimited East, Inc.; [and] (11) Solomon and Solomon,
P.C." (Sec. Am. Compl. ¶ 59.)

[11] The Court has limited direct quotations and discussion of
specific contractual provisions in an effort to preserve the
confidentiality of the redacted portions of the Second Amended
Complaint.

to consumers in letters and during telephone calls that the debt collectors are authorized to act on Defendants' behalf." (Sec. Am. Compl. ¶ 66.) Finally, Plaintiffs allege that Defendants "ratify the[ ] . . . debt collectors' actions by knowingly accepting the benefits of their conduct." (Sec. Am. Compl. ¶ 69.)

C.  The Pending Motions

On May 19, 2016, Defendants filed a motion to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6). (Defs.' Third Mot., Docket Entry 159, 160.) Plaintiffs filed their opposition on June 24, 2016, and Defendants filed their reply on July 8, 2016. (Pls.' Third Opp., Docket Entry 167; Defs.' Third Reply, Docket Entry 170.)

On May 26, 2016, Defendants filed a motion to dismiss Count II or, in the alternative, to stay Count II as to Jenkins. (Defs.' Fourth Mot., Docket Entry 161.) Plaintiffs opposed the motion on July 1, 2016, and Defendants filed their reply on July 15, 2016. (Pls.' Fourth Opp., Docket Entry 169; Defs.' Fourth Reply, Docket Entry 171.)

D.  The Relevant Statutes

The TCPA was enacted to address concerns that telemarketing "'can be an intrusive invasion of privacy.'" Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372, 132 S. Ct. 740, 745, 181 L. Ed. 2d. 881 (2012) (quoting TCPA 105 Stat. 2394 note

following 47 U.S.C. § 227).  Particularly, the statute was aimed at minimizing automated and pre-recorded calls to customers' homes.  See Mims, 565 U.S. at 372, 132 S. Ct. at 745.  Subject to certain exceptions, the TCPA prohibits the use of artificial or prerecorded voice messages to call residential telephone lines "without the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(B).  The statute also prohibits the use of automatic telephone dialing systems and artificial or prerecorded voice messages to call pagers, cellular telephones, or other devices which charge the called party for the cost of the call "without the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A)(iii).  Plaintiffs may recover damages in the amount of the "'actual monetary loss from such violation, or . . . $500 in damages for each violation, whichever is greater.'"  Ziegler v. Allied Commercial Roofing, Inc., No. 13-CV-2638, 2014 WL 4437316, at *2 (E.D.N.Y. Sept. 9, 2014) (quoting 47 U.S.C. § 227(b)(3)(B) (ellipsis in original)).  "'If the court finds that the defendant willfully or knowingly violated [the statute,] the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available.'"  Ziegler, 2014 WL 4437316, at *2 (quoting 47 U.S.C. § 227(b)(3) (brackets in original)).

NY GBL § 399-p requires, inter alia, that when a call is made using an "automatic dialing-announcing service," the device

shall "state at the beginning of the call the nature of the call and the name of the person or on whose behalf the message is being transmitted and at the end of such message the address, and telephone number of the person on whose behalf the message is transmitted, provided such disclosures are not otherwise prohibited or restricted by any federal, state or local law." N.Y. GEN. BUS. LAW § 399-p(3)(a). Plaintiffs may recover $100 in damages per violation. Ziegler, 2014 WL 4437316, at *2 (citing N.Y. GEN. BUS. LAW § 396-aa).

## DISCUSSION

At the outset, the Court will address two preliminary issues: (1) the inclusion of the Dismissed Defendants in the Second Amended Complaint and (2) the viability of Count IV, Plaintiffs' vicarious liability claim under NY GBL § 399-p.

## I.    The Dismissed Defendants

In a footnote, the Second Amended Complaint states: "Plaintiffs acknowledge that the Court dismissed the claims alleged in Plaintiffs' First Amended Class Action Complaint" against the Dismissed Defendants but "incorporate by reference their First Amended Class Action Complaint, including paragraphs 11-32 and 36-62, to preserve the claims made against those defendants for appeal." (Sec. Am. Compl. at 2, n.1.) They refer to a Second Circuit case, P. Stolz Family Partnership L.P. v. Daum, 355 F.3d 92 (2d Cir. 2004), for support. Defendants argue that

14

Plaintiffs have misinterpreted _Stolz_ and that re-naming the Dismissed Defendants is not necessary to preserve appeal rights. (Defs.' Third Br., Docket Entry 159-2, at 22-23.)  They contend that this error has forced them to re-move to dismiss these defendants for lack of subject matter jurisdiction, or alternatively, lack of personal jurisdiction. (Defs.' Third Br. at 22-23.)  They ask the Court to dismiss these defendants and strike footnote one of the Second Amended Complaint, which incorporates by reference allegations related to the Dismissed Defendants from the First Amended Complaint. (Defs.' Third Br. at 23.)  In opposition, Plaintiffs argue that _Stolz_ left open whether claims dismissed without prejudice are waived on appeal if not included in an amended pleading. (Pls.' Third Opp., Docket Entry 167, at 23.)

In _Stolz_, plaintiff filed a two-count complaint for violations of the securities laws, and the district court dismissed Count II in its entirety and dismissed Count I as to one defendant. _Stolz_, 355 F.3d at 95.  Thereafter, plaintiff amended its complaint but did not re-plead Count II.  _Id._  On appeal, defendant argued that plaintiff had waived its opportunity to appeal the dismissal of Count II.  _Id._ at 96.  The Second Circuit rejected this argument and held that, in an amended complaint, a party is not required to "replead a dismissed claim in order to preserve the right to appeal the dismissal when the court has not granted leave to amend."  _Id._

The Court further held that plaintiff could properly appeal the dismissal of Count II.  <u>Id.</u>

This Court did not grant leave to amend the allegations against the Dismissed Defendants.  Thus, it is unnecessary for Plaintiffs to plead these allegations in the Second Amended Complaint to preserve their right to appeal the dismissal.  <u>See, e.g.</u>, <u>Leber v. Citigroup, Inc.</u>, No. 07-CV-9329, 2011 WL 5428784, at *2 n.1 (S.D.N.Y. Nov. 8, 2011) (holding that there was "no need" for Plaintiffs to plead two counts dismissed without leave to amend to preserve appeal rights).[12]

For the avoidance of doubt, the claims against National Grid PLC, National Grid North America Inc., National Grid USA, Massachusetts Electric Company, The Narragansett Electric Company, Boston Gas Company, National Grid Electric Services LLC, Colonial Gas Company, Essex Gas Company, Nantucket Electric Company,

_____

[12] For support, Plaintiffs cite <u>Elliott v. City of Hartford</u>, 649 F. App'x 31 (2d Cir. 2016).  (Pls.' Third Opp. at 24.)  In that case, the Second Circuit discussed whether the district court erred when it assumed that plaintiff had waived certain claims when she sought leave to file a third amended complaint that omitted claims that were in her second amended complaint. <u>Elliott</u>, 649 F. App'x at 32.  The Second Circuit affirmed the decision of the district court, finding no error in its determination that the claims were waived.  <u>Id.</u> at 33.  However, <u>Elliott</u> does not address the issue here.  In this case, Plaintiffs did not seek leave to amend, nor were they granted leave to amend by the Court.  Additionally, <u>Elliott</u> focuses on waiver--not whether claims dismissed by the Court must be included in subsequent pleadings to preserve appeal rights.  As set forth above, the case that is controlling on that issue, <u>Stolz</u>, clearly states that it is unnecessary.

Keyspan Corporation, and Niagara Mohawk Holdings, Inc. are DISMISSED for lack of subject matter jurisdiction as stated in the Court's March 31, 2016 Order.[13]  Accordingly, the Court STRIKES the Dismissed Defendants from the Second Amended Complaint.  The Court further STRIKES the allegations in footnote one and paragraph 30 of the Second Amended Complaint incorporating by reference allegations from the First Amended Complaint.[14]

## II.   The NY GBL § 399-p Vicarious Liability Claim

Defendants argue that Count IV, the vicarious liability claim under NY GBL § 399-p, must be dismissed because the Court did not grant leave to add this claim.  (Defs.' Third Br. at 15.) Specifically, they maintain that Plaintiffs were given leave to re-plead only Count II, the TCPA vicarious liability claim, and that Plaintiffs did not separately request leave to add a second vicarious liability claim.[15]  (Defs.' Third Br. at 15.)  Plaintiffs contend that the Court "did not limit amendment to the TCPA

---

[13] Because the dismissal moots Defendants' personal jurisdiction arguments, the Court declines to address them.  (March 2016 Order at 15.)

[14] The court may strike "redundant, immaterial [or] impertinent" matter from any pleading pursuant to Federal Rule of Civil Procedure 12(f).  FED. R. CIV. P. 12(f).  The Court finds that the allegations from the First Amended Complaint related to the Dismissed Defendants are immaterial and impertinent in light of its prior decision.

[15] Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  FED. R. CIV. P. 15(a)(2).

[claim]" and they "followed both the letter and spirit of the Court's ruling[ ] by amending their complaint to include vicarious liability claims . . . under the TCPA (Count II) and [NY] GBL § 399-p (Count IV)."  (Pls.' Third Opp. at 20.)  Plaintiffs also broadly assert that the Court "granted Plaintiffs leave to re-plead Defendants' vicarious liability for the unlawful acts of their agents."  (Pls.' Third Opp. at 21.)

Plaintiffs have misconstrued the Court's prior Order. The Court only discussed leave to amend in the context of Count II.  (March 2016 Order at 22.)  Moreover, the Court concluded: "Count II of the Amended Complaint is DISMISSED WITHOUT PREJUDICE and with leave to replead in a manner consistent with this Court's opinion."  Id. at 27 (first emphasis supplied).  Plaintiffs were entitled to replead Count II, the TCPA vicarious liability claim, but were not entitled to add an additional claim.  Thus, Count IV of the Second Amended Complaint is DISMISSED.  See Palm Beach Strategic Income, LP v. Salzman, 457 F. App'x 40, 43 (2d Cir. 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted.").

III. Sufficiency of Plaintiffs' Count II Allegations

The Court now turns to the heart of Defendants' motion. Defendants argue that Count II of the Second Amended Complaint

must be dismissed pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6). (Defs.' Third Br. at 2.) They argue that Count II fails to state a claim for vicarious liability because Plaintiffs' allegations do not demonstrate a principal-agent relationship. (Defs.' Third Br. at 6-7.) Additionally, Defendants argue that Plaintiffs' allegations fail to establish that Plaintiffs relied on the debt collectors' apparent authority or that Defendants knew of the alleged TCPA violations and accepted payments obtained as a result of such violations. (Defs.' Third Br. at 6.) The Court will discuss the relevant legal standards before analyzing Defendants' arguments.

### A. Legal Standards

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although the Court must

accept all allegations in the Amended Complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950.

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, the Court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citation omitted); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect") (internal quotation marks and citation omitted).

It is well established that companies can be vicariously liable for violations of the TCPA. See In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6586 (2013) ("We find that

vicarious seller liability under federal common law agency principles [are] . . . available for violations of section 227(b).”); Campbell-Ewald Co. v. Gomez, --- U.S. ----, 136 S. Ct. 663, 674, 193 L. Ed. 2d 571 (2016) (stating that the Court had “no cause to question” the Federal Communications Commission’s determination that “there is vicarious liability for TCPA violations”). Plaintiffs seeking to hold companies vicariously liable for the TCPA violations of third parties can show either that (1) there was a principal-agent relationship between them, (2) the third party acted with apparent authority or (3) the company ratified the conduct of the third party. See Dish Network, 28 F.C.C.R. at 6586-87.

B.    Agency Theory

Plaintiffs allege that Defendants are vicariously liable for the conduct of the debt collectors because the debt collectors were Defendants’ agents. (Sec. Am. Compl. ¶ 4.) To demonstrate an agency relationship, Plaintiffs rely on provisions in the Agreements between Defendants and the debt collectors to show that Defendants had sufficient control over the debt collectors’ conduct. (See Sec. Am. Compl. ¶¶ 60-64.) Defendants argue that the Agreements do not demonstrate that Defendants had the “right to give interim instructions or to otherwise control the debt collectors’ means and methods,” but merely show a contractual relationship between them. (Defs.’ Third Br. at 6-7.) Defendants

contend that the Agreements are analogous to service contracts, and at most, demonstrate that the Defendants "exercised general supervisory power over the debt collectors" while the debt collectors retained control over their operations. (Defs.'Third Br. at 8-9.) They also point out that the Agreements do not dictate the "equipment to be used by the debt collectors," "the manner in which [they] . . . contact customers" and "the content of the messages conveyed to customers." (Defs.' Third Br. at 10-11.) Finally, Defendants emphasize that they cannot be vicariously liable for the debt collector's actions because the Agreements state that while engaged in collection services, the debt collectors were acting as independent contractors. (Defs.' Third Br. at 11.)

The Court looks to the federal common law of agency to determine whether Plaintiffs have plausibly alleged an agency relationship between Defendants and the debt collectors. "'Agency is a fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consent to act.'" Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015) (quoting Restatement (Third) Agency § 1.01 (2006)). Of particular importance is whether Defendants had the power to give interim instructions to the debt

collectors, which has been deemed "the hallmark of an agency relationship." <u>Jackson</u>, 88 F. Supp. 3d at 138 (citing Restatement (Third) Agency § 1.01 cmt. f(1)). Determining whether a principal-agent relationship exists is a fact-sensitive inquiry and "can turn on a number of factors including: 'the situation of the parties, their relations to another, and the business in which they are engaged; the general usages of the business in question and the purported principal's business methods; the nature of the subject matters and the circumstances under which the business is done.'" <u>Melito v. Am. Eagle Outfitters, Inc.</u>, Nos. 14-CV-2440, 15-CV-0039, 15-CV-2370, 2015 WL 7736547, at *6 (S.D.N.Y. Nov. 30, 2015) (quoting <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 522 (2d Cir. 2006)).

The Court finds that Plaintiffs have plausibly alleged that the debt collectors operated as agents of Defendants. The Second Amended Complaint contains detailed allegations concerning the relationship between Defendants and the debt collectors, including allegations regarding the level of control Defendants exercised over the debt collectors pursuant to the Agreements and Scope of Work specifications. (<u>See</u> <u>generally</u> Sec. Am. Compl. ¶¶ 57-69.) For example, Plaintiffs allege that Defendants control the means and methods used by the debt collectors through minimum work requirements and provisions mandating the method and frequency of contact with consumers. (<u>See</u> Sec. Am. Compl. ¶¶ 63-

64.) Defendants also control whether the debt collectors can take certain steps during the collection process, (Sec. Am. Compl. ¶ 62), and the Scope of Work requires that Defendants and the debt collectors meet periodically and/or as needed to discuss and implement strategies for improvement (Sec. Am. Compl. ¶ 68). These allegations, taken collectively, are sufficient to withstand a motion to dismiss.

The Court is mindful that several courts have dismissed vicarious liability claims on 12(b)(6) grounds. However, Plaintiffs' allegations here demonstrate a greater degree of control over the debt collectors by Defendants. See, e.g., Melito, 2015 WL 7736547 at *7 (dismissing TCPA vicarious liability claim where Plaintiffs failed to plead "any factual content regarding the relationship" between the alleged principal and agent because Plaintiffs "cannot simply allege general control in a vacuum"); Jackson, 88 F. Supp. 3d at 139 (dismissing TCPA vicarious liability claim because the complaint did not contain any allegations that alleged principal had power to give interim instructions to alleged agent or any allegations of direction or control by the alleged principal); Reo v. Caribbean Cruise Line, Inc., No. 14-CV-1374, 2016 WL 1109042, at *5 (N.D. Ohio Mar. 18, 2016) (dismissing TCPA vicarious liability claim where Plaintiffs alleged only that alleged principal retained alleged agent to solicit business and alleged agent made phone calls to consumers). Cf. McCabe v.

Caribbean Cruise Line, Inc., No. 13-CV-6131, 2014 WL 3014874, at *4 (E.D.N.Y. July 3, 2014) (holding that allegation that call was made by alleged agent pursuant to a contract with principal was sufficient to state claim).

Defendants argue that the debt collectors are akin to independent contractors and cite to a provision in the Agreements that refers to the debt collectors as independent contractors. (Defs.' Third Br. at 8, 11-12.) Defendants contend that under New York law, if the debt collectors are independent contractors, Defendants are not liable for any TCPA violations committed by the debt collectors. (Defs.' Third Br. at 8.) However, the Court must examine the relationship between Defendants and the debt collectors to determine the nature of the relationship regardless of how the parties have characterized it. See In re Shulman Transport Enters., Inc., 744 F.2d 293, 295 (2d Cir. 1984) ("[T]he relationship between contracting parties must be determined by its real character rather than by the form and color that the parties have given it . . . An employee does not become an independent contractor simply because a contract describes him as such."). The Court has considered Plaintiffs' allegations, and at this point, determines that it is plausible that the debt collectors were Defendants' agents. The allegations do not prove that there was a principal-agent relationship, but that is not the Plaintiffs'

burden at this juncture. Accordingly, Defendants' motion to dismiss Count II is DENIED.[16]

IV. <u>Jenkins' Allegations</u>

Defendants move to dismiss Jenkins' claims under Count I and Count II.[17] They argue that Jenkins fails to state a claim for direct liability under Count I because the Second Amended Complaint does not allege that Jenkins was contacted by Defendants. (Defs.' Third Br. at 20-21.) Additionally, they move to dismiss or, alternatively, to stay Jenkins' claims for vicarious liability under Count II because he is pursuing a separate lawsuit against NCO Financial Systems, Inc., one of the debt collectors hired by Defendants. (Defs.' Fourth Br., Docket Entry 161-1, at 1.) Defendants contend that his potential recovery in both actions would be a violation of the rule against double recovery. (Defs.' Fourth Br. at 1.)

---

[16] Because the above-referenced agency allegations are sufficient to state a claim for vicarious liability under the TCPA, the Court declines to address either Plaintiffs' apparent authority or ratification theories.

[17] Initially, Defendants moved to dismiss Royal's claims under Counts III and IV. (Defs.' Third Br. at 20.) However, in light of Defendants' withdrawal of their motion to dismiss Royal's claims under Count III, and the Court's dismissal of Court IV as procedurally improper, the Court addresses only the remaining arguments as to Jenkins. (<u>See</u> Defs.' Third Reply at 2 n.1.)

A.  <u>Sufficiency of Jenkins' Count I Allegations</u>

Defendants argue that Jenkins does not state a claim under Count I because Count I seeks to hold Defendants liable for calls made by them directly to customers, and Jenkins alleges that he was called only by debt collectors.  (Defs.' Third Br. at 20-21.)  Defendants further argue that any calls alleged to have been made by Defendants are outside the applicable statute of limitations.  (Defs.' Third Br. at 21 n.15.)  Plaintiffs' argue that Defendants are barred from seeking dismissal of Jenkins' direct liability claims pursuant to Federal Rule of Civil Procedure 12(g)(2) because Defendants omitted this argument from their earlier motion to dismiss.  (Pls.' Third Opp. at 21.)  Defendants' respond that these arguments are not barred and urge the Court to address them now.  (Defs.' Third Reply at 8-9.)

Although Plaintiffs' procedural argument has merit, the Court will consider Defendants' arguments in the interest of judicial efficiency.[18]  The Court agrees that Jenkins must be

---

[18] As a technical matter, because Defendants failed to raise these arguments in their prior motion to dismiss, the rules preclude them from raising them in a subsequent motion to dismiss.  Specifically, Federal Rule of Civil Procedure 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion" with certain exceptions.  Fed. R. Civ. P. 12(g)(2).  However, Defendants could have raised these arguments in their answer, a Rule 12(c) motion, or at trial.  <u>See</u> Fed. R. Civ. P. 12(h)(2).  The Court finds it prudent to address these

dismissed from Count I. The Second Amended Complaint does not contain any plausible allegations that Jenkins was contacted directly by Defendants. (See generally Sec. Am. Compl. ¶¶ 70-93.) Moreover, there is no mention of calls to Jenkins in the allegations under Count I. (See Sec. Am. Compl. ¶¶ 118-129.) To the extent Jenkins received calls from Defendants prior to the calls he received from debt collectors, those calls are outside the statute of limitations.[19] (See Sec. Am. Compl. ¶ 92.) Accordingly, Defendants' motion to dismiss Jenkins from Count I is GRANTED, and Jenkins Count I claims are DISMISSED.

B. Jenkins' Recovery under Count II

In a separate motion, Defendants argue that Jenkins' claims under Count II must be dismissed because he has already recovered from NCO Financial Systems, Inc., a debt collector retained by Defendants, based on the same calls at issue in this case. (Defs.' Fourth Br. at 1.) In Jenkins v. NCO Financial Systems, Inc. (the "NCO Action"), Jenkins alleged that NCO violated the TCPA when it made calls to his cell phone using an automatic

---

issues now rather than delay resolution until Defendants' inevitable Rule 12(c) motion.

[19] Jenkins alleges that Defendants called him prior to March 7, 2011. (See Sec. Am. Compl. ¶¶ 73, 92.) However, TCPA claims have a four-year statute of limitations, and based on the filing of the Complaint in this action, Plaintiffs can only recover for calls placed after March 9, 2011. (See Compl.) See Giovanniello v. ALM Media, 726 F.3d 106, 107 (2d Cir. 2013).

dialing system between 2011 and 2013. (See, Jenkins v. NCO Financial Systems, Inc., ("Jenkins v. NCO") No. 14-CV-4125, Am. Compl., Docket Entry 18-1, ¶¶ 10-12.) While this motion was being briefed, Jenkins represented that he had settled his claims against NCO, and on September 2, 2016, Jenkins voluntarily dismissed the NCO Action with prejudice. (Jenkins v. NCO, Notice of Voluntary Dismissal, Docket Entry 75.) There is no information on the docket regarding the settlement terms or the amount Jenkins received.

Defendants contend that because Jenkins' claims under Count II relate only to calls made by NCO, and he has already recovered damages for those calls, Jenkins must be dismissed from Count II.[20] (Defs.' Fourth Br. at 4-6.) They argue that allowing Jenkins to proceed would violate the rule against double recovery because Jenkins is seeking additional compensation for the same injury. (Defs.' Fourth Br. at 4-6.) Plaintiffs respond that Defendants' motion, which was filed after the deadline for motions to dismiss the Second Amended Complaint, is untimely and barred by Federal Rule of Civil Procedure 12(g)(2). (Pls.' Fourth Opp. at 4.) Plaintiffs maintain that, consistent with this Court's prior ruling, Defendants can be vicariously liable for the TCPA violations of their agents and that each violation of the TCPA is

---

[20] As an alternative, Defendants requested that the Court stay Count II as to Jenkins until the NCO Action is resolved. However, because the NCO Action is closed, the request to stay is moot.

actionable.  (Pls.' Fourth Opp. at 5-7.)  For example, they argue, a single call may give rise to multiple violations, and a plaintiff can recover for each violation.  (Pls.' Fourth Opp. at 6-7.) Plaintiffs also represent that Jenkins' settlement in the NCO Action is less than the statutory damages provided for by the TCPA ($500 per call).  (Pls.' Fourth Opp. at 8.)  On reply, Defendants assert that the instant motion is not governed by Rule 12 or the court-ordered briefing schedule because it is not a Rule 12(b)(6) motion.  (Defs.' Fourth Reply at 1.)  Defendants contend that the motion is "a motion to allow the Court to manage its docket in an efficient manner."  (Defs.' Fourth Reply at 1.)  Moreover, they argue that although a single call may give rise to multiple TCPA violations, it is impermissible for Jenkins to recover twice "for a call alleged to violate a single subsection of the TCPA." (Defs.' Fourth Reply at 3.)  Finally, Defendants argue that well-established principles of vicarious liability dictate that "Jenkins' settlement with NCO extinguishes his claim against Defendants."  (Defs.' Fourth Reply at 5.)

Regardless of whether the motion complies with the relevant procedural rules, the Court finds that consideration of this issue is premature.  It is unclear whether all of the TCPA violations alleged in the Second Amended Complaint were resolved in the NCO Action.  Defendants' arguments may have merit, but the Court declines to make any determination in the absence of a more

developed factual record. Defendants' motion to dismiss Jenkins from Count II is DENIED.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint for failure to state a claim, lack of subject matter jurisdiction, and lack of personal jurisdiction (Docket Entry 159, 160) is GRANTED IN PART and DENIED IN PART. The claims against National Grid PLC, National Grid North America Inc., National Grid USA, Massachusetts Electric Company, The Narragansett Electric Company, Boston Gas Company, National Grid Electric Services LLC, Colonial Gas Company, Essex Gas Company, Nantucket Electric Company, Keyspan Corporation, and Niagara Mohawk Holdings, Inc. are DISMISSED for lack of subject matter jurisdiction. Count IV is DISMISSED in its entirety, and Jenkins' Count I claims are DISMISSED. Steele and Royal's Count I claims, Plaintiffs' Count II claims, and Plaintiffs' Count III claims will proceed against Niagara Mohawk Power Corporation, Keyspan Gas East Corporation, the Brooklyn Union Gas Company, and National Grid USA Service Company, Inc.

Plaintiffs are directed to re-file the Second Amended Complaint: (1) removing National Grid PLC, National Grid North America Inc., National Grid USA, Massachusetts Electric Company, The Narragansett Electric Company, Boston Gas Company, National Grid Electric Services LLC, Colonial Gas Company, Essex Gas

Company, Nantucket Electric Company, Keyspan Corporation, and Niagara Mohawk Holdings, Inc. as Defendants in this action and removing any references to these entities; and (2) removing the allegations in footnote one and paragraph 30 of the Second Amended Complaint incorporating by reference allegations from the First Amended Complaint. Plaintiffs shall re-file the Second Amended Complaint in accordance with these instructions within fourteen (14) days of the date of this Memorandum and Order.

Defendants' motion to dismiss or, in the alternative, to stay Count II of the Second Amended Complaint as to Jenkins (Docket Entry 161) is DENIED.

SO ORDERED.

/s/ JOAANA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     March ___31__, 2017
           Central Islip, New York