UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
JARRETT JENKINS, EMMOT STEELE, and
FRANCES ROYAL, on behalf of
themselves and all others similarly
situated,

                        Plaintiffs,          <u>MEMORANDUM & ORDER</u>
                                             15-CV-1219(JS)(GRB)

          -against-

NATIONAL GRID USA SERVICE
COMPANY, INC., KEYSPAN GAS EAST
CORPORATION, NIAGARA MOHAWK POWER
CORPORATION, and THE BROOKLYN UNION
GAS COMPANY,

                        Defendants.
------------------------------------X
APPEARANCES
For Plaintiffs:         Daniel M. Hutchinson, Esq.
                        Lieff Cabraser Heimann & Bernstein LLP
                        275 Battery Street, 29th Floor
                        San Francisco, California 94111

                        Douglas Ian Cuthbertson, Esq.
                        Jonathan D. Selbin, Esq.
                        John T. Nicolaou, Esq.
                        Lieff Cabraser Heimann & Bernstein LLP
                        250 Hudson Street, 8th Floor
                        New York, New York 10003

                        Joseph S. Tusa, Esq.
                        Tusa, P.C.
                        53345 Main Road, Suite 10-1
                        Southold, New York 11971

For Defendants:         Richard H. Brown, Esq.
                        Day Pitney LLP
                        7 Times Square
                        New York, New York 10036

                        Anthony Joseph Marchetta, Esq.
                        Day Pitney LLP
                        1 Jefferson Road
                        Parsippany, New Jersey 07054

SEYBERT, District Judge:

In this putative class action, Plaintiffs Jarrett Jenkins ("Jenkins"), Emmot Steele ("Steele") and Frances Royal ("Royal" and collectively "Plaintiffs") allege that Defendants Niagara Mohawk Power Corporation, Keyspan Gas East Corporation, the Brooklyn Union Gas Company, and National Grid USA Service Company, Inc. (collectively "Defendants")[1] violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA") and New York General Business Law ("GBL") § 399-p.  Currently pending before the Court is Defendants' motion to dismiss Plaintiffs' GBL claims for lack of subject matter jurisdiction.  (Defs.' Mot., Docket Entry 183.)[2]  For the following reasons, Defendants' motion is GRANTED.

---

[1] The Court previously dismissed the following twelve defendants for lack of subject matter jurisdiction: (1) National Grid PLC; (2) National Grid North America Inc.; (3) National Grid USA; (4) Massachusetts Electric Company; (5) The Narragansett Electric Company; (6) Boston Gas Company; (7) National Grid Electric Services LLC; (8) Colonial Gas Company; (9) Essex Gas Company; (10) Nantucket Electric Company; (11) Keyspan Corporation; and (12) Niagara Mohawk Holdings, Inc. (See Mar. 2016 M&O, Docket Entry 152, at 15.)

[2] As of January 2016, the undersigned's Individual Practices require that a party request a pre-motion conference before moving to dismiss under Rule 12.  See Individual Rule IV.G. Despite Defendants' failure to do so, the Court will consider the motion.

BACKGROUND

The Court assumes familiarity with the facts and procedural history of this case, which are detailed in this Court's Orders dated March 31, 2016, (March 2016 M&O at 3-5.), and March 31, 2017, Jenkins v. Nat'l Grid USA, No. 15-CV-1219, 2017 WL 1208445, *2 (E.D.N.Y. Mar. 31, 2017).

Briefly, National Grid PLC ("National Grid") is a utility company that provides gas and electricity to consumers in the northeast United States. (Rev. Sec. Am. Compl., Docket Entry 225, ¶¶ 17-19, 22.) The company has a complex corporate structure, including several holding companies and numerous regional subsidiaries. (Rev. Sec. Am. Compl. ¶ 20.) Three of the Defendants--Niagara Mohawk Power Corporation ("Niagara Mohawk"), Keyspan Gas East Corporation ("Keyspan East"), and the Brooklyn Union Gas Company ("Brooklyn Union")--are distributors of electricity and/or natural gas and subsidiaries of National Grid. (Rev. Sec. Am. Compl. ¶¶ 23-25.) The remaining Defendant, National Grid USA Service Company, Inc. ("National Grid USA"), "render[s] . . . services, to companies in the National Grid USA holding company system," including, inter alia, accounting, customer services and property acquisition and management. (Rev. Sec. Am. Compl. ¶ 26.) For regulatory purposes, National Grid has "retained certain historical legacy corporate names" such as Niagara Mohawk, Keyspan East, and Brooklyn Union; however,

National Grid is "the only name used for customer interaction." (Rev. Sec. Am. Compl. ¶ 20.) In other words, "regardless of the technical legal corporate name of the company involved," National Grid operates as a "single utility company" and uses the National Grid "name for all public-facing purposes--including marketing, billing, and service matters." (Rev. Sec. Am. Compl. ¶ 20.)

Plaintiffs allege that Defendants and their agents violated the TCPA by calling customers' cellular telephone numbers using automated telephone dialing systems and automated or prerecorded voice messages without prior consent. (Rev. Sec. Am. Compl. ¶ 1.) In addition to calls made by Defendants on their own behalf, Plaintiffs maintain that Defendants are vicariously liable for violations of the TCPA by third parties hired by Defendants, including debt collectors hired to collect outstanding bills. (Rev. Sec. Am. Compl. ¶¶ 3-4, 6.) Additionally, Plaintiffs allege that Defendants called New York customers' residential and cellular telephone numbers and left prerecorded messages that violated NY GBL Section 399-p. (Rev. Sec. Am. Compl. ¶ 2.)

On April 14, 2017, after two motions to dismiss, Plaintiffs filed the Revised Second Amended Complaint.[3] The Revised Second Amended Complaint asserts the following three

---

[3] Plaintiffs filed the Revised Second Amended Complaint after the Court directed them to file a revised complaint consistent with its determinations on the various motions to dismiss. See Jenkins, 2017 WL 1208445, at *6.

causes of action: (1) violations of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A), on behalf of Plaintiffs Royal and Steele[4] and a class of customers directly contacted by National Grid (the "TCPA Direct-Dialed Class"); (2) violations of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A), on behalf of Plaintiffs and a class of customers contacted by third parties (the "TCPA Agent-Dialed Class"); and (3) violations of NY GBL § 399-p on behalf of Plaintiffs Steele and Royal and a class of New York customers directly contacted by National Grid (the "GBL § 399-p Direct-Dialed Class"). (Rev. Sec. Am. Compl. ¶¶ 113-159.) For ease of reference, the Court will refer to the claims as Count I, Count II and Count III. The pending motion is directed at Count III, which for purposes of this order, the Court will refer to as to the GBL Claim.

On November 4, 2016, Defendants filed a motion to dismiss the GBL Claim for lack of subject matter jurisdiction.[5] (See Defs.' Mot.) On December 2, 2016, Plaintiffs filed their

---

[4] The Court previously dismissed Jenkins' Count I claim. See Jenkins, 2017 WL 1208445, at *9.

[5] Defendants moved to dismiss Plaintiffs' GBL claims before the Court dismissed one of Plaintiffs' GBL claims on March 31, 2017. See Jenkins, 2017 WL 1208445, at *6-7. Accordingly, the Court construes Defendants' motion as moving to dismiss Count III, the only remaining GBL claim.

opposition, and on December 16, 2016, Defendants filed their reply in further support of the motion.[6]

DISCUSSION

I.  Legal Standard for Rule 12(b)(1) Motion

        "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When a defendant makes a Rule 12(b)(1) motion based on a lack of standing, it "may be either facial or fact based." Carter v. Healthport Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016). When the challenge is facial--"i.e. based solely on the allegations of the complaint or the complaint and exhibits attached to it"--the district court must consider whether the "[p]leading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" Carter, 822 F.3d at 56 (quoting Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011)) (alterations in original). Further, the court must accept plaintiff's allegations as true and draw all reasonable inferences

---

[6] On May 18, 2017, the Court permitted the parties to re-file their briefs with updated citations to the Revised Second Amended Complaint. (Electronic Order, May 18, 2017.) As a result, the Court will refer to the updated briefs filed at Docket Entries 237 and 240 in its discussion. (See Defs.' Br., Docket Entry 237-1; Pls.' Opp., Docket Entry 240-1; Defs.' Reply, Docket Entry 237-2.)

in plaintiff's favor. See Joseph v. Social Sec. Admin., No. 16-CV-3377, 2017 WL 1067804, at *1 (E.D.N.Y. Feb. 28, 2017), R&R adopted, 2017 WL 1078570 (E.D.N.Y. Mar. 20, 2017) (citing Carter, 822 F.3d at 56-57).

Alternatively, when a defendant brings a factual challenge and "proffer[s] evidence beyond the [p]leading," "the plaintiff[ ] will need to come forward with evidence . . . to controvert that presented by the defendant." Carter, 822 F.3d at 57. If the evidence offered by the defendant is immaterial, that is, it "does not contradict plausible allegations [in the complaint] that are themselves sufficient to show standing," the plaintiff may rely on those allegations to defeat the motion. Id. However, if the evidence proffered by the defendant is "material and controverted," the district court is required to "make findings of fact in aid of its decision." Id.

Defendants did not specify in their opening brief whether their challenge to standing is facial or factual. In opposition, Plaintiffs argue that the motion is a facial challenge because Defendants do not contest their allegations. In Plaintiffs' view, the Court should also decline to make any findings of fact at this stage because what constitutes an injury in fact is intertwined with the merits. (Pls.' Opp. at 4.) Defendants counter that because their motion relies in part on interrogatory responses, they have mounted a factual challenge to

Plaintiffs' standing to bring the GBL Claim. (Defs.' Reply at 3.) Further, they claim that because Plaintiffs have failed to present any evidence to controvert the interrogatory answers, the motion must be granted. (Defs.' Reply at 3.) Alternatively, Defendants argue that even if the Court were to treat the motion as a facial challenge, the Court should still dismiss the GBL Claim because Plaintiffs have failed to allege an actual and concrete injury sustained as a result of the violations of Section 399-p. (Defs.' Reply at 3-4.)

As set forth below, because the Court finds that Plaintiffs' allegations--accepted as true for the purposes of this Memorandum and Order--are insufficient on their face to establish standing, the Court treats Defendants' motion as a facial challenge.

## II. Standing Principles

Article III of the Constitution "restricts federal courts to the resolution of cases and controversies." Carter, 822 F.3d at 56 (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 732-33, 128 S. Ct. 2759, 2768, 171 L. Ed. 2d. 737 (2008)). The standing doctrine is "'perhaps the most important' of the case-or-controversy doctrines." Gilmore v. Ally Fin. Inc., No. 15-CV-6240, 2017 WL 1476596, at *4 (E.D.N.Y. Apr. 24, 2017) (quoting Allen v. Wright, 468 U.S. 737, 750, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556 (1984)). To demonstrate standing, the plaintiff must

show that: "(1) [he] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, ---- U.S. ----, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016).  It is well-established that "as the party invoking federal jurisdiction, [the plaintiff] bears the burden of establishing these elements."  Id.

In Spokeo, the Supreme Court clarified the injury-in-fact requirement.  Generally, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Id. at 1548 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)).  An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way."  Id. (quoting Lujan, 504 U.S. at 560, n.1). As the Supreme Court made clear in Spokeo, the injury must also be concrete--"that is, it must actually exist."  Id.  The Court was careful to point out that "[c]oncrete is not . . . necessarily synonymous with tangible," and that under certain circumstances, an intangible injury can be concrete.  Id. at 1549 (internal quotation marks omitted).  In cases where the plaintiff seeks statutory damages, the Court held that "Article III standing requires a concrete injury even in the context of a statutory

violation," and that a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement." Id. However, the Court specified that under certain circumstances, "the risk of real harm" can satisfy the concreteness element; "[i]n other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." Id. (emphasis omitted). The Court concluded that the relevant inquiry is whether "the particular procedural violation[ ] alleged . . . entail[s] a degree of risk sufficient to meet the concreteness requirement." Id. at 1550.

Applying Spokeo, the Second Circuit has recognized that "in the absence of a connection between a procedural violation and a concrete interest, a bare violation of the former does not manifest an injury in fact." Strubel v. Comenity Bank, 842 F.3d 181, 189 (2d Cir. 2016) (applying Spokeo). Nonetheless, the court pointed out that under some circumstances, "an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a risk of real harm to that concrete interest." Strubel, 842 F.3d at 189 (internal quotation marks omitted). Thus, district courts should consider "whether the particular bare procedural violation may present a material risk of harm to the underlying concrete interest

Congress sought to protect." <u>Crupar-Weinmann v. Paris Baguette</u>
<u>Am., Inc.</u>, 861 F.3d 76, 80-81 (2d Cir. 2017).

III. <u>The Relevant Statute</u>

Plaintiffs allege that Defendants violated NY GBL
Section 399-p, which provides that "[n]o person shall operate an
automatic dialing-announcing device, nor place any consumer
telephone call, except in accordance with the provisions of this
section." N.Y. GEN. BUS. LAW § 399-p(2). The statute requires that
when a caller uses an "automatic dialing-announcing service," the
device shall "state at the beginning of the call the nature of the
call and the name of the person or on whose behalf the message is
being transmitted and at the end of such message the address, and
telephone number of the person on whose behalf the message is
transmitted, provided such disclosures are not otherwise
prohibited or restricted by any federal, state or local law." N.Y.
GEN. BUS. LAW § 399-p(3)(a). Further, the device shall "disconnect
the automatic dialing-announcing device from the telephone line
upon the termination of the call by either the person calling or
the person called." N.Y. GEN. BUS. LAW § 399-p(3)(b). As a remedy,
"any person who has received a telephone call in violation of [this
section] . . . may bring an action in his own name to enjoin such
unlawful act or practice, an action to recover his actual damages
or fifty dollars, whichever is greater, or both such actions."
N.Y. GEN. BUS. LAW § 399-p(9). The Court also has discretion to

"increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars," if the defendant willingly or knowingly violated the statute.  N.Y. GEN. BUS. LAW § 399-p(9).

IV.  The Parties' Arguments

Defendants principally argue that Plaintiffs Steele and Royal[7] cannot show they suffered any "actual injury as a result of the conduct underpinning their GBL 399-p claims."  (Defs.' Br. at 1.)  In fact, Defendants argue, Plaintiffs have conceded the absence of an actual injury in the Revised Second Amended Complaint and their interrogatory responses.  (Defs.' Br. at 2.)  Defendants contend that Plaintiffs fail to identify any actual injuries stemming from Defendants' alleged violations of the statute and claim that they suffered only statutory damages.  (Defs.' Br. at 3-4.)  They further argue that the fact that Plaintiffs were not actually injured is not surprising because "there can be no conceivable injury from a utility's failure to include an address in a message to a customer of a utility . . . [when] [a] customer receiving such a message surely knows how to contact that utility," because they receive a monthly bill.  (Defs.' Br. at 10.)  Defendants also maintain that there can be no plausible actual injury resulting from Defendants' failure to state the nature of

_____

[7] Plaintiffs have only alleged a GBL Claim on behalf of Royal and Steele.  Plaintiff Jenkins has not asserted a GBL Claim.

the call or the caller's identity at the beginning of the call. (Defs.' Br. at 10.)   They aver that "[t]his is a textbook circumstance of where an alleged 'mere procedural violation' has caused no actual injury."  (Defs.' Br. at 10.)   Further, they contend that the message's failure to disclose the information required by the statute, without more, does not constitute a concrete harm.  (Defs.' Br. at 11.)

Turning to the legislative history of Section 399-p, Defendants assert that the statute was enacted "[t]o protect a consumer's access to his/her telephone line by requiring an automatic dialing-announcing device to disconnect when the consumer terminates the call."   (Defs.' Br. at 12 (quoting Legislative History, Brown Decl. Ex. D, Docket Entry 183-6, at 15, 17).)  According to Defendants, the statute was enacted after an individual attempted to hang up an automated call to contact emergency services but was unable to because the automated message continued to play.  (Defs.' Br. at 12.)  Defendants argue that this was the problem Section 399-p was enacted to solve, and that the violations alleged by Plaintiffs are not the injuries contemplated by the statute.   (Defs.' Br. at 12.)   Defendants maintain that, as a result, Plaintiffs cannot establish that they suffered an injury in fact and, thus, do not have standing to pursue the GBL claim.  (Defs.' Br. at 9.)

Plaintiffs argue that Defendants have violated their "statutory right to receive only those prerecorded messages that comply with GBL § 399-p." (Pls.' Opp at 1.) They argue that they have established an actual injury in two ways: (1) "the harms Plaintiffs allege--invasions of privacy, harassment, and nuisance (all long-recognized causes of action)--are . . . viable 'intangible harms;'" and (2) the New York Legislature intended to confer a "substantive right" when Section 399-p was enacted and "provide[d] for statutory damages even when the only harm alleged is a violation of the statute." (Pls.' Opp. at 2.) According to Plaintiffs, then, "invasion of privacy, harassment, and nuisance harms" and "per se harms, triggered by the Defendants' violations of GBL § 399-p" are sufficient to establish a concrete injury. (Pls.' Opp. at 2.) Plaintiffs contend that Defendants' arguments ignore recent case law involving New York statutes and the purposes behind Section 399-p. (Pls.' Opp. at 2-3.) For instance, Plaintiffs argue that in cases both before and after Spokeo, courts have found standing when the plaintiff is alleging violations of certain statutes, such as the TCPA, and suffered only statutory damages. (Pls.' Opp. at 10.)

Plaintiffs rely on cases involving the TCPA and argue that because Section 399-p and the TCPA have similar purposes, the

Court should look to these decisions for guidance.[8] (Pls.' Opp. at 11-12.) They contend that the majority of courts considering standing challenges to TCPA claims have found robo-calling injuries, such as privacy, harassment, and nuisance, to be cognizable. (Pls.' Opp. at 11-13.)

Plaintiffs also present a competing view of the purposes behind the enactment of Section 399-p, arguing that lawmakers enacted the provision to "redress concerns about consumer privacy and avoiding or preventing harassing robo-calls." (Pls.' Opp. at 14.) Plaintiffs contend that both the text of the provision and the legislative history demonstrate that the statute was aimed at maintaining consumers' privacy and preventing harassment. (Pls.' Opp. at 14-15.) Providing the statutorily required information is important, Plaintiffs argue, to enable consumers to immediately identify the caller and delete the message if they do not want to listen to it, and to provide contact information to allow consumers to contact the caller and instruct them to cease the robo-calls. (Pls.' Opp. at 15.) In sum, Plaintiffs argue that "Defendants' failure to provide identifying information that would allow [Royal and Steele] to hang-up on calls or delete messages . . . was an invasion of their privacy and bothersome," and that their "failure

---

[8] Neither party has cited a case analyzing whether a plaintiff alleging only statutory injuries resulting from violations of Section 399-p has standing to bring a Section 399-p claim, nor has the Court been able to locate one.

to disclose identity or contact information prevented [Royal and Steele] from determining the messages' exact source." (Pls.' Opp. at 17.)  Finally, Plaintiffs argue that Defendants' violations of Section 399-p are sufficient on their own to confer standing, and they point to several cases involving other statutes in which courts have found that the plaintiff had standing based on a statutory violation.  (Pls.' Opp. at 20-22.)  They implore the Court to defer to the judgment of the New York Legislature, which according to Plaintiffs, intended for consumers to be able to seek redress for violations of Section 399-p in the absence of an additional injury.  (Pls.' Opp. at 22.)

On reply, Defendants argue that Plaintiffs' analogy to TCPA cases is misplaced because the TCPA and GBL Section 399-p were designed to prevent different harms.  (Defs.' Reply at 4-5.) They reiterate that Plaintiffs' alleged injuries are not contemplated by the text of the statute or the provision's legislative history.  (Defs.' Reply at 5-7.)  Further, Defendants urge the Court to reject Plaintiffs' argument that the violations of Section 399-p alone are sufficient to confer standing, since as customers of Defendants, Plaintiffs received correspondence containing Defendants' address and contact information.  (Defs.' Reply at 7-10.)

V.   Analysis

        At  the  outset,  the  Court  will  discuss  the  relevant
allegations in the Revised Second Amended Complaint, followed by
a  summary  of  the  legislative  history  of  Section  399-p  and  an
analysis of Plaintiffs' alleged injuries.

   A.  Relevant Allegations

        Plaintiffs      claim      that      Defendants      transmitted
"prerecorded telephone messages" to their cellular phones that (1)
"did  not  state  at  the  beginning  of  the  call  the  nature  of  the
call"; (2) "did not state at the beginning of the call the name of
the person on whose behalf the message [was] being transmitted";
and (3) "did not provide the address of the person on whose behalf
the  message  [was  being]  transmitted."   (Rev.  Sec.  Am.  Compl.
¶¶ 150-52.)   They  allege  that  Defendants  left  such  messages  on
Plaintiff  Steele's  cellular  phone  on  at  least  seven  occasions.
(Rev. Sec. Am. Compl. ¶ 153.)  The message stated: "It's important
that we speak to you within the next 24 hours.  Please call us at
1-800-930-5003.    Again,  that's  1-800-930-5003.    Thank  you.
National Grid is registered on Long Island as Keyspan Gas East."
(Rev. Sec. Am. Compl. ¶ 153.)  As for Plaintiff Royal, the Revised
Second Amended Complaint alleges that on an unspecified number of
occasions,  Defendants  left  prerecorded  telephone  messages  on  her
cellular  phone  that  "did  not  comply  with  nor  provide  the
information required by New York GBL § 399-p."   (Rev.  Sec.  Am.

Compl. ¶¶ 97, 99.)  Plaintiffs allege that as a result of Defendants' conduct, their privacy has been violated and they were subject to "annoying and harassing calls that constitute a nuisance."  (Rev. Sec. Am. Compl. ¶ 104.)  Plaintiffs further allege that the violations of GBL § 399-p were willful.  (Rev. Sec. Am. Compl. ¶ 150.)  Plaintiffs seek "damages or statutory damages in the amount of $50.00 for each violation."[9]  (Rev. Sec. Am. Compl. ¶ 157.)

　　B.  Legislative History[10]

　　　　GBL section 399-p was enacted in 1988 to "regulate the use of automatic dialing-announcing devices."  (Legislative History at 1.)  In a letter to counsel for the governor, a New

---

[9] Defendants also refer to Steele and Royal's responses to an interrogatory requesting that they "identify all injuries [they] sustained as a result of the conduct that [they] claim in this matter violated the TCPA and/or GBL § 399-p."  (Interrogatory Responses, Brown Decl. Exs. A, B, Docket Entries 183-3, 183-4, at 6-7.)  Both Plaintiffs responded that they "ha[d] incurred the statutory injuries and damages for provided in the TCPA . . . and GBL § 399-p(9)."  (Interrogatory Responses at 6-7.) Because the Court is treating the motion as a facial challenge, see supra 11-12, the Court considers only the allegations in the Revised Second Amended Complaint.  In any event, the interrogatory responses do not raise a factual issue regarding the Plaintiffs' standing because the responses are entirely consistent with the allegations in the Revised Second Amended Complaint.

[10] In this section, the Court relies on Defendants' Exhibit D, a collection of documents produced during the legislative process leading up to the passage of Section 399-p.  The Court has been unable to locate any cases discussing the legislative history of this provision or any legislative materials beyond those in Defendants' Exhibit D.

18

York State Senator advised that the bill's "main purpose is to allow a consumer to terminate the phone message in the event that the phone must be used for another call." (Legislative History at 10.) It continues, "[a]t the present time, these messages will continue on the phone line even if the line is disengaged." (Legislative History at 10.) Memoranda drafted by the State's Consumer Protection Board and the New York State Assembly further confirm that this was the bill's purpose. (See Legislative History at 12-18 (stating that the purpose of the bill was to "protect a consumer's access to his/her telephone line"). The memos also state that the bill was prompted by the increased use of automatic dialing-announcing devices and the hazards caused when the devices continue to play their message when the recipient hangs up. (Legislative History at 13.) The legislative materials specifically refer to an incident in which a woman was unable to contact emergency services for several minutes due to an automated message that continued to play. (Legislative History at 13.) The Attorney General concluded that the fact that the message continued to play even when the consumer hung up was "an unwarranted intrusion upon a consumer's privacy." (Legislative History at 22.) Further, he wrote that requiring the disclosure of "basic identification information regarding those responsible for such calls" would serve the interests of "the public and industry." (Legislative History at 22.)

C.  Plaintiffs' Alleged Injuries

Plaintiffs argue that they suffered two types of injuries: (1) invasion of privacy, harassment, and nuisance, and (2) statutory injuries arising from Defendants' violation of Section 399-p.  (Pls.' Opp. at 2.)  Both arguments fail.

To determine whether these intangible harms constitute a concrete injury, the court should consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," or whether Congress has "identif[ied] and elevat[ed] [such] harms" to the status of a cognizable injury.[11] Spokeo, 136 S. Ct. at 1549.  Relevant here, the majority of courts have applied the same principles to statutes enacted by state legislatures.  See Ross v. AXA Equitable Life Ins. Co., 680 F. App'x 41, 44-45 (2d Cir. 2017) (considering whether violations of New York Insurance Law, standing alone, constituted an injury in fact); Weldon v. MTAG Servs., LLC, No. 16-CV-0783, 2017 WL 776648, at *5 (D. Conn. Feb. 28, 2017) (concluding that, based on the reasoning of several circuit courts and district courts in this

---

[11] Defendants have not argued that Plaintiffs lack standing based on either the legal-interest requirement or the particularity requirement, and accordingly, the Court declines to address them.  See Strubel, 842 F.3d at 188.  Instead, the Court focuses on the concreteness element.

circuit, state statutes "can recognize cognizable injuries for Article III standing purposes").

First, Plaintiffs allege that Defendants violated their privacy and subjected them to "annoying and harassing calls that constitute[d] a nuisance" when they transmitted messages to Plaintiffs' cellular phones that failed to provide the information required by Section 399-p. (Rev. Sec. Am. Compl. ¶ 104.) Plaintiffs have cited numerous TCPA cases to support this argument. (Pls.' Opp. at 13-17.) However, the Court agrees with Defendants that the analogy to the TCPA is misplaced. While it is true that the TCPA and Section 399-p regulate the use of automated dialers, the legislative history of the TCPA reflects that Congress made specific findings regarding telemarketing calls, including that such calls can be an "intrusive invasion of privacy" and a "nuisance." See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372, 132 S Ct. 740, 745, 181 L. Ed. 2d 881 (2012); see also Mejia v. Time Warner Cable Inc., Nos. 15-CV-6445, 15-CV-6518, 2017 WL 3278926, at *1 (S.D.N.Y. Aug. 1, 2017) ("'The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate.'") (quoting In re Rules & Regs Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7979-80 (2015)). As far as the Court can tell, the New York Legislature made no such findings before enacting

Section 399-p.  Further, the two statutes are aimed at preventing different conduct—-the TCPA prohibits contacting consumers via automated dialers or prerecorded messages without prior express consent, while Section 399-p contains no consent requirement, but only requires that the call terminate if the recipient hangs up and that the caller provide certain information.  Thus, the Court is not persuaded that "the same underlying harms animate the purpose behind both the TCPA and GBL § 399-p," and that "New York lawmakers enacted GBL § 399-p to redress concerns about consumer privacy and avoiding or preventing harassing robo-calls."  (Pls.' Opp. at 11, 14.)

Further, while Plaintiffs may be correct that courts have recognized invasion of privacy, harassment and nuisance as concrete injuries, particularly in the TCPA context, Plaintiffs' allegations do not demonstrate such injuries here.  See Bell v. Survey Sampling Int'l, LLC, No. 15-CV-1666, 2017 WL 1013294, at *3 (D. Conn. Mar. 15, 2017) ("Actions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts . . . .") (internal quotation marks and citation omitted).  Section 399-p mandates that messages relayed by automated dialers contain certain information—-it does not restrict the manner or frequency of the calls.  In other words, entities such as Defendants can make as many calls as they wish without any penalty.  Further, it is difficult to understand how

the message's omission of the required information could invade an individual's privacy or constitute harassment.  It may be true that failure to comply with Section 399-p(3)(b), which requires that an automated message terminate when an individual hangs up, could result in an invasion of privacy or nuisance, but Plaintiffs have not alleged that Defendants' conduct violated that provision. Therefore, the Court finds that Plaintiffs' conclusory allegation claiming invasion of privacy, harassment, and nuisance is insufficient to demonstrate a concrete injury.

Second, Plaintiffs argue that Defendants' violations of Section 399-p constitute a concrete injury.  The Second Circuit has instructed that "an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a risk of real harm to that concrete interest."  Strubel, 842 F.3d at 190 (internal quotation marks and citation omitted).  However, when a statutory violation may "'result in no harm'" or does not "'present any material risk of harm,'" "a plaintiff will not be able to 'satisfy the demands of Article III by alleging a bare [statutory] violation.'"  Ross, 680 F. App'x at 44 (quoting Spokeo, 136 S. Ct. at 1550) (alteration in original).  Thus, the first step is to identify the concrete interests New York sought to protect by enacting Section 399-p. See Vigil v. Take-Two Interactive Software Inc., 235 F. Supp. 3d

499, 510 (S.D.N.Y. 2017) ("Under _Strubel_, to assess the plaintiffs'
standing to pursue their claims, the first task is to identify any
concrete interests protected by the [statute].") (internal
quotation marks omitted).

In light of the fact that there are no cases discussing
the purposes underlying Section 399-p, the Court considers both
the text of the provision and the limited legislative history. As
discussed, Section 399-p requires that the caller terminate the
call if the consumer hangs up and that the caller provide certain
information to consumers during the message. _See_ N.Y. GBL § 399-
p(3)(b) (stating that an automatic dialing-announcing device shall
"disconnect . . . from the telephone line upon the termination of
the call by either the person calling or the person called"); N.Y.
GBL § 399-p(3)(a) (requiring that certain information be disclosed
when a call is placed using an automatic dialing-announcing
device). However, the legislative history is clear that the
purpose underlying Section 399-p was preserving a consumer's
access to her phone line. _See_ _supra_ 21-22. Specifically, a New
York State Senator wrote that the bill's "main purpose [was] to
allow a consumer to terminate the phone message in the event that
the phone must be use for another call." (Legislative History at
10.) There is virtually no evidence of an intent to protect a
consumer's interest in receiving identifying information in the

legislative history.[12]  The New York Legislature did not make any findings regarding the importance of receiving such information or state why, for example, the caller's address was critical information.  Although not explicit, the Court assumes that disclosure of the information mandated by Section 399-p might be useful should the consumer wish to contact the caller, whether to request that the calls cease or otherwise.  While the Court has doubts regarding the existence of this purported disclosure interest, especially in light of the legislative history, the Court assumes for purposes of this analysis that, pursuant to Section 399-p, consumers have concrete interests in access to their phone lines and receiving identifying information from entities calling them using automatic dialing-announcing devices.

The second step is to determine whether Plaintiffs' allegations concerning procedural violations of Section 399-p demonstrate a "material risk of harm" to these concrete interests.  See Vigil, 235 F. Supp. 3d at 511.  Plaintiffs allege that the messages they received failed to state the purpose of the call, identify the caller at the beginning of the message, or provide the caller's address.  (Rev. Sec. Am. Compl. ¶¶ 150-52.)  For example, one message stated: "It's important that we speak to you

---

[12] There is one passing reference to the fact that disclosure of "basic identification information regarding those responsible for such calls" would serve the interests of "the public and industry."  (Legislative History at 22.)

within the next 24 hours.  Please call us at 1-800-930-5003.

Again, that's 1-800-930-5003.  Thank you.  National Grid is

registered on Long Island as Keyspan Gas East."  (Rev. Sec. Am.

Compl. ¶ 153.)  As an initial matter, the fact that the messages

did not contain certain information presents no risk of harm to a

consumer's interest in maintaining access to her phone line.  The

recipients received the calls regardless of the content of the

message.  Additionally, because Plaintiffs have not alleged

otherwise, the Court assumes that the calls terminated if

Plaintiffs hung up while the message was playing.

Moreover, the Court finds that the messages' omissions

did not present a material risk of harm to the purported disclosure

interest underlying Section 399-p.  That Plaintiffs had to wait

several seconds for the caller to be identified is a minimal injury

at best.  Additionally, the messages provided a telephone number

which Plaintiffs could use to contact Defendants regarding the

reason for their call or to obtain their address to send written

correspondence.  Plaintiffs have not alleged that Defendants'

failure to include this information prevented them from contacting

Defendants or paying their overdue bills, led to any confusion, or

impacted their utility service.  See Strubel, 842 F.3d at 194

(holding that violation of disclosure provision in Truth in Lending

Act alleged by the plaintiff was insufficient to establish a

concrete injury in part because "plaintiff fail[ed] to show . . .

that the creditor's challenged notice caused her to alter her credit behavior from what it would have been upon proper notice"); Ross, 680 F. App'x at 45 (holding that misrepresentation in violation of New York Insurance Law, standing alone, was insufficient to demonstrate a concrete injury when plaintiffs "fail[ed] to allege that they would not have purchased the life insurance and annuity riders provided by [Defendants]" had they known about their practices). In fact, after receiving a number of calls, Steele sent a letter to National Grid requesting that they stop calling him, further demonstrating that the statutory violations alleged by Plaintiffs did not pose a risk of real harm.[13] (Rev. Sec. Am. Compl. ¶ 94.)

The Court rejects Plaintiffs' argument that the statutory violations alone are sufficient to establish standing. (Pls.' Opp. at 23.) Under Spokeo, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Spokeo, 136 S. Ct. at 1549. Further, to the extent Plaintiffs argue that Section 399-p conferred a "statutory right to receive only those prerecorded messages that comply with GBL § 399-p," this is not

---

[13] Although this allegation does not appear in the Revised Second Amended Complaint, Royal also sent a letter to Defendants requesting that the messages cease. (Pls.' Opp. at 9.)

dispositive of the issue.  (Pls.' Opp. at 1.)  The Second Circuit

has been clear that the analysis is two-fold; when the legislature

"confer[s] [a] procedural right to protect a plaintiff's concrete

interests," the procedural violation must present "a risk of real

harm to that concrete interest" to establish a concrete injury.

Strubel, 842 F.3d at 190 (internal quotation marks and citation

omitted).  Even assuming that the New York Legislature conferred

such a right (which is unclear based on the legislative history),

"[t]he relevant question is whether [Plaintiffs] [were] harmed

when this statutory right was violated," and this Court concludes

that they were not.  Nicklaw v. Citimortgage, Inc., 839 F.3d 998,

1002 (11th Cir. 2016).[14]

    The Court recognizes that in other cases involving

violations of New York statutes, courts have held that the

plaintiffs established a concrete injury.  For example, several

district courts in this circuit have held that plaintiffs alleged

a concrete injury based on violations of New York Real Property

---

[14] The Eleventh Circuit went on to say that the fact that the
plaintiff did not establish an injury in fact under New York
Real Property Law Section 275 and New York Property Actions and
Proceedings Law Section 1921 "d[id] not mean that New York law
does not create a right that, when violated, could form the
basis for a cause of action in a court of New York . . . .[T]he
requirement of concreteness under Article III is not satisfied
every time a statute creates a legal obligation and grants a
private right of action for its violation."  Nicklaw, 839 F.3d
at 1003.  The Second Circuit cited Nicklaw with approval in
Strubel.  See Strubel, 842 F.3d at 194 n.15.

Law ("RPL") Section 275 and New York Property Actions and Proceedings Law ("RPAPL") Section 1921.  See, e.g. Jaffe v. Bank of Am., N.A., 197 F. Supp. 3d 523 (S.D.N.Y. 2016); Bellino v. JPMorgan Chase Bank, N.A., 209 F. Supp. 3d 601 (S.D.N.Y. 2016). In both cases, the district court found that these statutes established a right to "a timely filed mortgage satisfaction notice" and that the violation of that right constituted a concrete injury.  Jaffe, 197 F. Supp. 3d at 528; see also Bellino, 209 F. Supp. 3d at 611.  However, the real property statutes discussed in those cases address vastly different harms than GBL Section 399-p.  Moreover, the plaintiffs' alleged injuries in Jaffe and Bellino were exactly the type of injury the New York Legislature sought to prevent when it enacted RPL Section 275 and RPAPL Section 1921.[15] See, e.g., RPL § 275 Bill Jacket, 2005 S.B. 48, Ch. 467 (stating

---

[15] Additionally, the Court finds that this case is distinguishable from Jaffe and Bellino for another reason.  In Bellino, the court differentiated between statutes such as RPL Section 275 and the Fair Credit Reporting Act ("FCRA"), the statute analyzed in Spokeo.  The court reasoned that when a statute can be violated in a "multitude of ways," such as the FCRA, courts can discern whether a violation poses a risk of harm to the statute's underlying purpose.  See Bellino, 209 F. Supp. 3d at 610-11.  However, when there is only one way to violate a particular provision, "there is no basis for differentiating between bare procedural violations of the statutes and violations resulting in concrete harms."  Id. at 611.  Because GBL Section 399-p can be violated in different ways--for example, a message could state the purpose of the call but fail to provide the caller's address--this Court is able to "differentiat[e] between bare procedural violations . . . and violations resulting in concrete harms," and has done so.  Id.

that the "measure [was] in response to serious issues that can arise when a certificate of discharge is not filed for a mortgage that has been paid off" and that the purpose was to "to insure that a certificate of discharge of mortgage is properly and timely issued and to impose a penalty on the lending institution or person(s) holding the mortgage for failing to do so"). Regardless, the Second Circuit has made clear that the standing inquiry "is necessarily context-specific to the statutory right in question and the particular risk of harm [the legislature] sought to prevent." Crupar-Weinmann, 861 F.3d at 77. As discussed above, based on Plaintiffs' allegations in this case, the Court finds that Plaintiffs have failed to demonstrate a concrete injury resulting from Defendants' violations of GBL Section 399-p.

Therefore, Royal and Steele's GBL Section 399-p claim, along with the class claim, is DISMISSED WITHOUT PREJUDICE.[16]

---

[16] Because the named Plaintiffs do not have standing, the Court dismisses the claim on behalf of the putative class as well. See Cent. States Se. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 199 (2d Cir. 2005) (quoting O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)) ("The Supreme Court has held that if 'none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant[ ], none may seek relief on behalf of himself or any other member of the class.'"); Biscone v. JetBlue Airways Corp., 681 F. Supp. 2d 383, 387 (E.D.N.Y. 2010) (citing Comer v. Cisneros, 37 F.3d 775, 788 (2d Cir. 1994)) ("At least one named plaintiff must have standing with respect to each claim brought on behalf of a class.").

VI.  Leave to Amend

Plaintiffs request leave to amend the Revised Second Amended Complaint. (Pls.' Opp., at 25.)  However, Plaintiffs have not filed a proposed amended pleading or described the new allegations.  See Romero v. Napoli, No. 08-CV-8380, 2013 WL 1479308, at *1 (S.D.N.Y. Apr. 1, 2013) (discussing that when the plaintiff fails to provide a description of the new allegations or the proposed amended pleading "it is impossible to assess whether leave to amend should be granted and the motion to amend is ordinarily denied without prejudice to a renewed motion accompanied by a copy of the proposed amended pleading").  The Court is hesitant to permit another amendment considering the current disposition of the case and the prior amendments.  Moreover, due to seemingly endless motion practice, Defendants have not yet filed an answer.  In light of these concerns, the Court DENIES leave to amend at this time.  Should Plaintiffs wish to amend the Revised Second Amended Complaint, they may file a proper motion to amend along with the proposed Third Amended Complaint.

CONCLUSION

For the foregoing reasons, Defendants' motion for lack of subject matter jurisdiction (Docket Entry 183) is GRANTED. Plaintiffs' GBL claim on behalf of Royal, Steele, and the putative class (Count III of the Revised Second Amended Complaint) is

DISMISSED WITHOUT PREJUDICE.  Additionally, the Court DENIES leave

to amend at this time.


                                        SO ORDERED.


                                        /s/ JOANNA SEYBERT
                                        Joanna Seybert, U.S.D.J.

Dated:      September   22  , 2017
            Central Islip, New York