## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JARRETT JENKINS, EMMOT STEELE, FRANCES ROYAL, DANAI EWAN, and CHARMAINE WHYTE on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> - against – <br><br> NATIONAL GRID USA SERVICE COMPANY, INC., KEYSPAN GAS EAST CORPORATION, NIAGARA MOHAWK POWER CORPORATION, AND THE BROOKLYN UNION GAS COMPANY, <br><br> Defendants. | Case No. 15-cv-1219 <br><br> Hon. Joanna Seybert, U.S.D.J. <br> Hon. Gary R. Brown, U.S.M.J. <br><br><br> **JURY TRIAL DEMANDED** |

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs Jarrett Jenkins, Emmot Steele, Frances Royal, Danai Ewan, and Charmaine Whyte (collectively "Plaintiffs"), by and through their counsel, on behalf of themselves and the Classes defined herein, plead this Third Amended Class Action Complaint based upon personal knowledge as to Plaintiffs' own acts, and upon information and belief as to all other matters based upon the investigations conducted by and through Plaintiffs' attorneys, against Defendants National Grid USA Service Company, Inc., Keyspan Gas East Corporation, Niagara Mohawk Power Corporation, The Brooklyn Union Gas Company, and their subsidiaries operating in the United States (collectively "National Grid" or "Defendants").  *See* Exhibit 1 annexed hereto.[1]

## NATURE OF THE ACTION

---

[1] Since the filing of the original pleading in this matter, the Court has dismissed some of the named Defendants and claims under New York General Business Law § 399-p.  Plaintiffs have removed allegations relating to the dismissed Defendants and claims, but reserve and do not waive or abandon their right to appeal their dismissals upon the entry of final judgment.

1.      Plaintiffs bring this action on behalf of themselves and Classes of customers who received calls to their cellular telephone numbers without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.*, and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. §64.1200 (hereinafter referred to as the "TCPA").  Defendants and their agent debt collectors and other agents used automated telephone dialing systems and/or automated or prerecorded voice to call Class members' cellular telephone numbers.  That conduct violates the TCPA.

2.      Defendants are directly liable under the TCPA for all calls made by them or their affiliates for violations of 15 U.S.C. §227(a) and applicable regulations made in this action.

3.      Defendants are also vicariously and/or jointly liable under the TCPA for all calls made on behalf of Defendants for violations of 15 U.S.C. §227(a) and applicable regulations made in this action, including calls made by debt collectors and third parties who served as Defendants' express or implied agents and/or whose conduct was ratified by Defendants.

4.      Defendants authorized their agent debt collectors to recover debts on their behalf. For example, non–party debt collector Mercantile Adjustment Bureau, LLC wrote to Plaintiff Royal as follows:  "Mercantile Adjustment Bureau, LLC has received authorization from NIAGARA MOHAWK POWER CORPORATION d/b/a NATIONAL GRID, to initiate collection efforts to recover the total amount due as noted above."  After sending that letter, Mercantile Adjustment Bureau made telephone calls to Plaintiff Royal on behalf of Defendants and Niagara Mohawk Power Corporation.  Non-party debt collector RUI Credit Services similarly wrote to Plaintiff Ewan: "We have been informed by our client, NATIONAL GRID, that you presently have a delinquent balance on your account which is referenced above.  RUI Credit Services has been asked to contact you to resolve this matter. . . . This is an attempt to

2

collect a debt and any information obtained will be used for that purpose.  This communication is from a debt collector."

5.      Defendants acted in concert with their debt collectors and other agents retained to make calls to Plaintiffs and Class members that violated 15 U.S.C. §227(a).

6.      The following debt collectors served as Defendants' agents pursuant to form contracts during the Class Periods for the TCPA claims alleged herein:  1) NCO Financial Systems, Inc.; 2) Mercantile Adjustment Bureau, LLC; 3) Allied Account Services; 4) Credit Protection Association, L.P.; 5) Rochester Credit Center, Inc. d/b/a The Credit Bureau / NACM New York; 6) Collecto, Inc. d/b/a EOS CCA; 7) I.C. System, Inc.; 8) NRA Group a/k/a National Recovery Agency, Inc.; 9) Penn Credit Corporation; 10) RUI a/k/a Recovery's Unlimited East, Inc.; 11) Solomon and Solomon, P.C.; 12) Associated Credit Services, Inc; 13) Stevens Business Service, Inc.; and 14) Transworld Systems, Inc.

7.      Defendants directed their debt collectors and other agents to make "outbound call[s]" to their utility customers.  "Outbound call messaging is outsourced and performed by third parties under contract with [the] Companies [*i.e.* National Grid Companies]." NGDEFENDANTS 0000109 - 0000110.

8.      Plaintiffs and members of the National Grid Direct-Dialed Class and National Grid Agent-Dialed Class were injured as a direct and proximate result of Defendants' and their agents' TCPA violations.

9.      Plaintiffs bring this action for injunctive relief and statutory damages resulting from Defendants' illegal actions and to permanently enjoin Defendants' violations of the TCPA.

10.     Because Defendants' unlawful acts were and are knowing and willful, Plaintiffs and the Classes are entitled to additional remedies and damages under the TCPA.

## THE PARTIES

11.     Plaintiff Jarrett Jenkins is a resident of West Hempstead, New York, located in Nassau County.

12.     Plaintiff Emmot Steele is a resident of Edgemere, New York, located in Queens County.

13.     Plaintiff Frances Royal is a resident of Schenectady, New York, located in Schenectady County.

14.     Plaintiff Danai Ewan is a resident of Brooklyn, New York, located in Kings County.

15.     Plaintiff Charmaine Whyte is a resident of Brooklyn, New York, located in Kings County.

16.     Defendants collectively do business under the trade name "National Grid" providing natural gas and electricity services to customers in New York and New England.

17.     According to Defendants' United States website, National Grid is "an international electricity and gas company based in the UK and northeastern US ... [that] play[s] a vital role in connecting millions of people safely, reliably and efficiently to the energy they use."  Source:  http://www2.nationalgrid.com/about-us/ (last visited May 5, 2016).

18.     Defendants collectively represent themselves as doing business as a single, cohesive and unified business providing generation, transmission and distribution of electricity and/or gas utility services to customers in New York and New England under the trade name "National Grid."

19.     On February 18, 2014, Defendants filed a petition (the "2014 National Grid Petition") with the Federal Communications Commission ("FCC").  In that petition, Defendants

4

requested permission to identify themselves to their customers uniformly as "National Grid" and represented that they operate as a single utility company, regardless of any historical trade names or corporate formations:

> **I. Factual Background.** National Grid is a public company traded on the London Stock Exchange (NG) and the New York Stock Exchange (NGG). It is an electricity and gas company providing service to more than seven million gas and electric customers in the northeast U.S.  National Grid delivers electricity to approximately 3.3 million customers in Massachusetts, New York and Rhode Island. National Grid also owns over 4,000 megawatts of contracted electricity generation, providing power to over one million Long Island Power Authority (LIPA) customers.  It is also the largest distributor of natural gas in northeastern U.S., serving approximately 3.4 million customers in New York, Massachusetts, and Rhode Island.
>
> All of these services are provided under the National Grid name. Marketing is conducted under this name and bills are sent under the National Grid name. Its service trucks bear the National Grid name.  It also maintains its website under the National Grid name.  In short, regardless of the technical legal corporate name of the company involved, customers identify their electric and gas service as coming from National Grid.
>
> National Grid operates both gas and electric utilities and has retained certain historical legacy corporate names[fn] that are specific to those utility services and the geographic regions they serve. Retaining these names is important as it facilitates the company's compliance with regulatory obligations specific to gas and electric utilities regulated by different state and federal governmental authorities.  Transitioning all services to the corporate name of "National Grid" would be enormously confusing from an internal perspective due to differing utility regulation for gas and electric in the states that National Grid operates. Therefore, National Grid retains the legacy names for these "background" utility-regulation purposes, but uses the National Grid d/b/a name for all public-facing purposes - including marketing, billing, and service matters. ***The National Grid name is the only name used for customer interaction. Within the corporate structure, the legacy regulated retail companies are all wholly-owned subsidiaries of National Grid USA, Inc.***
>
> [FN]  The legacy regulated retail companies are Massachusetts Electric Company, Nantucket Electric Company, Colonial Gas Company, and Boston Gas Company in Massachusetts; Niagara Mohawk Power Corporation, The Brooklyn Union Gas Company, and Keyspan Gas East Corporation in New York; and The Narragansett Electric Company in Rhode Island.

(emphasis added).

20.     The 2014 National Grid Petition further stated:

In National Grid's specific situation, customers will be able to identify the caller more easily if the caller is identified by its registered d/b/a name. National Grid uses the "National Grid" name for customer service purposes, billing, and marketing. The service trucks that customers see operating in the area have "National Grid" logos. Thus, "National Grid" is the name that its customers are familiar with and associate with their service provider. Placing calls from "Boston Gas" or "Nantucket Electric Company" will be confusing to customers who are unfamiliar with these corporate entities and do not understand the legal relationship between these entities and National Grid.

21.     Defendants state on their United States website:

**National Grid (LSE:  NG; NYSE:  NGG) is an electricity and gas company that connects consumers to energy sources through its networks.  …**  In the northeast US, we connect more than seven million gas and electric customers to vital energy sources, essential for our modern lifestyles. … National Grid delivers electricity to approximately 3.4 million customers in Massachusetts, New York and Rhode Island. We own over 4,000 megawatts of contracted electricity generation, providing power to over one million LIPA customers. We are the largest distributor of natural gas in the northeast US, serving approximately 3.6 million customers in New York, Massachusetts and Rhode Island.

Source:  http://www2.nationalgrid.com/about-us/what-we-do/ (last visited May 5, 2016).

22.     Keyspan Gas East Corporation is organized as a domestic New York corporation, which maintains its principle office at 175 East Old Country Road, Hicksville, New York. Keyspan Gas East Corporation is a distributor of natural gas in New York and operates as National Grid. Keyspan Gas East Corporation is liable for telephone calls made by it or on its behalf by Defendants' express or implied agents to Plaintiffs' and Class members' cellular telephone numbers in violation of the TCPA.

23.     The Brooklyn Union Gas Company is organized as a domestic New York corporation, which maintains its principal office at One Metrotech Center, Brooklyn, New York. The Brooklyn Union Gas Company is a distributor of natural gas in New York and

operates as National Grid. The Brooklyn Union Gas Company is liable for telephone calls made by it or on its behalf by Defendants' express or implied agents to Plaintiffs' and Class members' cellular telephone numbers in violation of the TCPA.

24. Niagara Mohawk Power Corporation is organized as a domestic New York corporation, which maintains its principal office at 300 Erie Boulevard West, Syracuse, New York. Niagara Mohawk Power Corporation is a distributor of electricity and natural gas in New York and operates as National Grid. Niagara Mohawk Power Corporation is liable for telephone calls made by it or on its behalf by Defendants' express or implied agents to Plaintiffs' and Class members' cellular telephone numbers in violation of the TCPA.

25. National Grid USA Service Company, Inc., is organized under the laws of Massachusetts. National Grid USA Service Company, Inc. is authorized with the New York Secretary of State to do business in New York and maintains offices in New York. As described in a Service Agreement between National Grid USA Service Company, Inc. and EnergyNorth Natural Gas, Inc., dated April 1, 2009, National Grid USA Service Company, Inc., "is a company engaged primarily in the rendering of services to companies in the National Grid USA holding company system." As provided in Schedule I of that Service Agreement, the services provided by National Grid USA Service Company, Inc. to its National Grid affiliates include accounting, auditing, construction, corporate record keeping, customer services, emergency services, employee relations, engineering, executive and administrative services, information systems, insurance, intellectual property, property acquisition and management, power supply, public information and relations, purchasing and storage, rate review and analysis, regulation handling, regulation analysis, preparation of applications and registrations, establishing procedures and standards, tax preparation and services and treasury and statistical

services.  National Grid USA Service Company, Inc. is liable for telephone calls made by it or on its behalf by Defendants' express or implied agents to Plaintiffs' and Class members' cellular telephone numbers in violation of the TCPA.

## SUBJECT MATTER JURISDICTION

26.     Plaintiffs invoke the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §1331, which confers original jurisdiction upon this Court for all civil actions arising under the laws of the United States, and pursuant to 47 U.S.C. §227(b)(3)).

27.     This matter in controversy exceeds $5,000,000.00, as each member of the proposed Classes is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Further, Plaintiffs allege Classes that will result in at least one Class member belonging to a different state.  Therefore, the elements of subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act ("CAFA") are present.

## PERSONAL JURISDICTION

28.     This Court possesses specific personal jurisdiction over all Defendants pursuant to New York Civil Practice Law and Rules 302(a) and federal constitutional due process.

29.     This Court possesses general personal jurisdiction over all Defendants pursuant to New York Civil Practice Law and Rules 301 and federal constitutional due process.

30.     All Defendants have sufficient minimum contacts with New York and this District, have purposefully availed themselves to doing business in New York and this District, and possess such a significant and continuous presence in New York and this District such as to be considered at home for the purposes of establishing personal jurisdiction.

31.     In addition, Plaintiffs' and the Class members' injuries alleged in this action arise from Defendants' business of providing utility services or services related to those utility

services in New York, and result from Defendants' tortious conduct in violation of the TCPA within New York and directing their conduct to having intended effects within New York.

## VENUE

32.     Venue is proper in this District under 28 U.S.C. §1391.


## THE TELEPHONE CONSUMER PROTECTION ACT

33.     In 1991, Congress enacted the TCPA,[2] in response to a growing number of consumer complaints regarding certain telemarketing practices.

34.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."  Specifically, the plain language of TCPA Section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[3]

35.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also explicitly recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[4]

36.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed

---

[2]     Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. §227).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §201 *et seq.*

[3]     47 U.S.C. § 227(b)(1)(A)(iii).

[4]     *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[5] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[6]

37.     In the same 2008 Declaratory Ruling, the FCC emphasized that creditors and their third party debt collectors may be held liable under the TCPA for debt collection calls: "A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules.  Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call. . . . A third party collector may also be liable for a violation of the Commission's rules."

38.     In a 2013 Declaratory Ruling, the FCC reiterated that creditors and sellers acting as principals are vicariously and jointly liable for violations of the TCPA made by agents of the creditor or seller, regardless of whether the agency is express or implied, and including when agents are vested with apparent authority or when the creditor ratifies the agents' illegal acts.[7] The *Dish Network* ruling provides that, "vicarious seller liability under federal common law agency principles is also available for violations of section 227(b)."[8]  It adds that "allowing the

---

[5]     *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2008 *FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[6]     *2008 FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶10).

[7]     *In re Joint Petition filed by Dish Network, LLC*, ("*Dish Network*"), 28 F.C.C.R. 6574, 6593 ¶¶ 1, 24, 28, 33-48 (2013).

[8]     *Id*. ¶ 33; *see also id.* ¶ 28 ("[A] seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) ("[The Federal Communications Commission has ruled that, under federal common-law

seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions."[9]

39.     This Court held that the *Dish Network* Ruling "makes clear that the 2008 FCC Order illustrates vicarious liability" for a creditor who retains the agency services of a debt collector or other third party that violates the TCPA.   Doc. No. 152 at 21.

## STATEMENT OF FACTS

40.     Defendants Keyspan Gas East Corporation, The Brooklyn Union Gas Company and Niagara Mohawk Power Corporation are utility providers of natural gas and electricity in the Northeastern United States, each operating under the trade name National Grid.  During the Class Periods, those Defendants provided gas or electricity to customers in New York and New England.  Defendant National Grid USA Service Corporation provides shared services to the various National Grid companies in New York and New England, including coordination, supervision and operation of internal and external debt collection, first-party and third-party debt collector agency relationships and outbound dialing for debt collection and telemarketing.

41.     Defendants or others operating on their behalf place telephone calls to consumers using autodialers and/or leave prerecorded telephone messages for their customers residing in the United States who allegedly owe monies for utility services.

42.     To make these telephone calls, Defendants employ automatic telephone dialing systems and artificial or prerecorded voices to call Class members' cellular telephone numbers.

43.     Defendants concede the practice.  In the 2014 National Grid Petition, Defendants

principles of agency, there is vicarious liability for TCPA violations.") (citing *Dish Network).*
[9]      *Dish Network*, ¶ 37.

admitted to the FCC that they routinely use "prerecorded calls" as a means of communicating with their customers.  Feb. 18, 2014 Petition at 4.  The 2014 National Grid Petition states: "These prerecorded calls are an important tool that National Grid used to keep its customers informed of service issues on a timely basis."  The same 2014 National Grid Petition concedes that many of the prerecorded calls are made to Defendants' customers' cellular telephones.

44.     Defendants also conceded that they use prerecorded messages in a submission to the FCC on March 26, 2015, after this action was filed.  In that submission, Defendants additionally admitted to using prerecorded calls as means to collect "overdue bills" and that their communications "can include prerecorded and autodialed calls."  March 26, 2015 Submission at 3, 4.  That FCC submission concedes that many of the prerecorded calls are made to Defendants' customers' cellular telephones.

45.     Defendants require their debt collectors to sign a form "Collection Agency Account Collection Agreement" prepared by Defendants.  The "Scope of Work" appendix to that form agreement states that Defendants cause an "outbound call" to be made to "customers with delinquent accounts[.]"   NGDEFENDANTS 0000109 – 0000110.[10] "Outbound call messaging is outsourced and performed by third parties under contract with [the] Companies [*i.e*. National Grid Companies]."  *Id*.

46.     Defendants jointly retain debt collectors to make calls on behalf of Defendants to collect debts allegedly owed by Defendants' utility customers.

---

[10]     NGDEFENDANTS 0000082 – 134 is the *Collection Agency Account Collection Agreement* and Appendices between National Grid USA Service Company, Inc. and its defined "Affiliates" and debt collector Credit Protection Association, L.P.  The "Affiliates" are defined to include Defendants Niagara Mohawk Power Corporation, KeySpan Gas East Corporation d/b/a National Grid, and The Brooklyn Union Gas Company.  *See* NGDEFENDANTS 0000082, 0000103-04.

47.     Defendants' debt collectors also use automatic telephone dialing systems and artificial or prerecorded voices to call Class members' cellular telephone numbers.

48.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants to demonstrate that Plaintiffs and Class Members provided express consent within the meaning of the statute.[11]

49.     Neither Plaintiffs nor the other members of the Classes provided their prior express consent during the transaction that resulted in the claimed debt owed to permit Defendants or others operating on their behalf to make automated telephone calls to Plaintiffs' or Class members' cellular telephone numbers.

50.     Defendants' and their debt collectors' and other agents' calls to Plaintiffs' and Class members' cellular phones were not "for emergency purposes" as described in 47 U.S.C. §227(b)(1)(A).

***National Grid Retains and Controls Debt Collectors and other Third Parties as Express and Implied Agents to Call Class Members' Cellular Telephones***

51.     Prior to sending a customer's account to a third-party debt collector, Defendants' internal Collection Department retains and directs a third party under Defendants' control to make an outbound call to customer.  NGDEFENDANTS 0000109 - 0000110  (quoted above).

52.     Defendants also retain debt collectors as their express and implied agents to call customers cellular telephones in violation of the TCPA.  Defendants ratify the acts of their agent debt collectors.

53.     The following debt collectors have served as Defendants' agents during the Class Periods for the TCPA violations claimed in this Complaint:  1) NCO Financial Services, Inc.; 2)

---

[11]     *See 2008 FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶10).

Mercantile Adjustment Bureau, LLC; 3) Allied Account Services; 4) Credit Protection Association, L.P.; 5) Rochester Credit Center, Inc. d/b/a The Credit Bureau / NACM New York; 6) Collecto, Inc. d/b/a EOS CCA; 7) I.C. System, Inc.; 8) NRA Group a/k/a National Recovery Agency, Inc.; 9) Penn Credit Corporation; 10) RUI a/k/a Recovery's Unlimited East, Inc.; 11) Solomon and Solomon, P.C.; 12) Associated Credit Services, Inc; 13) Stevens Business Service, Inc.; and 14) Transworld Systems, Inc.  Each executed a substantially similar *Collection Agency Account Collection Agreement* with Defendants.

54.     Defendants drafted and required their debt collectors to sign a form *Collection Agency Account Collection Agreement*, providing that Defendants would exercise control over their debt collectors' collection activities.  The *Collection Agency Account Collection Agreement* is supplemented by appendices, including an appendix styled *Scope of Work* that is prepared by National Grid.

55.     The *Collection Agency Account Collection Agreement* and *Scope of Work* vest Defendants with the power to provide interim instructions to their debt collectors directing their debt collection conduct.  Those interim instructions included ███████████████

████████████████████████████████████

56.     The *Collection Agency Account Collection Agreement* and *Scope of Work* provide that:

(a).     National Grid exclusively determines which National Grid utility accounts are placed with their debt collectors to perform primary, secondary and tertiary collections;

(b).     Each debt collector must demonstrate that it can and will perform the debt collection services to Defendants' "satisfaction."   NGDEFENDANTS  0000083;

NGDEFENDANTS 0000477; [12]

(c).    National Grid requires each collector to provide weekly progress and remittance reports for all placed collection accounts.   NGDEFENDANTS 0000084-86, 0000089-90, 0000119–121; NGDEFENDANTS 000477-79, 0000483-84;

(d).    ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

NGDEFENDANTS 0000084; *see also* NGDEFENDANTS 0000478;

(e.).    National Grid retains the right to recall any placed collection account. NGDEFENDANTS 0000085; NGDEFENDANTS 0000478;

(f).    ███████████████████████████████████████


NGDEFENDANTS 0000086; *see also* NGDEFENDANTS 0000479;

(g).    National Grid has the right to demand an "Inspection" of any debt collector "to inspect the performance of the Collection Services" unless the collector can demonstrate to National Grid that "the Collection Services are in compliance with the Collection Agreement."   NGDEFENDANTS 0000092; NGDEFENDANTS 0000486;

(h).    National Grid requires the debt collectors to obtain, at its own cost, a collection

---

[12]    NGDEFENDANTS 0000475 – 497 is the *Collection Agency Account Collection Agreement* between 1.   Niagara Mohawk Power Corporation; 2.   Massachusetts Electric Company d/b/a National Grid; 3.  The Narragansett Electric Company; 4.  Granite State Electric Company; 5.  Nantucket Electric Company; 6.  KeySpan Gas East Corporation; 7.  Boston Gas Company; 8.  Essex Gas Company; 9.  Colonial Gas Company; 10.  The Brooklyn Union Gas Company; and 11.  Energy North Natural Gas, Inc. as "D/B/A's of National Grid" and NCO Financial Systems, Inc.   *See* NGDEFENDANTS   0000475.   Defendants produced this *Collection Agency Account Collection Agreement* without the referenced appendices.

bond. NGDEFENDANTS 0000092; NGDEFENDANTS 0000486;

(i).    National Grid requires the debt collectors to obtain, at its own cost, liability insurance. NGDEFENDANTS 0000095-96; NGDEFENDANTS 0000489-90; and

(j).    Any debt collector retained by National Grid can "be terminated by Company in their sole and exclusive discretion, with or without reason or cause." NGDEFENDANTS 0000098; *see also* NGDEFENDANTS 0000492.

57.    Further, Defendants control how their debt collectors perform their collection services,



NGDEFENDANTS 0000116-17.

58.    Defendants further control the activities of their debt collectors through the implementation of "Minimum Work Requirements" stated in the *Scope of Work*:

3.19 Minimum Work Requirements



must be sent and the first call must be made within the first five (5) days of the



NGDEFENDANTS 0000133-34.[13]

59.

---

[13]   *See also Dish Network*, ¶ 27 ("And one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it – by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example.").

█████████████████████████████████████████

NGDEFENDANTS 0000115 (emphasis added).

      60.    In addition to retaining their debt collectors as express and implied agents, Defendants vest their debt collectors with apparent authority. They do so by permitting their debt collectors to represent to consumers in letters and during telephone calls that the debt collectors are authorized to act on Defendants' behalf.

      61.    Demonstrating the express, implied and apparent authority granted by Defendants to their debt collectors, on June 15, 2015, "National Grid" mailed a letter to Plaintiff Royal advising her that "[f]ailure to pay an outstanding balance … could include referral to an outside collection agency" for debt collection. *See* Exhibit 5 annexed hereto. As represented to her by National Grid, Plaintiff Royal received a letter dated June 20, 2015 from Mercantile Adjustment Bureau, LLC, serving as one of Defendants' agent debt collectors. That June 20, 2015 letter states: "Mercantile Adjustment Bureau, LLC has received authorization from NIAGARA MOHAWK POWER CORPORATION d/b/a NATIONAL GRID, to initiate collection efforts to recover the total amount due as noted above." *See* Exhibit 6 annexed hereto.

      62.    The joint nature of collections performed in concert by Defendants and their debt collectors is memorialized in the *Scope of Work*: "The provision of a team comprised of senior representatives of Companies and Agency who will meet on a regular basis and/or as required with the purpose of agreeing and implementing joint strategies for the continuous improvements of the collection Service, review progress and address any issues." NGDEFENDANTS 0000133.

63.     Defendants ratify their agent debt collectors' actions by knowingly accepting the benefits of their conduct (*i.e*., by accepting and retaining monies collected by their debt collectors from Class members).  The transfer of funds collected by the debt collectors on Defendants' behalf is mandated by the form *Collection Agency Account Collection Agreement*: "Agency shall, on the first work day of each week, remit to Affiliates by Agency check all monies received during the previous week, less any Rate Commissions due and owing to Agency in accordance with Article 4, 'Compensation' and Appendix A Scope of Work Sections 11.6 and 12.0."  NGDEFENDANTS 0000484.

## TELEPHONE CALLS TO PLAINTIFF JENKINS' CELLULAR TELEPHONE NUMBER

64.     Defendants contracted with debt collectors to contact Defendants' customers, each of which was Defendants' express or implied agents.

65.     Debt collector NCO Financial Systems, Inc. ("NCOF") made calls to Plaintiff Jenkins' cellular telephone number in New York that is the subject of this action.

66.     Plaintiff Jenkins did not provide Defendants or NCOF with his prior express consent to call his cellular telephone number utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. §227(b)(1)(A).

67.     Nevertheless, non-party debt collector NCOF, acting as Defendants' and The Brooklyn Union Gas Company's and Keyspan Gas East Corporation's agent, called Plaintiff Jenkins' cellular telephone number approximately 215 times on behalf of Defendants and The Brooklyn Union Gas Company and Keyspan Gas East Corporation, including calls on the following dates:  March 7, 2011, March 8, 2011, March 9, 2011, March 10, 2011 March 11, 2011 March 12, 2011, March 30, 2011 (twice), April 8, 2011 (three times), April 12, 2011

(twice), April 20, 2011 (six times), April 29, 2011 (twice), June 22, 2011 (twice), June 28, 2011 (twice), July 5, 2011, July 15, 2011 (twice), July 21, 2011 (twice), July 25, 2011 (twice), August 19, 2011, August 24, 2011, August 30, 2011 (twice), September 9, 2011 (twice), September 12, 2011 (twice), September 13, 2011 and September 16, 2011. *See* Exhibits 3 and 4 annexed hereto.

68.     Prior to calling Plaintiff Jenkins' cellular telephone for Defendants, NCOF had obtained Plaintiff Jenkins' cellular telephone number in connection with debt collection performed by NCOF for another NCOF client.

69.     Records and discovery produced by NCOF confirm that NCOF made the telephone calls to Plaintiff Jenkins' cellular telephone number on the dates identified in the preceding Paragraph using an automatic telephone dialing system and/or an artificial or prerecorded voice. *See* Exhibit 3 and 4 annexed hereto.

70.     Plaintiff Jenkins owned the cellular telephone number called by NCOF through September 2011. On or about September 8, 2011, the cellular account related to Plaintiff Jenkins' cellular telephone number was transferred to Tate LLC. Plaintiff Jenkins is the sole member of Tate LLC and user of the cellular telephone number registered to Tate LLC.

71.     NCOF frequently leaves messages on consumers' telephones using prerecorded voice messages. *See Marisco v. NCO Fin. Sys.*, 946 F. Supp. 2d 287, 289 (E.D.N.Y. 2013); *Santino v. NCO Fin. Sys.*, 2011 U.S. Dist. LEXIS 18185, at *9 (W.D.N.Y. Feb. 23, 2011).

72.     Records and discovery produced by NCOF confirm that NCOF called Plaintiff Jenkins' cellular telephone to collect two alleged debts owed to National Grid.

73.     NCOF was retained by Defendants to engage in debt collection.

74.     NCOF made all calls to Plaintiff Jenkins cellular telephone number after the

closure of his subject National Grid account(s) in or about 2008.

75.     NCOF's computer files pertaining to its efforts to collect alleged debts for Defendants and The Brooklyn Union Gas Company and Keyspan Gas East Corporation from Plaintiff are annexed hereto as Exhibits 3 and 4 (highlighting added; social security number redacted).

76.     NCOF used an automatic telephone dialing system when it called Plaintiff Jenkins' cellular telephone number.  The hardware and software used by NCOF has the capacity to generate and store random numbers, or receive and store lists of telephone numbers, and to dial those numbers, en masse, in an automated fashion without human intervention. NCOF's automated telephone dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to available telemarketers and disconnecting the rest.

77.     NCOF's computer files annexed hereto as Exhibits 3 and 4 indicate calls made by NCOF's automatic telephone dialing systems by the designations "VOX," "ASP" and "T1." Additional calls made by NCOF to Plaintiff Jenkins' cellular telephone using an automatic telephone dialing system are identified by the designation "IVR."

78.     Charles Petro is a debt collector formerly employed by NCOF.  He testified during a deposition on October 17, 2013 as follows at page 115 of the transcript:

Q.      I'm sorry. So let me stop you for a second, do you know what "MN" stands for?

A.       I don't know what the MN is, but I know it's -- I know it's the autodialer.

Q.      And you know that because it says VOX, right?

A.      I know because it's VOX.

79.     NCOF's "VOX" references are to a telephone calling system termed "LiveVox,"

which has been held to be a predictive dialer and an automatic telephone dialing system for the purposes of the TCPA. *See Smith v. MarkOne Fin., LLC*, 2015 U.S. Dist. LEXIS 11803, at *9 (M.D. Fla. Feb. 2, 2015) ("As the LiveVox system automatically dials numbers from a downloaded list and predicts when a collection agent will be available to pick up the call, it is a predictive dialer and an ATDS."); *Echevvaria v. Diversified Consultants, Inc*., 2014 U.S. Dist. LEXIS 32136, at *16-26 (S.D.N.Y. Feb. 28, 2014) ("Rather, the evidence -- including the LiveVox Memo and Diversified's Jamie Sullivan's admission -- is that LiveVox is a predictive dialer that under the FCC's rules interpreting the TCPA, is an ATDS covered by the TCPA."); *Davis v. Diversified Consultants, Inc*., 2014 U.S. Dist. LEXIS 87867, at *19 (D. Mass. 2014) (*"In short, the LiveVox system, as utilized by defendant, was an ATDS."); see also Donnelly v. NCO Fin. Sys*., 263 F.R.D. 500, 506 (N.D. Ill. 2009) (noting that NCOF produced its contract with LiveVox and the LiveVox Operations Guide in discovery).

80.     NCOF's "ASP" references are to a telephone calling system termed "Aspect," which has been held to be a predictive dialer and an automatic telephone dialing system for the purposes of the TCPA. *See Lynn v. Monarch Recovery Mgmt*., 953 F. Supp. 2d 612, 616 (D. Md. June 17, 2013) ("The calls were made using Aspect dialer equipment, an automatic telephone dialing system ('ATDS')."); *Nelson v. Santander Consumer USA, Inc*., 931 F. Supp. 2d 919, 924 (W.D. Wis. 2013) ("In making these calls, defendant used the Aspect telephony system, a computer telephone software system that routes and places inbound and outbound calls.  Aspect has the capacity to (1) store telephone numbers and then call them; and (2) perform 'predictive dialing' and 'preview dialing.'").

81.     NCOF's "IVR" references are to a telephone calling system termed "Soundbite," which is a predictive dialer and an automatic telephone dialing system for the purposes of the

TCPA.  *See, e.g., Starkey v. Firstsource Advantage*, 2010 U.S. Dist. LEXIS 60955, *3 (W.D.N.Y. Mar. 11, 2010) ("The calls from defendant to plaintiff's cellular telephone were made via live operator and two automated dialing systems, a predictive dialer and SoundBite, used by defendant."

82.    NCOF's computer files annexed hereto as Exhibits 3 and 4 indicate other calls made by use of a "T1" line, which refer to automatic telephone dialing systems.

83.    Upon information and belief, during the Class Period NCOF used additional predictive dialers and automatic telephone dialing systems.

84.    NCOF promotes it use of an automatic telephone dialing system on its website:

> NCO's Interactive Voice Messaging (IVM) solution uses advanced technology to deliver high quality automated messaging to our clients' customers globally. Whether the goal is to reduce inbound call volume, increase customer self-service, or connect customers to a live agent, NCO's IVM solution enables our clients to deliver branded, repeatable, messaging to its customers while maximizing the customer experience and your revenue.

https://www.ncogroup.com/Turnkey/Communications/Interactive_Voice_Messaging.html (last visited, February 25, 2015).

85.    On information and belief, Defendants employed one or more debt collectors aside from NCOF to call Plaintiff Jenkins' cellular telephone number.

86.    Prior to receiving the calls to his cellular telephone number made by NCOF, Defendants or one of them or third-parties retained by Defendants called Plaintiff Jenkins cellular telephone number using an automatic telephone dialing system or employing a prerecorded or artificial voice.

87.    Defendants are liable to Plaintiff Jenkins and the Classes he represents for violations of the TCPA.

**TELEPHONE CALLS TO PLAINTIFF STEELE'S CELLULAR TELEPHONE**

88.    Plaintiff Steele has not provided Defendants with prior express consent to call his cellular telephone number utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. §227(b)(1)(A).

89.    Nevertheless, Defendants or one of them or third-parties retained by Defendants repeatedly called Plaintiff Steele's cellular telephone.   Plaintiff Steele received repeated, harassing debt collection calls at all hours of the day.   On many occasions, including on February 27, 2014 December 28, 2014, May 29, 2015, on or about May 30, 2015 and on or about June 1, 2015, at least one Defendant called Plaintiff Steele's cellular telephone number and left a prerecorded telephone message.   Because these calls were prerecorded, Plaintiff Steele could not request that the calls end or voice his complaints to a real person.

90.    An automated, computer-voice prerecorded message left by Defendants or one of Defendants' agents on Plaintiff Steele's cellular telephone stated:

> *"It's important that we speak to you within the next 24 hours.  Please call us at 1-800-930-5003.  Again, that's 1-800-930-5003.  Thank you.  National Grid is registered on Long Island as Keyspan Gas East."*

91.    Defendants employ the 1-800-930-5003 telephone number when making debt collection calls on their own behalf.  That telephone number is listed in an April 15, 2010 National Grid new release, entitled*:  National Grid Offers Assistance to Long Island Customers*. According to that news release, customers returning calls to 1-800-930-5003 will speak to a National Grid employee about their allegedly overdue invoices.

92.    In a letter dated June 7, 2015, mailed by certified mail and received by National Grid on June 19, 2015, Plaintiff Steele directed Defendants to immediately cease making calls

to his cellular telephone number.  Despite being in receipt of Plaintiff Steele's letter, on or about June 24, 2016 and June 26, 2016, Defendants called Plaintiff Steele's cellular telephone number and left additional prerecorded messages.

93.     Defendants are liable to Plaintiff Steele and the Classes he represents for violations of the TCPA.

## TELEPHONE CALLS TO PLAINTIFF ROYAL'S CELLULAR TELEPHONES

94.     Plaintiff Royal has not provided Defendants with prior express consent to call her cellular telephone number(s) utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. §227(b)(1)(A).

95.     Nevertheless, beginning in or about 2011, on dates and at times known to Defendants, at least one Defendant or others acting on Defendants' behalves called Plaintiff Royal's cellular telephone number(s) using an automatic telephone dialing system and/or left prerecorded telephone messages.  To the extent these calls were prerecorded, Plaintiff Royal could not request that the calls end or voice his complaints to a real person.

96.     In a letter dated June 15, 2015, Defendants and Niagara Mohawk Power Corporation advised Plaintiff Royal that her National Grid account could be referred to an outside collection agency.  *See* Exhibit 5 annexed hereto.  That outside collection agency was Defendants' agent Mercantile Adjustment Bureau, LLC ("Mercantile").  In a letter dated June 20, 2015, Mercantile stated it "received authorization from Niagara Mohawk Power Corporation" to engage in debt collection against Plaintiff Royal.  *See* Exhibit 6 annexed hereto. Thereafter, Mercantile made telephone calls as Defendants' agent to Plaintiff Royal's cellular telephone number(s).  Those calls were made using an automatic telephone dialing system and an automatic dialing-announcing device and/or left prerecorded telephone messages.

97.     Defendants are liable to Plaintiff Royal and the Classes she represents for violations of the TCPA.

**TELEPHONE CALLS TO PLAINTIFF EWAN'S CELLULAR TELEPHONES[14]**

98.     Plaintiff Ewan was a utility customer of Defendants for many years. She received natural gas from Defendants at an apartment located at 348 Marcus Garvey Blvd., Brooklyn, New York 11221 between 2007 and 2010, and at an apartment located at 1576 Saint Johns Place, Brooklyn, New York between 2010 and 2017.

99.     Defendants or Defendants' agents called at least three of Plaintiff Ewan's cell phones between March 9, 2011 and the present. These cell phones were registered to phone numbers ending in the following four digits, respectively: 9553, 7312, and 3500. Plaintiff Ewan used the phone number ending 9553 between 2005 and some time before the end of 2011. She used the phone number ending in 7312 between 2012 and 2016. She used the phone number ending in 3500 between August 19, 2016 and September 13, 2017.[15]

100.    Plaintiff Ewan's service with Defendants for her apartment at 348 Marcus Garvey Blvd was terminated in or around 2010. After Plaintiff Ewan's service with Defendants for this address was terminated, Defendants referred Plaintiff Ewan's account for this apartment to one of its debt collectors, NRA. NRA then placed multiple calls using an ATDS to at least one of Plaintiff Ewan's cell phones. Specifically:

---

[14] Since the filing of Plaintiffs' joinder motion relating to Plaintiffs Ewan and Whyte, discovery concerning Plaintiffs Ewan and Whyte has revealed additional information and Plaintiffs served Defendants with interrogatory responses containing additional detail concerning Plaintiffs Ewan and Whyte. The allegations concerning Plaintiffs Ewan and Whyte have been updated to reflect information identified during the discovery process.

[15] Plaintiffs have identified their telephone numbers to Defendants in advance of filing this Complaint. Only the last four digits of Plaintiffs' phone numbers are identified in this Complaint to preserve Plaintiffs' privacy.

a.      In 2013, in connection with its efforts to collect debts allegedly arising from services provided for Plaintiff Ewan's apartment at 348 Marcus Garvey Blvd, ████████████████████████████████████████████████████████████ ██████████████n.  Plaintiff Ewan never provided this phone number to NRA.

b.      ████████████████████████████████████████████████ ██████████████████████, NRA used a predictive dialer called the Mercury Predictive Dialer to make automated calls to the phone number ending with 7312 on 6/14/2013, 7/31/2013,  12/4/2013,  1/24/2014,  1/28/2014,  2/6/2014,  2/12/2014,  2/19/2014, 2/21/2014, 2/25/2014, 3/4/2014, 3/7/2014, 3/11/2014, 3/14/2014, 3/18/2014, 3/21/2014, 3/24/2014, 4/1/2014, 4/4/2014, 4/6/2014, 4/8/2014, 4/16/2014, 5/14/2014, 5/20/2014, 5/22/2014, 5/28/2014, 6/4/2014, 6/10/2014, 6/18/2014, 6/25/2014, 7/1/2014, 7/7/2014, 7/10/2014, 7/16/2014, 7/23/2014, 8/7/2014, and 8/13/2014.  Discovery concerning calls made to Plaintiff Ewan is ongoing and may identify further calls to Plaintiff Ewan.

c.      NRA's Mercury Predictive Dialer is an ATDS according to the FCC's guidance, and courts have held it to be an ATDS.  ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

101.   Plaintiff Ewan does not recall providing the phone number ending in 7312 to Defendants during any communication relating to her account for the apartment located at 348 Marcus Garvey Blvd, and Defendants have not proffered any evidence purporting to show that she provided the phone number ending in 7312 to Defendants during any communication relating her account for the apartment at 348 Marcus Garvey Blvd.

102.   Defendants also placed multiple calls to Plaintiff Ewan's cell phones involving the use of a pre-recorded message and/or an ATDS in connection with their efforts to collect debts allegedly arising from gas service for Ms. Ewan's apartment located at 1576 Saint Johns Place.  Upon information and belief, all of the calls described in the subparagraph below were made as part of an effort to collect a debt allegedly relating to the gas service for Ms. Ewan's apartment located at 1576 Saint Johns Place.

a.   On March 16, 2011, Defendants placed a call to the phone number ending in 9553 using the Global Connect Dialer.  This call also involved the use of pre-recorded message.

b.   Defendants also placed multiple calls to the phone number ending in 7312 using the Davox Dialer.  The dates of these calls include but may not be limited to the following dates: 6/7/2013, 6/8/2013, 6/14/2013, and 7/30/2013.

c.   Defendants also made multiple phone calls to the phone number ending in 3500 using the Davox Dialer.  The dates of these calls include but may not be limited to the following dates: 12/9/2016, 12/12/2016, 12/16/2016, 12/17/2016, 12/20/2016,

12/21/2016, 12/22/2016, and 12/23/2016, and 12/29/2016.  A pre-recorded message was played on at least one call to the phone number ending in 3500 on each of the following dates:  12/12/2016 and 12/29/2016.

103.    Defendants' Global Connect Dialer is an ATDS under the FCC's guidance and has been held to be an ATDS by a court. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

104.    Defendants' Davox Dialer is an ATDS under the FCC's guidance. ██████████

████████████████████████████████████████████████████

███████████████████████████████ ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

[REDACTED]

105.   Plaintiff Ewan did not provide prior express consent to Defendants authorizing them to make automated calls to her phone numbers ending in 9553, 7312, or 3500 for the purpose of collecting alleged debts relating to gas service for her apartment located at 1576 Saint Johns Place.  Any phone numbers she provided to Defendants were provided solely for the purpose of enabling a service person to call upon arrival when establishing service or the process of looking up her account on National Grid's systems.  Providing a phone number for either of these limited purposes does not constitute prior express consent for Defendants to place multiple harassing robocalls for the purpose of collecting an alleged debt. [REDACTED]

[REDACTED]

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

106.    In 2017, Plaintiff Ewan orally told one of Defendants' debt collectors to stop calling her about alleged debts.  As a result, Plaintiff Ewan revoked any prior permission or consent that Defendants' errantly perceived they had to call her for non-emergency purposes, including calls to her cellular telephone number(s).

107.    Defendants' debt collectors Credit Protection Association, NCO Financial Systems, Inc., Transworld Systems, Inc., or another of Defendants' agent debt collectors placed calls to Plaintiff Ewan's cellular telephone with the last four digits 3500 between 2016 and the present on behalf of Defendants, even though she did not provide prior express consent to Defendants or their debt collectors to receive these calls.  These calls concerned allegations about a debt she purportedly owed Defendants.

108.    As other courts have held, Credit Protection Association uses automatic telephone dialing systems to make calls.  *See, e.g., Schumacher v. Credit Prot. Ass'n*, No. 4:13-CV-00164-SEB, 2015 WL 5786139, at *8 (S.D. Ind. Sept. 30, 2015) ("Because Dial Connection is an ATDS under the TCPA, CPA violated the TCPA when it repeatedly called Mr. Schumacher."). Upon information and belief, Credit Protection Association used automatic telephone dialing systems to make calls on behalf of Defendants to Plaintiff Ewan.

109.    NCO Group used automatic telephone dialing systems to make calls. NCO Group stated in its 10-K filing with the Securities and Exchange Commission for the fiscal year ended December 31, 2012: "We have implemented a scalable technical infrastructure that can

31

flexibly support growing client volume while delivering a high level of reliability and service. Our customer contact centers feature advanced technologies, including predictive dialers, automated call distribution systems, digital switching, Voice over Internet Protocol ("VoIP") technologies, digital recording, workforce management systems and customized software solutions, including the NCO SYSTEM INTEGRATOR Interface Manager. . . . Our ARM call centers utilize both virtual and onsite predictive dialers to address our low-balance, high-volume accounts, and our CRM centers utilize predictive dialers to conduct our clients' outbound calling campaigns. These systems scan our databases, simultaneously initiate calls on dedicated predictive dialers, and determine if a live connection is made. Upon determining that a live connection has been made, the computer immediately switches the call to an available representative and instantaneously displays the associated account record on the representative's workstation. Calls that reach other signals, such as a busy signal, telephone company intercept or no answer, are tagged for statistical analysis and placed in priority recall queues or multiple-pass calling cycles. NCO systems also automate almost all record keeping and workflow activities including letter and report generation. We believe that our automated method of operations dramatically improves the productivity of our staff." Upon information and belief, NCO Group used the same automatic telephone dialing systems to make calls to Plaintiff Ewan on behalf of Defendants.

**TELEPHONE CALLS TO PLAINTIFF WHYTE'S CELLULAR TELEPHONES**

110.    Plaintiff Whyte was a utility customer of Defendants for many years. She received natural gas from Defendants at her Brooklyn apartment between 2009 and 2017.

111.    Defendants or Defendants' agents called at least two of Plaintiff Whyte's cell phones between March 9, 2011 and the present.  These cell phones were registered to phone

numbers ending in the following four digits, respectively: 8100 and 8052.  She used the phone number ending in 8100 at least during the time period between 2012 and 2016.  She has used the phone number ending in 8052 at least since February 27, 2016, but possibly as early as sometime in 2015 or 2014.

112.    Defendants placed multiple calls to Plaintiff Whyte's cell phones involving the use of a pre-recorded message and/or an ATDS in connection with their efforts to collect debts allegedly arising from Ms. Whyte's gas service for her apartment.  The dates of Defendants' calls to the phone number 8100 include but may not be limited to the following dates: 2/28/2012,  3/16/2012,  3/17/2012,  3/20/2012,  8/28/2012,  1/19/2013,  2/4/2013,  2/5/2013, 2/6/2013,  3/26/2013,  3/27/2013,  3/28/2013,  5/21/2013,  6/19/2013,  6/20/2013,  6/21/2013, 6/22/2013,  6/25/2013,  6/26/2013,  6/28/2013,  8/13/2013,  5/14/2014,  5/15/2014,  5/16/2014, 5/21/2014, 5/22/2014, 5/23/2014, 5/24/2014, 5/28/2014, and 6/8/2014.  Upon information and belief, all of these calls were made as part of an effort to collect a debt and were made using the Davox Dialer.  For the reasons alleged in paragraph 104 above, the Davox Dialer is an ATDS.

113.    Plaintiff Whyte recalls receiving many phone calls on her phone number 8052 from debt collector CPA relating to a debt she allegedly owed Defendants. For the reasons alleged in paragraphs 108 above, CPA made calls using an ATDS.

114.    Plaintiff Whyte did not provide prior express consent to Defendants authorizing them to make automated calls to her phone numbers ending in 8100 or 8052 for the purpose of collecting alleged debts relating to gas service for her apartment.  Any phone numbers she provided to Defendants were provided solely for the purpose of enabling a service person to call upon arrival when establishing service or the process of looking up her account on National Grid's systems.  Providing a phone number for either of these limited purposes does not

constitute prior express consent for Defendants to place multiple harassing robocalls for the purpose of collecting an alleged debt. █████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

## CLASS ACTION ALLEGATIONS

115. Plaintiffs together and individually bring this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on their own behalves and behalf of the following Classes defined as follows:

**1. National Grid Direct-Dialed Class**: All persons in the United States who from March 7, 2011 to the present (the "Class Period") (1) received non-emergency calls from Defendants; (2) made through the use of any automatic telephone dialing system or using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

**2. National Grid Agent-Dialed Class**: All persons in the United States and its territories who from March 7, 2011 to the present (the "Class Period") (1) received non-emergency calls from any agent retained by Defendants (including

34

debt collectors); (2) made through the use of any automatic telephone dialing system or using an artificial or prerecorded voice; (3) on a cellular telephone number; (4) when the person called did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

Excluded from the Classes are Defendants and their parent(s), subsidiary(ies), officers, directors, employees, partners and co-venturers.  Also excluded are all employees, officers and directors of the debt collectors retained by National Grid.  Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

116.    The Classes satisfy the FED. R. CIV. P. 23 numerosity, commonality, typicality, adequacy, predominance, superiority and ascertainability requirements.

117.    Plaintiffs do not know the exact size or identities of the members of the proposed Classes, since such information is in the exclusive control of Defendants and their retained debt collectors.  However, Defendants represent to providing gas or electric services to millions of customers residing in New York.  *See* Exhibit 2 annexed hereto.  Accordingly, based on Defendants' representations as to their market share, Plaintiffs reasonably believe that the Classes encompass at minimum many thousands of consumers.

118.    Plaintiffs and all members of the Classes have been harmed by the unlawful acts of Defendants, whose privacy was violated and who were subject to annoying and harassing calls that constitute a nuisance.

119.    The joinder of all members of the Classes is impracticable due to the size and relatively modest value of each individual claim.  The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of

identical suits.  The identities of the Class members can be readily ascertained from Defendants'
and their debt collectors' call records.

120.    There are well-defined, nearly identical, questions of law and fact affecting all
parties.  Common question of law and fact raised in this action concerning the Classes' claims
include the following:

(a)    Whether the non-emergency calls made to Plaintiffs, and members of the
Classes' cellular telephone numbers used an automatic telephone dialing system
and/or an artificial or prerecorded voice;

(b)    Whether such calls were made by or on behalf of Defendants;

(c)    Whether Defendants retained agents to call Class members;

(d)    Whether Defendants provided express, implied or apparent authority to third
parties to call Class members' cellular telephones;

(e)    Whether Defendants ratified the acts of third parties retained by Defendants to
call Class members' cellular telephones;

(f)    Whether Defendants violated the TCPA;

(g)    Whether Defendants are vicariously and jointly liable for TCPA violations made
by Defendants' agents;

(h)    Whether Plaintiffs and the Classes are entitled to damages, declaratory relief
and/or injunctive relief as a result of Defendants' violations of the TCPA; and

(i)    Whether Defendants' conduct was knowing or willful.

121.    As people who received numerous and repeated telephone calls using an
automatic telephone dialing system or an artificial or prerecorded voice, without their prior
express consent within the meaning of the TCPA, Plaintiffs assert claims that are typical of each

36

member of the Classes.

122.     Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs have retained able counsel with extensive experience in prosecuting class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA. Plaintiffs' interests are coincident with, and not antagonistic to, the interests of the Classes.

123.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual Class members, including legal and factual issues relating to liability and damages.

124.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.

125.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Class wide relief is essential to compel Defendants to comply with the TCPA.  Since the damages, or statutory damages, suffered by individual members of the Classes may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them.  The Classes are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.  Plaintiffs will encounter no difficulty in managing this action as a class action.

126.     Defendants have acted and refused to act, as alleged herein, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief to the Classes. Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of

herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION

### VIOLATION OF TELEPHONE Consumer PROTECTION ACT

**(PLAINTIFFS AND THE NATIONAL GRID DIRECT-DIALED CLASS AGAINST ALL DEFENDANTS)**

127.    Plaintiffs restate, reallege, and incorporate by reference the foregoing paragraphs.

128.    Plaintiffs and the members of the National Grid Direct-Dialed Class are "persons" under the TCPA.

129.    Section 227(b)(1)(A) of the TCPA makes it unlawful for:

[A]ny person within the United States, or any person outside the United States if the  recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. §227(b)(1)(A).

130.    The foregoing acts and omissions of Defendants with respect to Plaintiffs and the National Grid Direct-Dialed Class violated the TCPA, including but not limited to Section 227(b)(1)(A)(iii).

131.    Each call to Plaintiffs' and the National Grid Direct-Dialed Class members' cellular telephone numbers using an "automatic telephone dialing system" or employing a "prerecorded or artificial voice", within the meaning of 47 U.S.C. § 227(b)(1)(A), and without their "prior express consent" violated TCPA Section 227(b)(1)(A)(iii).

132.    Defendants made or caused to be made the telephone calls to Plaintiffs and members of the National Grid Direct-Dialed Class using equipment that had the capacity to

store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers.

133.    With respect to Plaintiff Steele, on many occasions, including on February 27, 2014 December 28, 2014, May 29, 2015, on or about May 30, 2015, on or about June 1, 2015, on or about June 24, 2015 and on or about June 26, 2015, Defendants, or one of them, called Plaintiff Steele's cellular telephone number and left a prerecorded telephone message.

134.    With respect to Plaintiff Royal, beginning in or about 2011, on dates and at times known to Defendants, Defendants or one of them, directly called Plaintiff Royal's cellular telephone number and left prerecorded telephone messages.

135.    With respect to Plaintiff Ewan, Defendants directly called Plaintiff Ewan's cellular telephone numbers as alleged in paragraphs 103 – 105 above.

136.    With respect to Plaintiff Whyte's, Defendants directly called Plaintiff Whyte's cellular telephone numbers as alleged in paragraph 112 above.

137.    Plaintiffs and the National Grid Direct-Dialed Class are entitled to pursue claims against Defendants during the Class Periods for an injunction, pursuant to 47 U.S.C. §227(b)(3)(A), to enjoin Defendants' violations of TCPA Section 227(b)(1)(A)(iii).  Plaintiffs and the National Grid Direct-Dialed Class seek to enjoin Defendants' violations of the TCPA.

138.    Plaintiffs and the National Grid Direct-Dialed Class are entitled to an award of statutory damages of $500.00 for each call in violation of Section 227(b)(1)(A)(iii), pursuant to 47 U.S.C. §227(b)(3)(B).

139.    Defendants' violations of TCPA Section 227(b)(1)(A)(iii) were willful and/or knowing.  As a result, Plaintiffs and the National Grid Direct-Dialed Class are entitled to treble damages of up to $1,500.00 for each call in violation of the statute, pursuant to 47 U.S.C.

§227(b)(3).

140.    Plaintiffs and the National Grid Direct-Dialed Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT

#### (PLAINTIFFS AND THE NATIONAL GRID AGENT-DIALED CLASS AGAINST ALL DEFENDANTS)

141.    Plaintiffs restate, reallege, and incorporate by reference the foregoing paragraphs.

142.    Plaintiffs and the members of the National Grid Agent-Dialed Class are "persons" under the TCPA.

143.    Section 227(b)(1)(A) of the TCPA makes it unlawful for:

> [A]ny person within the United States, or any person outside the United States if the  recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. §227(b)(1)(A).

144.    Defendants are vicariously and jointly liability for the violations of TCPA Section 227(b)(1)(A) made by their agents, including debt collectors and third-parties retained by Defendants to call Class members' cellular telephones.

145.    Defendants acted in concert with their agent debt collectors and other retained-third parties to jointly violate the TCPA Section 227(b)(1)(A).

146. Defendants provided actual authority to their agent debt collectors and other retained-third parties in form of express and implied acts and authorizations sufficient to form a principal and agent relationship.

147. Defendants exercised control over the acts and practices of their agent debt collectors and other third parties retained to call Class members' cellular telephone numbers by the use of contracts providing Defendants with control powers, including in *Collection Agency Account Collection Agreements* and *Scope of Work* appendices prepared by Defendants.

148. By reason of the *Collection Agency Account Collection Agreements* and *Scope of Work* appendices between and among Defendants and their agent debt collectors, Defendants acquired and used the power to provide interim instructions to their debt collector agents. Defendants obtained substantially similar powers in contracts between and among them and other third-parties retained to make calls to Class members on behalf of Defendants.

149. Defendants demonstrated apparent authority to Class members by stating and implying that their agent debt collectors and other retained-third parties were Defendants' agents. They did so in letters and other communications sent by Defendants, and in letters sent by Defendants' debt collectors that were reviewed or approved or consented to by Defendants.

150. Defendants ratified the of their agent debt collectors and other retained-third parties retained to call Class members' cellular telephone numbers.

151. The foregoing acts and omissions of Defendants with respect to Plaintiffs and the National Grid Agent-Dialed Class violated the TCPA, including but not limited to Section 227(b)(1)(A).

152. Each call by debt collectors or other retained-third parties serving as Defendants' agents to Plaintiffs' and the National Grid Agent-Dialed Class members' cellular telephone

numbers using an "automatic telephone dialing system" or employing a "prerecorded or artificial voice," within the meaning of 47 U.S.C. § 227(b)(1)(A), and without their "prior express consent" violated TCPA Section 227(b)(1)(A)(iii).

153.   Defendants made or caused to be made the telephone calls to Plaintiffs and members of the National Grid Agent-Dialed Class using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers.

154.   With respect to Plaintiff Jenkins, debt collector NCOF called Plaintiff Jenkins' cellular telephone number, while serving as Defendants' agent, using an automatic telephone dialing system or employing a prerecorded or artificial voice many times on behalf of Defendants, including on or about the following dates during the Class Periods:  March 7, 2001, March 8, 2011, March 9, 2011, March 10, 2011 March 11, 2011 March 12, 2011, March 30, 2011 (twice), April 8, 2011 (three times), April 12, 2011 (twice), April 20, 2011 (six times), April 29, 2011 (twice), June 22, 2011 (twice), June 28, 2011 (twice), July 5, 2011, July 15, 2011 (twice), July 21, 2011 (twice), July 25, 2011 (twice), August 19, 2011, August 24, 2011, August 30, 2011 (twice), September 9, 2011 (twice), September 12, 2011 (twice), September 13, 2011 and September 16, 2011.  *See* Exhibits 3 and 4 annexed hereto.

155.   With respect to Plaintiff Royal, debt collector Mercantile called Plaintiff Royal's cellular telephone number, while serving as Defendants' agent, using an automatic telephone dialing system or employing a prerecorded or artificial voice.

156.   With respect to Plaintiff Ewan, debt collectors NRA, CPA, NCO, and/or TSI called Plaintiff Ewan's cellular telephone numbers, while serving as Defendants' agent, using an automatic telephone dialing system or employing a pre-recorded or artificial voice, as alleged

in paragraphs 100, 107 – 109 above.

157.    With respect to Plaintiff Whyte, debt collector CPA called Plaintiff Whyte's cellular telephone number, while serving as Defendants' agent, using an automatic telephone dialing system or employing a pre-recorded or artificial voice, as alleged in paragraphs 113 – 114 above.

158.    Plaintiffs and the National Grid Agent-Dialed Class are entitled to an award of statutory damages of $500.00 for each call made by Defendants' agents in violation of Section 227(b)(1)(A)(iii), pursuant to 47 U.S.C. §227(b)(3)(B).

159.    Defendants' and their agents' violations of TCPA Section 227(b)(1)(A)(iii) were willful and/or knowing.  As a result, Plaintiffs and the National Grid Debt Collector-Dialed Class are entitled to treble damages of up to $1,500.00 for each call in violation of the statute, pursuant to 47 U.S.C. §227(b)(3).

160.    Plaintiffs and the National Grid Agent-Dialed Class are also entitled to an award of attorneys' fees and costs on an equitable basis to be paid through a "common fund," or similar theory.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants, individually, and jointly and severally, as follows:

A.    An order certifying this case as a class action under FED. R. CIV. P. 23(a), (b)(2) and (b)(3), establishing any appropriate Classes the Court deems appropriate, and appointing Plaintiffs and their counsel to represent the Classes;

B.    An order declaring Defendants' acts and practices constitute violations of the TCPA;

C.      An order declaring Defendants' agents acts and practices constitute violations of the TCPA, resulting in the vicarious and joint liability of Defendants;

D.      Statutory damages pursuant to the TCPA of $500.00 for each call that violated the TCPA, and up to $1,500.00 for each of Defendants' or their agents' willful and/or knowing violations of the TCPA, as provided by statute;

E.      A permanent injunction to enjoin Defendants' and their agents' violations of the TCPA; and

F.      Reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury to the extent authorized by law.

DATED: August 29, 2018                     Respectfully submitted,

**TUSA P.C.**

/s/ John T. Nicolaou
**LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP**
Jonathan D. Selbin
Douglas I. Cuthbertson
John T. Nicolaou
Avery S. Halfon
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel.  (212) 355-9500
Email:  jselbin@lchb.com
Email:  dcuthbertson@lchb.com
Email:  jnicolaou@lchb.com
Email:  ahalfon@lchb.com

**LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP**
Daniel M. Hutchinson (*pro hac vice*)
275 Battery Street, 29th Floor

44

San Francisco, CA  94111-3339
Tel.  (415) 956-1000
Email:  dhutchinson@lchb.com

Joseph S. Tusa
P.O. Box 566
Southold, NY  11971
Tel. (631) 407-5100
Email:  joseph.tusapc@gmail.com

– and –

150 Motor Parkway, Ste. 401
Hauppauge, NY 11788
Tel. (631) 407-5100


*Attorneys for Plaintiffs*
*and proposed Class Counsel*