## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JARRETT JENKINS, EMMOT STEELE, FRANCES ROYAL, DANAI EWAN, and CHARMAINE WHYTE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>NATIONAL GRID USA SERVICE COMPANY, INC., KEYSPAN GAS EAST CORPORATION, NIAGARA MOHAWK POWER CORPORATION, and THE BROOKLYN UNION GAS COMPANY,<br><br>Defendants. | INDEX NO.  15-cv-1219<br>Hon. Joanna Seybert, U.S.D.J.<br>Hon. Gary R. Brown, U.S.M.J. |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR CLASS CERTIFICATION

**TUSA P.C.**
Joseph S. Tusa
P.O. Box 566
Southold, NY  11971
Tel. (631) 407-5100

**LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP**
Jonathan D. Selbin
Douglas I. Cuthbertson
John T. Nicolaou
Avery S. Halfon
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel.  (212) 355-9500

Daniel M. Hutchinson (*pro hac vice*)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel.  (415) 956-1000

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   THE PROPOSED CLASSES ................................................................................2

III.  RELEVANT FACTS .............................................................................................3

    A.    Background of the Telephone Consumer Protection Act..............................3

    B.    A single Defendant—ServCo—is responsible for collections robo-calling for the National Grid companies and their Collection Agencies.........................5

        1.    ServCo used common policies and practices for all first-party robo-calling. ..................................................................................................5

        2.    ServCo oversees all collections robo-calls made by Defendants' Third-Party Collection Agencies through uniform agreements and practices........................................................................................................6

    C.    ███████████████████████████████████████ ..............................7

        1.    ServCo failed to stop making collections robo-calls to cellular phone numbers even after being told to stop calling.......................................8

        2.    ServCo failed to prevent robo-calls to skip-traced phone numbers.............. 10

        3.    ████████████████████████████████████ .............. 10

    D.    The cellular telephone numbers called by ServCo and its Collection Agencies can be reliably determined from their electronic records. ........................... 11

IV.   PLAINTIFFS SATISFY ALL PREREQUISITES FOR CLASS CERTIFICATION. ....... 12

    A.    Numerosity is satisfied; there are thousands of Class members.................................. 14

    B.    There is at least one issue common to all members of the Classes............................. 14

    C.    The proposed Class representatives' claims are typical.................................................. 15

    D.    The proposed representatives and counsel adequately represent the Classes. .......... 17

    E.    Common issues predominate classwide.......................................................................... 18

        1.    Class members' TCPA claims require common, objective methods of identifying collections robo-calls made to cellular telephones. ..................... 19

        2.    The Stop Calling Class's TCPA Claims require common, objective methods of identifying Stop Calling Requests.................................................... 20

        3.    Defendants' liability for its Collection Agencies will be resolved through common proof. ................................................................................... 21

        4.    Knowing and/or willful TCPA violations will be resolved through proof common to all Class members................................................................. 21

**TABLE OF CONTENTS**
**(continued)**

**Page**

5.  The TCPA statutory damages remedy eliminates individual damage determinations. ................................................................................................... 22

6.  Defendants' affirmative defenses to class certification present classwide defenses appropriate for class resolution. ...................................... 22

F.  A class action is superior to other methods of adjudication. ..................................... 24

G.  The Classes are ascertainable because they are objectively defined. .......................... 25

V.  CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.,*
No. 15-CV-6314-YGR, 2017 WL 1806583 (N.D. Cal. May 5, 2017)....................................20, 21, 23

*Abdeljalil v. Gen. Elec. Capital Corp.,*
306 F.R.D. 303 (S.D. Cal. 2015)............................................................................................................13

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)....................................................................................................................1, 12, 18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
133 S. Ct. 1184 (2013)....................................................................................................2, 13, 18, 23

*Birchmeier v. Caribbean Cruise Line, Inc.,*
302 F.R.D. 240 (N.D. Ill. 2014)............................................................................................................20

*Bridging Comtys. Inc. v. Top Flite Fin. Inc.,*
843 F.3d 1119 (6th Cir. 2016)............................................................................................................23

*Brown v. DirecTV, LLC,*
330 F.R.D. 260 (C.D. Cal. 2019) ...................................................................................................passim

*Caldera v. Am. Med. Collection Agency,*
320 F.R.D. 513 (C.D. Cal. 2017)....................................................................................................13, 24

*Clough v. Revenue Frontier, LLC,*
Case No. 17-cv-411-PB, 2019 WL 2527300 (D.N.H. June 19, 2019) ................................................22

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995) ..................................................................................................................14

*Cordoba v. DIRECTV, LLC,*
320 F.R.D. 582 (N.D. Ga. 2017)....................................................................................................12, 21

*Currier v. PDL Recovery Grp., LLC,*
No. 14-cv-12179, 2017 WL 712887 (E.D. Mich. Feb. 23, 2017) ..........................................................4

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006) ................................................................................................................17

*Duran v. La Boom Disco, Inc.,*
369 F. Supp. 3d 476 (E.D.N.Y. 2019)..................................................................................................19

*Echevvaria v. Diversified Consultants, Inc.,*
No. 13 CIV. 4980 LAK AJP, 2014 WL 929275 (S.D.N.Y. Feb. 28, 2014) ......................................16

*Harris v. World Fin. Network Nat'l Bank,*
867 F. Supp. 2d 888 (E.D. Mich. 2012) ................................................................................................4

*Harte v. Ocwen Fin. Corp.,*
No. 13-CV-5410, 2018 WL 1830811 (E.D.N.Y. Feb. 8, 2018) ............................................................25

*Hasemann v. Gerber Prod. Co.,*
No. 15-CV-2995, 2019 WL 1434263 (E.D.N.Y. Mar. 31, 2019)..................................................18, 25

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Henderson v. United Student Aid Funds, Inc.,*
918 F.3d 1068 (9th Cir. 2019) .................................................................................... 4, 10

*Holtzman v. Turza,*
728 F.3d 682 (7th Cir. 2013) ............................................................................... 1, 12, 22

*Ikuseghan v. MultiCare Health Sys.,*
No. C14-5539, 2015 WL 4600818 (W.D. Wash. July 29, 2015) ..................................... 13

*In re Cablevision Consumer Litig.,*
No. 10-CV-4992 JS AKT, 2014 WL 1330546  (E.D.N.Y. Mar. 31, 2014) ................... 14, 15, 18, 24

*In re IndyMac Mortg.-Backed Sec. Litig.,*
286 F.R.D. 226 (S.D.N.Y. 2012) .................................................................................. 18

*In re Petrobras Sec. Litig.,*
862 F.3d 250 (2d Cir. 2017) ................................................................................... 13, 25

*In re Playmobil Antitrust Litig.,*
35 F. Supp. 2d 231 (E.D.N.Y. 1998) ............................................................................ 14

*In re U.S. Foodservice Inc. Pricing Litig.,*
729 F.3d 108 (2d Cir. 2013) ............................................................................. 18, 23, 24

*Jenkins v. Nat'l Grid USA,*
Dkt. 222, No. 15-CV-1219(JS)(GRB), 2017 WL 1208445 (E.D.N.Y. Mar. 31, 2017) ....................... 4

*Jiminez v. Credit One Bank, N.A.,*
377 F. Supp. 3d 324 (S.D.N.Y. 2019) ........................................................................... 19

*Johnson v. Navient Sols., Inc.,*
315 F.R.D. 501 (S.D. Ind. 2016) .................................................................................. 13

*Keim v. ADF MidAtl., Ltd. Liab. Co.,*
328 F.R.D. 668 (S.D. Fla. 2018) .................................................................................. 24

*Kindle v. Dejana,*
315 F.R.D. 7 (E.D.N.Y. 2016) ..................................................................................... 14

*Knapper v. Cox Commc'ns, Inc.,*
329 F.R.D. 238 (D. Ariz. 2019) ............................................................................ 12, 15, 20

*Krady v. Eleven Salon Spa,*
No. 16-CV-5999, 2017 WL 6541443 (E.D.N.Y. July 28, 2017) ................................... 4, 23

*Krakauer v. Dish Network L.L.C.,*
311 F.R.D. 384 (M.D.N.C. 2015) ................................................................................ 21

*Krakauer v. Dish Network, L.L.C.,*
925 F.3d 643 (4th Cir. 2019) ........................................................................... 2, 12, 19, 21

*Kristensen v. Credit Payment Servs.,*
12 F. Supp. 3d 1292 (D. Nev. 2014) ............................................................................. 24

*Kron v. Grand Bahama Cruise Line, LLC,*
328 F.R.D. 694 (S.D. Fla. 2018) ........................................................................... 15, 17, 20

## TABLE OF AUTHORITIES
### (continued)

Page

*Latner v. Mount Sinai Health Sys., Inc.*,
879 F.3d 52 (2d Cir. 2018), as amended (Jan. 9, 2018) .................................................... 4, 22

*Lavigne v. First Cmty. Bancshares, Inc.*,
No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) ............................ 13, 17, 20

*Makaron v. Enagic USA, Inc.*,
324 F.R.D. 228 (C.D. Cal. 2018) ...........................................................................................21

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
289 F.R.D. 674 (S.D. Fla. 2013) ...................................................................................13, 23, 24

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) .................................................................................................14

*Marshall v. Deutsche Post DHL*,
No. 13-CV-1471 RJD JO, 2015 WL 5560541 (E.D.N.Y. Sept. 21, 2015).........................15

*McMillion v. Rash Curtis & Assocs.*,
No. 16-CV-03396, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) .................................. 13, 16, 22, 24

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012).............................................................................................24

*Mims v. Arrow Fin. Servs., LLC*,
565 U.S. 368 (2012).................................................................................................................3

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
134 S. Ct. 736 (2014).............................................................................................................12

*Mitchem v. Ill. Collection Serv.*,
271 F.R.D. 617 (N.D. Ill. 2011) ...........................................................................................13

*Munday v. Navy Fed. Credit Union*,
No. 8:15-cv-01629-JLS, 2016 WL 7655807 (C.D. Cal. Sept. 15, 2016)............................13

*Omar v. 1 Front St. Grimaldi, Inc.*,
No. 16-CV-5824, 2019 WL 1322614 (E.D.N.Y. Jan. 8, 2019) ............................................17

*Reyes v. BCA Fin. Servs., Inc.*,
No. 16-24077-CIV, 2018 WL 3145807 (S.D. Fla. June 26, 2018)..................................12, 13

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015) .................................................................................................13

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) .................................................................................................15

*Ruffrano v. HSBC Fin. Corp.*,
No. 15CV958A, 2017 U.S. Dist. LEXIS 132674 (W.D.N.Y. Aug. 17, 2017) .......................4

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
821 F.3d 992 (8th Cir. 2016) ............................................................................................ 1, 12

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
659 F.3d 234 (2d Cir. 2011) .................................................................................................15

**TABLE OF AUTHORITIES**
(continued)

Page

*Sosna v. Iowa,*
419 U.S. 393 (1975).........................................................................................................17

*Stemple v. QC Holdings, Inc.,*
No. 12-CV-01997-BAS WVG, 2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) ....................13

*Sykes v. Mel S. Harris & Assocs. LLC,*
780 F.3d 70 (2d Cir. 2015) ..............................................................................................18

*Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd.,*
679 F. Supp. 2d 894 (N.D. Ill. 2010) ..............................................................................22

*Toney v. Quality Res., Inc.,*
323 F.R.D. 567 (N.D. Ill. 2018) ......................................................................................23

*Tyson Foods, Inc. v. Bouaphakeo,*
136 S. Ct. 1036 (2016).....................................................................................................23

*Wal–Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011).....................................................................................................14

*West v. Cal. Servs. Bureau, Inc.,*
323 F.R.D. 295 (N.D. Cal. 2017) ..............................................................................13, 20

*Whitaker v. Bennett Law, PLLC,*
No. 13-CV-3145-L NLS, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014)............................13

Zyburo v. NCSPlus, Inc.,
44 F. Supp. 3d 500 (S.D.N.Y. 2014) .........................................................................passim

**Statutes**
47 U.S.C. § 227 ..........................................................................................................1, 4

**Other Authorities**
105 Stat. 2394 at § 12.........................................................................................................3

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
27 FCC Rcd. 15391 (2012)...............................................................................................19

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
23 F.C.C. Rcd. 559 (2008) ..........................................................................................4, 19

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
18 FCC Rcd. 14,014 (2003)..............................................................................................19

Plaintiffs Jarrett Jenkins, Emmot Steele, Frances Royal, Danai Ewan, and Charmaine Whyte (collectively "Plaintiffs"), by and through their counsel, respectfully submit this *Memorandum of Law*, the Declarations of Joseph S. Tusa ("Tusa Decl."), Douglas I. Cuthbertson ("Cuthbertson Decl."), John T. Nicolaou ("JTN Decl."), and the Expert Report of Anya Verkhovskaya (JTN Decl., Ex. 63) in support of Plaintiffs' Motion for Class Certification.

## I.   INTRODUCTION

This is a class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), which prohibits unauthorized robo-calls[1] to cellular telephones.  The proposed Classes consist of call recipients identified in Defendants' and their agents' own records as receiving prerecorded and ATDS calls – including persons whose phone numbers were obtained from a "skip-trace" (i.e. from sources other than the subscriber or user of a phone number) or others who asked not to be called.

This case is well-suited for class treatment.  Indeed, "[c]lass certification is normal in litigation under [the TCPA]," *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (quoting *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)), and the class certification requirements are "readily met" in consumer cases where, as here, common questions center upon defendants' course of conduct.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Thus, in similar TCPA debt collection cases, courts often certify classes.  *See infra*, ftnt. 5.

This case epitomizes those holdings.  It involves consumer claims under a single federal statute, the TCPA, based upon tens of millions of debt collection robo-calls caused by a single entity—defendant National Grid USA Service Company, Inc. ("ServCo")—to an identifiable group of at least 2 million cellular telephones.  Those claims arise from, and turn on, Defendants' common

---

[1] For the purposes of Plaintiffs' motion for class certification, "robo-call" means a telephone call involving the use of (1) a prerecorded or artificial voice message; or (2) a dialing system (a) operating in predictive dialing mode or (b) that automatically dials telephone numbers from a stored list without human intervention after a calling campaign is initiated.

policies and practices, policies and practices that do not meaningfully vary between Class members. Certification of the proposed Classes would further Rule 23's goals of efficiency and fairness, and conserve the Court's and the parties' resources by economically resolving common issues that affect every Class member. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1201 (2013).

ServCo and its Collection Agencies made over 50 million collections robo-calls to cellular telephone numbers since March 2011, over 1.9 million of which were made after being told not to call (including to Plaintiff Steele). The evidence further demonstrates that ServCo's Collection Agencies made hundreds of thousands of robo-calls to skip-traced cellular telephones (including to Plaintiff Ewan). ServCo and its Collection Agencies also made dozens of robo-calls to Plaintiffs Jenkins, Royal, and Whyte in violation of the TCPA, and millions more to similarly-situated consumers. A certified class of consumers who received harassing robo-calls caused by ServCo and its co-Defendants is the only way to ensure that they comply with the TCPA and compensate call recipients who "suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650, 663 (4th Cir. 2019). For these reasons and as further explained below, Plaintiffs respectfully seek certification of three Classes under Rule 23(b)(3).

## II.   THE PROPOSED CLASSES

Plaintiffs move to certify the following three classes:

**Skip-Tracing Class**
Subscribers or users of a cellular telephone number that was robo-called by any of Defendants' Third-Party Debt Collection Agencies for the purpose of collecting an alleged debt on a National Grid Utility Account,[2] where the telephone number was not provided to the calling Third-Party Debt Collection Agency(ies) by ServCo or any other Defendant.

**Stop Calling Class**
Subscribers or users of a cellular telephone number that was robo-called by ServCo, any other Defendant, or any of Defendants' Debt Collection Agencies for the purpose of collecting an alleged debt on a National Grid Utility Account after the date when ServCo's

---

[2] "National Grid Utility Account" refers to any account currently or previously stored on ServCo's billing systems: (i) CAS, (ii) CSS, or (iii) CRIS.

or its Debt Collection Agency(ies)' records indicate by code, do-not-call list, or written communication that the telephone number should not be called again (a "Stop Calling Request").  Any user or subscriber of a cellular telephone number shall be excluded from the Stop Calling Class if Defendants identify an audio file, record of a website submission, and/or paper application showing that the cellular telephone number called was provided by an account holder to Defendants or their Debt Collection Agency(ies) after the Stop Calling Request but before any robo-calls.

**Robo-Call Class**
Subscribers or users of a cellular telephone number that was robo-called by ServCo, any other Defendant, or any of Defendants' Debt Collectors to collect an alleged debt on a National Grid Utility Account.  Any user or subscriber of a cellular telephone number shall be excluded from the Robo-Call Class if Defendants identify an audio file, record of a website submission, and/or paper application showing that the cellular telephone number called was provided by an account holder to Defendants or their Debt Collection Agency(ies) before any robo-calls.

The Skip-Tracing Class, Stop Calling Class and Robo-Call Class (collectively, the "Classes") further exclude (1) Defendants' officers, directors, employees, and agents as well as any outside counsel in this litigation; (2) any judge to whom this case is assigned, along with his or her staff, and (3) immediate family of any individual excluded by (1) or (2).  The Class Period for each Class runs from March 9, 2011, four years prior to the filing of this action, until the Class(es) are certified.  To the extent the same telephone call to any Class member is certified in more than one Class, the Classes seek to recover for that call only once.

Plaintiff Ewan is designated as the proposed representative for the Skip-Tracing Class.  Plaintiff Steele is designated as the proposed representative for the Stop Calling Class.  All Plaintiffs are designated as proposed representatives for the Robo-Call Class.

## III.    RELEVANT FACTS

### A.    Background of the Telephone Consumer Protection Act

Congress enacted the TCPA to prevent robo-calls to consumers' cellular telephones, which are a "nuisance" and "an invasion of privacy."  *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371-72, (2012) (quoting 105 Stat. 2394 at § 10).  Reflecting a determination that "automated or prerecorded calls" should be "ban[ned]" when not explicitly authorized by the consumer (105 Stat. 2394 at § 12),

the TPCA prohibits these types of robo-calls to cellular telephones.  *See* 47 U.S.C. § 227(b) (excepting calls "made for emergency purposes" or with "prior express consent" of the called party).

Under the TCPA, calling parties bear the burden of proof on whether they have prior express consent to robo-call particular cellular telephone numbers, and must supply sufficient record evidence of the same.  *See Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2d Cir. 2018); *Krady v. Eleven Salon Spa*, No. 16-CV-5999, 2017 WL 6541443, at *2 n. 3 (E.D.N.Y. July 28, 2017) (same); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 23 F.C.C. Rcd. 559, 565 (2008) (creditors responsible for proving prior express consent because they "are in the best position to have records kept in the usual course of business showing such consent.").  Call recipients do not explicitly authorize robo-calls when the calling party obtains their phone number from "skip-tracing" services that sell phone numbers to creditors.  *See Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 & n.1 (9th Cir. 2019).  Even when prior express consent is provided, consumers can revoke consent, "using any reasonable method including orally or in writing." *Ruffrano v. HSBC Fin. Corp.*, No. 15CV958A, 2017 U.S. Dist. LEXIS 132674, at *44 (W.D.N.Y. Aug. 17, 2017) (citation to FCC Order omitted).  Common methods of revocation include requesting that calls stop or telling a calling party it called the wrong number.  *See Currier v. PDL Recovery Grp.*, LLC, No. 14-cv-12179, 2017 WL 712887, at *10 (E.D. Mich. Feb. 23, 2017) (summary judgment for plaintiff who made a do-not-call request); *Harris v. World Fin. Network Nat'l Bank*, 867 F. Supp. 2d 888, 897 (E.D. Mich. 2012) (summary judgment for "wrong number" plaintiff).

Victims of TCPA violations can recover a statutory remedy of $500 per call, which can be trebled for willful or knowing violations.  *See* 47 U.S.C. § 227(c)(5).  Creditors are liable under the TCPA for their own and their agents' robo-calls.  *See Jenkins v. Nat'l Grid USA*, Dkt. 222, No. 15-CV-1219(JS)(GRB), 2017 WL 1208445, at *7 (E.D.N.Y. Mar. 31, 2017) ("It is well established that companies can be vicariously liable for violations of the TCPA.") (citations omitted).

**B.     A single Defendant—ServCo—is responsible for collections robo-calling for the National Grid companies and their Collection Agencies.**

Plaintiffs and the proposed Classes seek damages from Defendants for two basic types of robo-calls: (1) robo-calls by parties identifying themselves as "National Grid" (*i.e.,* "first-party" robo-calling) and (2) robo-calls from parties identifying themselves as National Grid's debt collectors (*i.e.,* "third-party" robo-calling).  ServCo controlled both types of robo-calling.

**1.     ServCo used common policies and practices for all first-party robo-calling.**

ServCo's Acting Director of Credit and Collections admitted under oath that ServCo personnel are "responsible for outbound calling" for "all operating companies of National Grid in the US," presently comprising utilities in New York, Massachusetts, and Rhode Island.  JTN Decl., Ex. 4 (Hillery Dep. Tr.) at 7:8-25, 13:17–15:18); *see id.* §§ II.A–II.E.

Many of these first-party robo-calls were made directly by ServCo through its Davox Dialer in Brooklyn, New York and the cloud-based Global Connect Dialer.[3]  *See id.* §§ II.C, II.D.

For other first-party robo-calls, ServCo hired First-Party Collection Agencies Nationwide Credit, Inc. ("NCI") and iQor USA Inc. ("iQor") to make many millions of robo-calls in New York and New England, during which NCI and iQor identified themselves as "National Grid."  *See id.* ¶ 11.  *See id.* §§ II.E, III.A–III.D. .  *See id.* ¶¶ 13.d, 13.e.  NCI admitted: "We worked as an agent of National Grid, and so we worked these accounts according to the guidelines provided by National Grid."  *Id.*, Ex. 13 (NCI Dep. Tr.) at 210:24–211:1.

---

[3] Until December 2013, ServCo also operated a Melita dialer from its Long Island call center for collections robo-calling. The Court has ruled that class treatment for robo-calls made using the Melita dialer will be considered after the instant motion is decided.  JTN Decl., Ex. 8 (7/10/19 H'rg Tr.) at 35:25–37:22.

iQor, too, admitted it "compl[ies] with the instructions we get from National Grid and if they're unclear we can ask them about it." *Id.*, Ex. 15 (iQor Dep. Tr.) at 30:15–31:10.

The robo-calling process established by ServCo for ServCo-staffed and NCI/iQor call centers is the same. ██████████████████████████████████████████ ██████████████████████████████████████ *See id.* § III.B. ████████ ████████████████████████████████, *id.* § III.C; (2) automatically dialed the numbers without human intervention, either in "predictive" mode or agentless "blast" mode, *id.* § III.D; and (3) played similar prerecorded messages on answering machines or to live call recipients, *id.* § III.A. Put simply, ServCo unilaterally executes a uniform course of conduct for all first-party collections robo-calling that does not meaningfully vary by dialer, calling agent, Class member, or the service region of the National Grid Utility Account.

**2.**    **ServCo oversees all collections robo-calls made by Defendants' Third-Party Collection Agencies through uniform agreements and practices.**

██████████████████████████████████████████████████████ ████████████████████████████████████████. Tusa Decl., §I, ¶ 12. ██████████████████████████████████████████████████. *Id.* ████████████████████. *Id.* ██████████████████████████████████████████████ ████████████████████ *See id.* ¶¶ 13, 27 & Ex. E. (*Scope of Work* at § 1.6.2). ████████████████████████████████████████████. *Id.* at 13; *see also* Tusa Decl., Ex. D, (Defs. 30(b)(6) (Waterfield) Dep. Tr.) at 93:9-13.

██████████████████████████████████████████████████████ ████████████████████████████████. *Id.* ¶ 14 & Ex. H



(7/12/18 Defs. 30(b)(6) (Frodelius) Dep. Tr.) at 48:11–50:22). ██████████████

███████████████████████████████████████████████████████████████

████████. *Id.* ¶ 14. ████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████ *Id.* § I.B. ██████████████████████████████████████

████████████ *Id.* § I.A. ██████████████████████████████████████

███████████████████████████. *Id.* ¶ 47.

████████████████████████████████████████████████████

████████████████████████████████. *Id.* ¶¶ 21-26. ████████

███████████████████████████████████████████████████████

████████████. *See id.*, Ex. D (Defs. 30(b)(6) (Waterfield) Dep. Tr.) at 13:3–15:6, 152:25–153:8.

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. *See id.* ¶ 24 & Ex.

E (*Collection Agency Agreement* at §§ 7.2, 7.3, 16.3 & *Scope of Work* §§ 3.12, 3.13.3, 3.18.1).  A ServCo

Senior Vice President admitted to the Rhode Island Utilities Commission: "the Company agrees that

it is ultimately responsible for the actions of its outside collection agencies in terms of interaction

with customers. . . . If the Company receives complaints from customers, the Company addresses

these directly with the agency."  *Id.*, Ex. K.

**C.**     ████████████████████████████████████████████████████
████████████████████████████████████████

Despite making many millions of collections robo-calls each year and directing its Collection

Agencies to make many more, ServCo failed to ████████████████████████████████

████████ resulting in tens of millions of illegal calls. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████



███ ███████████████████████████████████████████████████

████████████████████████████████ *Id.*, Ex. 51 (Gans Dep. Tr.) at 41:7-12. █████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████ *Id.*, Ex. 22 (3/9/17

Defs. 30(b)(6) (Wellington) Dep. Tr.) at 228:19–229:19.

ServCo's disregard for the TCPA extended to oversight of its Collection Agencies. █████

██████████████████████████████████████████████████████

██████████████. Tusa Decl. ¶ 40. ██████████████████████

████████████████████████████████████████████

███████████████████████████████. *Id.*, Ex. D (Defs. 30(b)(6) (Waterfield) Dep. Tr.) at 84:5–

85:10. ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████. *Id.* at 179:8-24; Tusa Decl. ¶ 42.

███████████████████████████████████████████████

██████████ *Id.*, Ex. P (NRA (Kusic) Dep. Tr.) at 219:7–220:19.

1.      **ServCo failed to stop making collections robo-calls to cellular phone numbers even after being told to stop calling.**

ServCo and its Collection Agencies admit they should stop robo-calling whenever a call

recipient tells them to stop or that a wrong number has been reached.  *See* JTN Decl., Ex. 20

(11/30/18 Defs. 30(b)(6) (Frodelius) Dep. Tr.) at 25:16-21 ███████████████████

███████████████████████████████████████████

█████████████████████████████ *accord, e.g.*, Tusa Decl., Ex. BB (TSI

(Podbutzky) Dep. Tr.) at 133:22–137:4 ("Q. . . . If someone says you're calling the wrong number,

TSI will change the phone flag in the same manner as it would for a do-not-call request?  Do I have

that part right? A. Correct.”). ██████████████████████████████

████████████████████████████████████

████████████████████████████████████████

*See* JTN Decl. ¶ 33. ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████. *See id.* ¶ 34 (collecting examples). ████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████ *See id.* ¶ 35.

█████████████████████████████████

████████████████████████████████████████

████████████████████████ (*Id.* ¶ 38) █████████████████████

███████████████████████████████████

██████████████████. *Id.* ¶ 39. █████████

██████████████████████████████████ (*Id.*, Ex. 20 (11/30/18 Defs.

30(b)(6) (Frodelius) Dep. Tr.) at 180:18-24), ████████████████████████

██████████████████████████████. *See id.* § IV.E.

███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████. *See* Tusa Decl. ¶ 36.

Plaintiff Steele is one victim of ServCo's Stop-Calling policy failures.  After sending

Defendants a June 7, 2015 certified letter identifying his cellular telephone number and asking the

calls to stop, he received additional robo-calls from ServCo, NCI, and Third-Party Collection Agency NRA.  These calls took place in June and December 2015 and again in November 2016, 16 months after Steele sued ServCo.  *See* JTN Decl., ¶¶ 34.a, 42; Tusa Decl., ¶¶ 37, 38.

      **2.**      **ServCo failed to prevent robo-calls to skip-traced phone numbers.**



*See* JTN Decl., § IV.B.  Robo-calling skip-traced numbers necessarily violates the TCPA because there is no prior express consent to call phone numbers obtained from a third party. *Henderson*, 918 F.3d at 1072 & n.1.

*See* JTN Decl., ¶ 31.

*See id.*, Ex. 5 (7/12/18 Defs. 30(b)(6) (Frodelius) Dep. Tr.) at 296:13–297:16

      **3.**

Until 2016, NCI made millions of first-party collections robo-calls for ServCo.

. *See* JTN Decl., Ex. 13 (NCI Dep. Tr.) at 11:4-12, 222:11-230:17.

*Id.* at 227:7-12

███████████████████████████████████████████████████

██████████████████████████████████████████████████ *See*

*id.* at 19:7-22:17.  After NCI stopped making collections robo-calls, only ServCo and iQor made first-party collections robo-calls targeting National Grid Utility Accounts.

### D.   The cellular telephone numbers called by ServCo and its Collection Agencies can be reliably determined from their electronic records.

ServCo and its Debt Collections Agencies have produced voluminous electronic records reflecting, *inter alia*, when robo-calls were made to collect debts on National Grid Utility Accounts and the telephone numbers dialed.  These records were produced as structured data that can be systemically analyzed and tabulated in a database.  *See* JTN Decl., Ex. 63 (Verkhovskaya Rep.) ¶¶ 46–48.  Plaintiffs' Counsel has retained expert witness Anya Verkhovskaya to analyze these records.  Ms. Verkhovskaya has served as an expert witness in dozens of TCPA cases and survived multiple challenges to her qualifications by TCPA defendants.  *See id.* ¶¶ 1–11, 19–31.

Using methods she has previously applied successfully in other TCPA cases, Ms. Verkhovskaya has analyzed productions of structured call data from 10 call centers making collections robo-calls by or for ServCo.[4]  Using those productions, standard methods of data analysis, and reasonable assumptions grounded in the evidence, she determined that ServCo and its Collection Agencies made (a) **53,992,877** collections robo-calls to **2,085,392** cellular telephone numbers during the Class Period (*id.* ¶ 43, Table 3 (p. 78)), and (b) **1,926,652** collections robo-calls to **88,266** cellular telephones that made a prior Stop Calling Request (*id.* ¶ 285).

---

[4] The data analyzed includes data reflecting calls made by ServCo through its Global Connect and Davox Dialers, calls made by First Party Collection Agencies NCI and iQor, and calls made by Third-Party Collection Agencies CPA, SBS, NRA, ICS, and EOS.  This data is only a sample of the relevant data because it excludes records of calls made to collect debts relating to Massachusetts or Rhode Island accounts, does not include records for the entire class period, and does not include records of other Third-Party Collection Agencies.  *See id.* ¶¶ 39–41.  The same basic methods can be applied to a complete production of records after class certification.  *See id.* ¶¶ 39–41.

She also analyzed a sample set of data reflecting the phone numbers that ServCo sent to Third-Party Collection Agency CPA to determine that CPA made **273,544** collections robo-calls to **33,455** cellular telephone numbers that were not provided by ServCo to CPA.  *Id.* ¶ 295.  After class certification, the same type of analysis can be performed on other similar data sets presently withheld by Defendants and their Agencies to identify the cellular telephone numbers robo-called by Third-Party Collection Agencies, but that were not provided to them by ServCo.  *See id.* ¶ 296.

## IV.  PLAINTIFFS SATISFY ALL PREREQUISTIES FOR CLASS CERTIFICATION.

Class certification is proper if Plaintiffs satisfy the requirements of Rule 23(a) and one of the prongs of Rule 23(b).  Rule 23 allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there is none.  "Class actions are important and valuable part of the legal system.*" Mississippi ex rel. Hood v. AU Optronics Corp.,* 134 S. Ct. 736, 739 (2014) (citation omitted); Wright, et al., 7A Fed. Practice & Proc. § 1751 (3d ed. 2010).

ServCo's standardized collections robo-calls and classwide TCPA compliance failures present the kind of TCPA claims routinely certified as consumer class actions in similar circumstances.  *Amchem*, 521 U.S. at 625.  This is because "the advantages of class resolution follow directly from the statute [which] creates a simple scheme for determining if a violation occurred, whether a defense is available, and what the damages ought to be." *Krakauer*, 925 F.3d at 659, 663 (TCPA claims are "amenable to class action resolution.").  For that reason, "[c]lass certification is normal in litigation under [the TCPA]." *Holtzman*, 728 F.3d at 684; *accord Sandusky Wellness Ctr., LLC*, 821 F.3d at 998 (same); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV, 2018 WL 3145807, at *18 (S.D. Fla. June 26, 2018); *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582, 602 (N.D. Ga. 2017) (same).  This is particularly true in TCPA debt collection class actions similar to this case.[5]

---

[5] *See Brown v. DirecTV, LLC*, 330 F.R.D. 260, 275 (C.D. Cal. 2019) (certifying class of consumers who received debt collection calls from DIRECTV and its agent debt collectors), Rule 23(f) petition denied, No. 19-80045, Dkt. 8 (9th Cir. June 3, 2019); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 247 (D. Ariz. 2019); (certifying TCPA class of non-

*Footnote continued on next page*

Where, as here, plaintiffs seek class certification under Fed R. Civ. P. 23(a) and (b)(3) for

money damages, seven factors are relevant:

1.  Numerosity.  Class certification is appropriate when is impractical to join all potential claimants in one litigation.  Fed. R. Civ. P. 23(a)(1);

2.  Commonality.  At least one legal or factual question must be common to every member of the class.  Fed. R. Civ. P. 23(a)(2);

3.  Typicality.  The named plaintiffs must have the same type of claim as other class members.  Fed. R. Civ. P. 23(a)(3);

4.  Adequacy.  The named plaintiffs and their counsel must represent the interests of absent class members.  Fed. R. Civ. P. 23(a)(4);

5.  Predominance.  Legal and factual issues that can be resolved on a classwide basis must be more important than those that could only be resolved on an individual basis.  Fed. R. Civ. P. 23(b)(3);

6.  Superiority.  A class action must be superior to many individual lawsuits.  Fed. R. Civ. P. 23(b)(3); and

7.  Ascertainability.  This is a "modest threshold" requirement that classes must "be defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobras Sec. Litig.*, 862 F.3d 250, 264 (2d Cir. 2017).

*See Amgen Inc.*, 133 S. Ct. at 1191; *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  These

requirements "should be 'given liberal rather than restrictive construction. . . . '"  *In re Cablevision*

---

*Footnote continued from previous page*

customers who received debt collection calls); *Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457, at *9 (D.N.M. June 5, 2018) (certifying wrong number TCPA debt collection class); *Reyes*, 2018 WL 3145807, at *18 (certifying TCPA class of wrong number debt collection calls); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 307 (N.D. Cal. 2017) (certifying "wrong number" debt collection TCPA class); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396, 2017 WL 3895764, at *10 (N.D. Cal. Sept. 6, 2017) (certifying "non-debtor" and skip-tracing TCPA classes); *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 520 (C.D. Cal. 2017) (certifying TCPA debt collection skip trace class); *Munday v. Navy Fed. Credit Union*, No. 8:15-cv-01629-JLS, 2016 WL 7655807, at *12 (C.D. Cal. Sept. 15, 2016) (certifying "wrong number" TCPA class); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016) (same); *Ikuseghan v. MultiCare Health Sys.*, No. C14-5539, 2015 WL 4600818, at *8 (W.D. Wash. July 29, 2015) (debt collection TCPA class certified); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) (TCPA wrong number debt collection class certified); *Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145-L NLS, 2014 WL 5454398, at *4 (S.D. Cal. Oct. 27, 2014) (certifying class receiving debt collection calls when Defendant maintained poor or nonexistent records showing consent); *Stemple v. QC Holdings, Inc.*, No. 12-CV-01997-BAS WVG, 2014 WL 4409817, at *10 (S.D. Cal. Sept. 5, 2014) (certifying debt collection TCPA class); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (certifying TCPA debt collection class); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 693 (S.D. Fla. 2013) (certifying debt collection TCPA class); *Mitchem v. Ill. Collection Serv., Inc.*, 271 F.R.D. 617, 620 (N.D. Ill. 2011) (certifying skip-traced class of consumers who received prerecorded calls from a collection agency).

*Consumer Litig.*, No. 10-CV-4992 JS AKT, 2014 WL 1330546, at *5 (E.D.N.Y. Mar. 31, 2014) (*quoting Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

     **A.**     **Numerosity is satisfied; there are thousands of Class members**.

     Numerosity is indisputable: the evidence establishes that each Class includes many thousands of Class members. *See* Section III. D. above. Indeed, numerosity is presumed when a class contains more than 40 members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

     **B.**     **There is at least one issue common to all members of the Classes.**

     "Commonality is satisfied where a *single* issue of law or fact is common to the class." *In re Cablevision Consumer Litig.*, 2014 WL 1330546, at *6 (emphasis in original) (citing *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)). Commonality is a "minimal burden for a party to shoulder." *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (citation and quotation marks omitted); *see also In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998) (Courts take a "common sense approach" to commonality recognizing that "some factual variation among class members' specific grievances" does not prevent certification.). TCPA cases are well-suited to common questions and answers, because class members' claims require common analyses about the nature of standardized robo-calling and classwide policy failures. *See Brown*, 330 F.R.D. at 266 (commonality established in TCPA case involving debt collection calls from DIRECTV and its debt collectors).

     Here, Plaintiffs and members of each Class share common questions that will drive resolution of this litigation, including whether: (1) collection calls made to Class members' cellular telephone numbers used an artificial or prerecorded voice; (2) dialing equipment used to make collections calls dialed in predictive dialing mode or from a stored list without human intervention and therefore qualified as an ATDS; (3) Defendants are vicariously liable for robo-calls made by their Collection Agencies, based on their standardized form agreements and/or their oversight of the Agencies; (4) whether Stop Calling Requests can be identified based on the business records of

Defendants or their agents, and (5) ███████████████████████████████████████

████   *See also* Dkt. 440 (*Third Amended Class Complaint*) ¶ 120 (listing common questions).  These

questions are common to the three Classes and can be determined through common analyses of

classwide materials that Defendants and their Agents possess.  *See infra* § IV. E.  Accordingly, each

common question supports class certification.  *See e.g.*, *Brown*, 330 F.R.D. at 267 ("Plaintiff and the

putative Class and Subclass members share the common contention that they all received similar

prerecorded calls without their prior express consent."); *Kron v. Grand Bahama Cruise Line, LLC*, 328

F.R.D. 694, 701 (S.D. Fla. 2018) (same); *Knapper*, 329 F.R.D. at 241-42 (same).

### C.      The proposed Class representatives' claims are typical.

Typicality is satisfied "when each class member's claim arises from the same course of events

and each Class member makes similar legal arguments to prove the defendant's liability."  *Shahriar v.

Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citations and quotation marks

omitted).  In other words, the plaintiffs can bring claims "for the same type of injury under the same

legal theory as the rest of the class."  *Marshall v. Deutsche Post DHL*, No. 13-CV-1471 RJD JO, 2015

WL 5560541, at *3 (E.D.N.Y. Sept. 21, 2015); *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)

(same).  "'Typicality does not . . . require that . . . the representatives' claims be identical to those of

the class members,' and so is 'not defeated by minor variations in the fact patterns of individual class

member's claims.'"  *In re Cablevision Consumer Litig.*, 2014 WL 1330546, at *8 (citations omitted).

Plaintiff Ewan brings claims typical of the Skip-Tracing Class.  As with other Skip-Tracing

Class members, ServCo debt collector NRA obtained her phone number from skip-tracing.  *See*

Tusa Decl. ¶ 53 & Ex. P (NRA (Kusic) Dep. Tr.) at 241:9–245:17, 257:4-16 (testifying that NRA

obtained her telephone number ending 7312 through skip-tracing).  NRA then placed over thirty

robo-calls to that phone number, using a predictive dialer.  *See* Tusa Decl., ¶ 54 & Exs. OO, PP

(listing call dates).  NRA did not have consent to make those robo-calls.  Tusa Decl., Ex. P (NRA

30(b)(6) (Kusic) Dep. Tr.) at 262:22-263:19.  Plaintiff Ewan's TCPA claims typify the claims of the Skip-Tracing Class and Robo-Calling Classes, because she received collections robo-calls by one of Defendants' Third-Party Collection Agents to a cellular telephone that was not provided to that Agent by Defendants.  The Skip-Tracing Class will present the same legal theories.  *See, e.g., Echevvaria v. Diversified Consultants, Inc.,* No. 13 CIV. 4980 LAK AJP, 2014 WL 929275, at *8 (S.D.N.Y. Feb. 28, 2014) (vendor could not prove prior express consent where phone number obtained from a skip-trace).  Plaintiff Ewan's claims are typical.  *See, e.g., McMillion,* 2017 WL 3895764, at *7 (skip-tracing claims typical).

Plaintiff Steele brings claims typical of the Stop Calling Class, each member of which affirmatively communicated a Stop Calling Request to Defendants or their Collection Agencies—as indicated by code, do-not-call list, or written communication.  Plaintiff Steele sent a June 7, 2015 Stop Calling Request letter to Defendants, which they admitted to receiving.  Tusa Decl. ¶ 37 & Ex. DD.  Thereafter, he received multiple, prerecorded message collections robo-calls from ServCo directly, First-Party Collection Agency NCI, and at least 10 additional robo-calls from Third-Party Collection Agency NRA.  JTN Decl., ¶ 34.a; Tusa Decl., ¶ 38 & Exs. EE, FF (listing call dates).  Even before his Stop Calling Request, Plaintiff Steele received dozens of robo-calls to his cellular phone from ServCo and NCI.  *See* JTN Decl., ¶ 42 & Exs. 39, 52.

Plaintiffs Jenkins, Royal, and Whyte also possess claims typical of the Robo-Call Class. █████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████. *See* Tusa Decl. ¶ 55 (listing call dates) & Exs. V (NCO (Balthaser) Dep. Tr.) at 137:2-14, 188:25-189:21, 191:11-199:14, 215:3-218:13, 224:16-25, 269:13-271-11), QQ and RR. Plaintiff Royal received multiple collections robo-calls to her cellular telephone ending 8851 from

ServCo directly and NCI at ServCo's behest.  JTN Decl. ¶ 41 & Exs. 38, 39.  Plaintiff Whyte likewise received collections robo-calls from ServCo to her cellular telephone ending 8100.  *Id.* ¶ 43 & Ex. 54.  Plaintiffs' claims are typical.  *See, e.g., Brown*, 330 F.R.D. 260, 267 (C.D. Cal. 2019) (TCPA claims typical because based on same TCPA injury and same lack of prior express consent); *Kron*, 328 F.R.D. at 700 (same); *Lavigne*, 2018 WL 2694457, at *5 (same).

Plaintiffs did not consent to receive these robo-calls.  *See* JTN Decl., Ex. 57 (Jenkins Dep. Tr.) at 142:22-24, 160:12-17, 213:17-21; JTN Decl., Ex. 58 (Steele Dep. Tr.) at 121:12-22; JTN Decl., Ex. 59 (Royal Dep. Tr.) at 149:4-5; JTN Decl., Ex. 60 (Whyte's Resp. to Defs.'Rogs. No. 8); JTN Decl., Ex. 61 (Ewan Dep. Tr.) at 99:9-12; JTN Decl., Ex. 62 (Ewan's Resp. to Defs.'Rogs. No. 8). Defendants have not proffered any audio files, paper applications, or records of Internet communications purporting to show that the dialed phone number was provided by Plaintiffs in advance of these robo-calls.[6]

**D.      The proposed representatives and counsel adequately represent the Classes.**

Adequate representation requires showing that:  (1) the Class representatives' interests are not "antagonistic" to Class members' interests, and (2) Class counsel are "qualified, experienced, and generally able to conduct the litigation."  *Omar v. 1 Front St. Grimaldi, Inc.*, No. 16-CV-5824, 2019 WL 1322614, at *11 (E.D.N.Y. Jan. 8, 2019) (citation and quotation marks omitted).  Here, Plaintiffs' and the Class members' interests align because they were all harmed by the same alleged violations of the TCPA and seek the same remedy for those violations.  Plaintiffs have no conflict of interests with other Class members.  *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006); *Zyburo*, 44 F. Supp. 3d at 503 (certifying TCPA class; "[T]o defeat a

---

[6] Although Defendants produced an application Plaintiff Steele provided to a utility prior to its acquisition by National Grid, Defendants never obtained his prior express consent.  JTN, Decl., Ex. 30 (Defs. Resp. to 1st 'Rogs., No. 2). Moreover, Steele made a Stop Calling Request before many of the robo-calls to his cellular telephone.  Judge Brown explained, "a post-revocation Plaintiff theoretically [may] be a representative class member for someone who never gave consent."  JTN Decl. Ex. 8 (7/10/19 H'rg Tr.) at 11:3-5.

motion for certification . . . the conflict must be fundamental.") (citation and quotations omitted). Further, Plaintiffs have been actively and continually involved in this litigation, expending significant time and energy to stop Defendants' unlawful actions and seek compensation for others similarly harmed.  *See* Cuthbertson Decl. ¶¶ 18-22 (describing Plaintiffs' involvement in the litigation).

The second requirement is satisfied because Plaintiffs' counsel are experienced and qualified to handle these TCPA class claims.  *See* Cuthbertson Decl. ¶¶ 2-17 & Ex. A (attaching firm resume); Tusa Decl., Ex. A (same).  Adequacy should not be disputed.  *See Brown*, 330 F.R.D. at 267.

### E.    Common issues predominate classwide.

Rule 23(b)(3)'s predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (citation and quotations omitted).  Predominance is "readily met" in consumer cases where, as here, the common factual questions necessarily center upon ServCo's and ServCo's agents course of conduct.  *See Amchem,* 521 U.S. at 625; *Hasemann v. Gerber Prod. Co.*, No. 15-CV-2995, 2019 WL 1434263, at *29 (E.D.N.Y. Mar. 31, 2019)(same).

Predominance "does *not* require [Plaintiffs] 'to prove that each elemen[t] of [their] claim[s] [are] susceptible to classwide proof.'"  *Sykes v. Mel S. Harris & Assocs. LLC,* 780 F.3d 70, 81 (2d Cir. 2015) (*quoting Amgen*, 133 S. Ct. at 1196) (emphasis in original); *see In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 236 (S.D.N.Y. 2012) (Predominance "does not require a plaintiff to show that there are no individual issues.") (citation and quotation marks omitted).  And "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones."  *In re Cablevision Consumer Litig.*, 2014 WL 1330546, at *11(citation and quotation marks omitted).

In TCPA cases, predominance is readily met because the TCPA "creates a simple scheme for determining if a violation occurred, whether a defense is available, and what the damages ought to be." *Krakauer*, 925 F.3d at 659, 663. Because the statute is so straightforward, the common evidence relevant to Rule 23 is likewise straightforward. Thus, courts routinely certify TCPA robo-calling classes where, as here, there exists common evidence regarding whether (1) Defendants placed prerecorded or ATDS calls, (2) consumers made Stop Calling requests, (3) Defendants are liable for their Collection Agencies' calls, (4) Defendants' conduct was knowing or willful, (5) the amount of statutory damages, and/or (6) Defendants can prove their affirmative defense of prior express consent. *See supra*, footnote 5 (citing cases finding predominance based on similar facts).

> **1. Class members' TCPA claims require common, objective methods of identifying collections robo-calls made to cellular telephones.**

Here, the TCPA claims of each Class member require proof of the same basic facts: *i.e.*, that a robo-call was made to a cellular telephone for the purpose of collecting a debt on a National Grid Utility Account. Proving these facts requires the same factual and legal analysis, including:

1. An analysis of classwide records for result codes showing when a prerecorded message was played on a call (*see* JTN Decl., Ex. 63 (Verkhovskaya Rep.) ¶¶ 56.b, 56.c, 65.b, 80, 112.b, 126.b, 140, 153.b, 160.b, 172.a, 177);

2. An analysis of classwide records for result codes showing when calls involved the use of dialing equipment that automatically dialed in predictive mode or from a stored list (*see id.* ¶¶ ¶¶ 56.a, 65, 72, 112.a, 126.a, 139, 153.a, 160.a, 172.b, 176);[7]

3. An analysis of classwide records to determine when calls were made to collect a debt (*see id.* ¶¶ 55, 64, 78, 95, 101, 110, 119, 125, 132, 152, 168); and

4. A comparison of classwide records reflecting dialed phone numbers against an

---

[7] Any dialing equipment that fits these descriptions should be subject to common legal arguments concerning its status as an ATDS. *See In Re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 129-133 (2003) (predictive dialer held an ATDS); *In Re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 23 FCC Rcd.559 ¶¶ 12-13 (2008) (same); *In re Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15392, n.5 (2012) (same); *see also Jiminez v. Credit One Bank, N.A.*, 377 F. Supp. 3d 324, 330-333 (S.D.N.Y. 2019) (adopting FCC definition of ATDS); *Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476, 481 (E.D.N.Y. 2019) (same). Plaintiffs' definition of "robo-call" conforms to these decisions.

industry standard dataset used to identify cellular telephone numbers (*see id.* § V.B).

Because all Class members' TCPA claims require these common analyses of similar call records, common issues predominate.  *See, e.g., Kron*, 328 F.R.D. at 700 ("Plaintiff contends that the class is clearly ascertainable as they will be able to determine class members' identities using Defendant's phone records. This Court agrees."); *Lavigne,* 2018 WL 2694457, at *4 ("The same evidence, Defendants' own records, will provide common answers to legal and factual questions related to consent issues for all class members."); *West,* 323 F.R.D. at 304 n.11 (same); *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583, at *6 (N.D. Cal. May 5, 2017) (same); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

### 2.    The Stop Calling Class's TCPA Claims require common, objective methods of identifying Stop Calling Requests.

Similarly, Stop Calling Class members' claims require another common analysis of records to identify dates and phone numbers covered by a Stop Calling Request.  Generally, this step involves objectively analyzing certain "stop calling" result codes in call data and of do-not-call lists.  *See* JTN Decl., Ex. 63 (Verkhovskaya Rep.) §§ VI.A–VI.B (discussing common analysis of Stop Calling records).  Here, the Court has already explained that there is no meaningful difference between the claims of call recipients who ask not to be robo-called generally, and those who ask not to be robo-called because a wrong number has been reached.  *See* JTN Decl., Ex. 64 (6/1/18 H'rg Tr.) at 38:5-10 ("THE COURT:  But isn't a plaintiff who comes in and says I didn't authorize him to call me even though I had a debt with them and so forth, but I didn't authorize – and they kept calling me, isn't that the same claim as someone who says they were just calling me for no reason.  I wasn't even one of their ex-customers.").  Courts certifying similar Stop Calling Classes likewise regularly find the predominance element satisfied based on these types of classwide records.  *See, e.g., Knapper*, 329 F.R.D. at 241 (certifying class that included based on wrong number designations in Defendants "own internal [call] records"); *Lavigne,* 2018 WL 2694457, at *4 (certifying class where phone

numbers called "were coded as 'Bad/Wrong Number'"); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 387 (M.D.N.C. 2015) (certifying a nationwide TCPA NDNC Registry class and a nationwide TCPA internal Do Not Call list class); *c.f. Cordoba,* 320 F.R.D. at 602 (certifying class based on internal do-not-call list violations).

### 3. Defendants' liability for its Collection Agencies will be resolved through common proof.

████████████████████████████████████████████████████

██████████████████████████████, Defendants' vicarious liability will be determined classwide based on a common analysis of uniform contractual terms, business relationships, and testimony.  *See* JTN Decl., §§ II–III (collecting evidence); Tusa Decl., § I (collecting evidence).  *See Brown*, 330 F.R.D. at 274 (determining Defendant's "vicarious liability for debt collectors' prerecorded calls without prior express consent does not require an individualized analysis," but can be determined "through analysis of these contracts, which is similar evidence across each debt collector[,]" avoiding any predominance issues) (citing *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 234 (C.D. Cal. 2018)); *Abante Rooter & Plumbing, Inc.*, 2017 WL 1806583, at *6 (common question that predominates includes whether "Alliance is liable for the conduct of Alliance's agent, Nationwide").  Questions about agents' TCPA vicarious liability are "in all likelihood . . . common to the class."  *See Krakauer,* 925 F.3d at 658.

### 4. Knowing and/or willful TCPA violations will be resolved through proof common to all Class members.

Whether ServCo's misconduct was willful involves the common determination of whether the offending robo-calls were made knowingly, Stop Calling Requests were systematically disregarded, and/or Defendants' knowledge of and active involvement in its Collection Agencies' abusive practices, including skip-tracing phone numbers.  Where, as here, the proof of willfulness will involve Defendants' general policies and practices that do not vary among individual Class

- 21 -

members (*see supra* § III.C), willfulness presents a common issue that can be resolved through an objective, classwide analysis.  *See McMillion*, 2017 WL 3895764, at *5 ("[T]he question of defendant's willfulness and knowledge is a common question."); *Zyburo*, 44 F. Supp. 3d at 503, 504 (Plaintiff's "'willfulness' claim will therefore depend on defendant's general practices and procedures, or lack thereof, which is entirely suitable for class determination").

### 5.    The TCPA statutory damages remedy eliminates individual damage determinations.

The TCPA statutory remedy obviates the need for individual damage determinations, which will be made using a common method for all Class members.  *See Clough v. Revenue Frontier, LLC*, Case No. 17-cv-411-PB, 2019 WL 2527300, at *6, *20 (D.N.H. June 19, 2019) ("The amount of each class member's damages [under the TCPA] does not require individualized determination, . . .") (citation omitted); *Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894, 898-99 (N.D. Ill. 2010) ("[A] successful class action in this [TCPA] case would generate a $500 award for *every* class member able to prove the basic elements of his, her or its claim . . . [Defendant's] contention that questions affecting only individual members would predominate over class issues is no better than pure fiction--and a pretty poor quality of fiction at that.") (emphasis in original); *accord Holtzman*, 728 F.3d at 684 ("[TCPA] statutory remed[ies], are the same for all recipients").

Plaintiffs seek only TPCA statutory damages for all Class members.  *See* Dkt. 440 (*Third Amended Class Action Complaint*) ¶ 9, *Prayer for Relief* (D).  The award of those statutory damages presents *no* individualized issues, and only common ones.

### 6.    Defendants' affirmative defenses to class certification present classwide defenses appropriate for class resolution.

TCPA defendants often assert that their affirmative defense of "prior express consent" presents individualized issues that prevent class certification.  Defendants bear the burden of proving "prior express consent" for their robo-calls under the TCPA.  *See Latner*, 879 F.3d at 54;

*Krady*, 2017 WL 6541443, at *2 (same). Defendants' speculation cannot satisfy their burden. *See Bridging Comtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) ("speculation alone regarding individualized consent was insufficient to defeat plaintiffs' showing of predominance under Rule 23(b)(3)"); *Zyburo*, 44 F. Supp. 3d at 503 (certifying class over objections because defendants "keeps poor or nonexistent records" and was "in effect asking the Court to reward its imperfect record-keeping practices by precluding class certification").

Moreover, a prior express consent affirmative defense itself often presents classwide issues appropriate for certification. *See Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587 (N.D. Ill. 2018) ("[I]f the defendant obtained the class members' consent for calls in a uniform manner, consent can be resolved on a class-wide basis."); *Manno,* 289 F.R.D. at 690 (prior express consent defense was "not an individualized issue defeating predominance, but is itself a question/defense common to the class as a whole."). Prior express consent is precisely the type of affirmative defense that can be addressed on a classwide basis. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) ("That defense is itself common to the claims made by all class members."); *see also In re US FoodService Pricing Litig.*, 729 F.3d at 119 (same) (quoting *Amgen*, 133 S. Ct. at 1191)). Classwide defenses are "properly addressed at trial or on a summary judgment motion." *Amgen*, 133 S. Ct. at 1197.

Insofar as Defendants claim that merely listing a phone number on a utility application, providing a phone number to Defendants via the Internet, or stating a phone number on a recorded telephone call proves prior express consent to receive collections robo-calls, Plaintiffs disagree, but the Stop Calling and Robo-Call Classes are defined to exclude these persons. Courts routinely exclude persons potentially subject to a prior express consent defense based on objective criteria using the defendants' own records. *See Abante Rooter & Plumbing, Inc.*, 2017 WL 1806583, at *8 (certifying TCPA class that excluded persons who "(i) visited Alarm.com's website and typed in their

telephone number, (ii) called an Alarm.com customer service representative and (iii) had an existing business relationship with Alarm.com"); *Manno*, 289 F.R.D. at 690 (certifying class that "excluded those individuals who had any communications with HRRG prior to being called").

The Skip-Tracing Class is similarly limited to persons robo-called on skip-traced phone numbers that were not provided to ServCo as callable phone numbers based on interactions with the alleged debtors. Courts routinely certify proposed skip-tracing classes where, as here, thousands of cellular telephone numbers were skip-traced and robo-called. *See, e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1042 (9th Cir. 2012) (affirming provisional certification of debt collector skip-tracing class); *McMillion,* 2017 WL 3895764, at *10 (certifying skip-tracing TCPA classes); *Caldera,* 320 F.R.D. at 519 (certifying class of debtors whose numbers were skip-traced and finding predominance where for "individuals who were skip traced, or for whom Defendant did not have a valid phone number on record"). The Court should reach the same result here.

### F.    A class action is superior to other methods of adjudication.

In consumer lawsuits, superiority is generally met anytime common issues predominate. Even a large TCPA classwide recovery satisfies superiority. *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1308 (D. Nev. 2014). There can be no credible argument that Class members' claims are best addressed in hundreds of thousands of virtually identical cases rather than a single collective action. *See In re US FoodService Pricing Litig.*, 729 F.3d at 130 ("[S]ubstituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of '"time, effort and expense, and promote uniformity of decision."') (citation omitted). Instead, a class action is "the best means of adjudicating this controversy." *See In re Cablevision Consumer Litig.*, 2014 WL 1330546, at *14; *accord Brown*, 330 F.R.D. at 275 (same in TCPA context); *Keim v. ADF MidAtl., Ltd. Liab. Co.*, 328 F.R.D. 668 (S.D. Fla. 2018) (same). The same reasoning applies here.

**G.      The Classes are ascertainable because they are objectively defined.**

The Second Circuit requires only that a "'class be defined using objective criteria that establish a membership with definite boundaries . . . .'"  *Hasemann*, 2019 WL 1434263, at *26 (quoting *In re Petrobras Sec. Litig.*, 862 F.3d at 264-65).  This "modest threshold" does not require Plaintiffs to show they can "offer proof of membership under a given class definition.'"  *Id.; see also Harte v. Ocwen Fin. Corp.,* No. 13-CV-5410, 2018 WL 1830811, at *31 (E.D.N.Y. Feb. 8, 2018) ("[T]he ascertainability standard is not demanding; it is designed only to prevent certification of classes whose membership is actually indeterminable.").

Plaintiffs' proposed Classes are defined using only objective criteria.  Eligibility for Class inclusion will be likewise be objectively determined through review of records that show whether: (1) ServCo or its Collection Agencies made collections robo-calls to a cellular telephone number; (2) a person made a Stop Call Request prior to receiving a collections robo-call; and (3) the Third-Party Collection Agencies make robo-calls to cellular telephone numbers not provided to them by ServCo.  *See* JTN Decl., Ex. 63 (Verkhovskaya Rep.).  Class membership can be readily and reliably determined though objective review of records produced during discovery.

**V.      CONCLUSION**

For the above reasons, Plaintiffs respectfully request that the Court GRANT their motion for class certification, certify the three proposed Classes, appoint Plaintiffs as representatives for the Classes, and appoint Plaintiffs' counsel as counsel for the Classes.


Dated:  July 31, 2019                    Respectfully submitted,

                                         By:____*/s/ Joseph S. Tusa*_____
                                              Joseph S. Tusa

TUSA P.C.
Email:  joseph.tusapc@gmail.com
P.O. Box 566
Southold, NY 11971
            - and -
150 Motor Parkway, Ste. 401
Hauppauge, NY 11788
Telephone:  (631) 407-5100
Email:  joseph.tusapc@gmail.com

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
Email:  jselbin@lchb.com
Douglas I. Cuthbertson
Email:  dcuthbertson@lchb.com
John T. Nicolaou
Email:  jnicolaou@lchb.com
Avery S. Halfon
Email:  ahalfon@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice*)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000

**Attorneys for Plaintiffs and the Proposed Classes**