## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JARRETT JENKINS, EMMOT STEELE, FRANCES ROYAL, DANAI EWAN, and CHARMAINE WHYTE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>NATIONAL GRID USA SERVICE COMPANY, INC., KEYSPAN GAS EAST CORPORATION, NIAGARA MOHAWK POWER CORPORATION, and THE BROOKLYN UNION GAS COMPANY,<br><br>Defendants. | Case No.  15-cv-1219<br><br>Hon. Joanna Seybert, U.S.D.J.<br>Hon. Arlene R. Lindsay, U.S.M.J. |

## PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR DIRECTION OF CLASS NOTICE

**PLEASE TAKE NOTICE** that Plaintiffs Jarrett Jenkins, Emmot Steele, Frances Royal, Danai Ewan, Charmaine Whyte (collectively and with Kristen MacKenzie, "Plaintiffs") hereby move the Court, before the Honorable Joanna Seybert, at the United States District Courthouse for the Eastern District of New York, located at 100 Federal Plaza, Central Islip, New York 11722, at a date and time to be determined by the Court, for an order pursuant to Fed. R. Civ. P. 23 granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and for direction of class notice.  Plaintiffs request that in this order the Court do the following:

a.     Grant preliminary approval of the Parties' proposed Settlement Agreement and Release (the "Agreement");[1]

---

[1] The Agreement is annexed as Exhibit 1 to the accompanying Joint Declaration of Joseph S. Tusa and Douglas I. Cuthbertson ("Joint Decl.").  All capitalized terms are defined in that Agreement.

b.      Find that it is likely to certify, for settlement purposes, the Settlement Class, pursuant to Fed. R. Civ. P. 23(a), (b)(3) and (e);

c.      Appoint Plaintiffs as Class Representatives representing the Settlement Class;

d.      Appoint Tusa P.C. and Lieff Cabraser Heimann & Bernstein, LLP as Class Counsel for the Settlement Class;

e.      Approve the Parties' proposed Notice Plan, including the proposed forms of notice, and direct that notice be disseminated pursuant to such Notice Plan and Fed. R. Civ. P. 23(c) and (e)(1);

f.      Appoint Angeion Group, LLC ("Angeion") as Claims Administrator for the Settlement and direct it to carry out the duties and responsibilities of the Claims Administrator specified in the Agreement;

g.      Set deadlines for Settlement Class Members to request exclusion from the Settlement, to object to the Settlement, and submit claims for Settlement Payments;

h.      Stay all non-Settlement-related proceedings in this lawsuit pending final approval of the Settlement; and

i.      Schedule a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

This motion is supported by the accompanying *Memorandum of Law* and the Joint Declaration of Joseph S. Tusa and Douglas I. Cuthbertson filed herewith, the argument of counsel, all papers and records on file in this matter, and such other matters as the Court may consider.

As discussed in the accompanying *Memorandum of Law*, the requested relief is appropriate because the Settlement satisfies the standards for preliminary approval and for direction of class notice under Fed. R. Civ. P. 23(c) and (e)(1).

Dated:  October 29, 2021

Respectfully submitted,

By:   */s/ Jonathan D. Selbin*
      Jonathan D. Selbin

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
Email: jselbin@lchb.com
Douglas I. Cuthbertson
Email: dcuthbertson@lchb.com
John T. Nicolaou
Email: jnicolaou@lchb.com
Avery S. Halfon
Email: ahalfon@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice*)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

TUSA P.C.
Joseph S. Tusa
Email: joseph.tusapc@gmail.com
55000 Main Road, 2nd Fl.
P.O. Box 566
Southold, NY 1197
Telephone: (631) 407-5100

***Attorneys for Plaintiffs and Proposed Class Counsel***

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JARRETT JENKINS, EMMOT STEELE, FRANCES ROYAL, DANAI EWAN, and CHARMAINE WHYTE, on behalf of themselves and all others similarly situated, | Case No.  15-cv-1219 |
| Plaintiffs, | Hon. Joanna Seybert, U.S.D.J. Hon. Arlene R. Lindsay, U.S.M.J. |
| -against- | |
| NATIONAL GRID USA SERVICE COMPANY, INC., KEYSPAN GAS EAST CORPORATION, NIAGARA MOHAWK POWER CORPORATION, and THE BROOKLYN UNION GAS COMPANY, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR DIRECTION OF CLASS NOTICE

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

I.     Procedural History ...................................................................................................2

      A.     Pre-Filing Investigation .....................................................................2

      B.     Pleadings and Motions to Dismiss ....................................................2

      C.     The Enormous Scope and Contentious History of Discovery ...............3

      D.     Class Certification and *Daubert* Briefing ..................................3

      E.     Settlement Negotiations .......................................................................3

II.     The Settlement Terms ...............................................................................................4

      A.     The Settlement Class ...........................................................................4

      B.     The Relief ...........................................................................................5

           1.     National Grid Will Pay $38.5 Million Into a Non-Reversionary Fund. ................................................................5

           2.     National Grid Will Implement Policies and Procedures to Ensure Compliance with the TCPA. ..................................5

      C.     The Class Notice Plan ........................................................................7

      D.     Settlement Administration ..................................................................8

      E.     Attorneys' Fees and Expenses and Plaintiffs' Service Awards ..............8

      F.     Class Members Will Release Their Collections-Related TCPA Claims. ...........9

ARGUMENT .......................................................................................................................9

I.     Overview of the Class Settlement Approval Process. ..........................................9

II.     The Proposed Settlement Meets the Standards for Preliminary Approval. ............9

      A.     Plaintiffs and Class Counsel Zealously Represented the Class (Fed. R. Civ. P. 23(e)(2)(A)). .........................................11

      B.     The Settlement Is the Product of Arm's-Length Negotiations by Experienced Counsel and Is Informed by Extensive Discovery and Litigation (Fed. R. Civ. P. 23(e)(2)(B); *Grinnell* Factor 3). .................................12

      C.     The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Substantial Risk and Challenges They Face (Fed. R. Civ. P. 23(e)(2)(C); *Grinnell* Factors 1 & 4-9). ...................................13

      D.     The Settlement Treats Settlement Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D). ...................................17

      E.     The Additional Rule 23(e) Factors Support Granting Preliminary Approval ........17

III.     The Court Should Hold That It will Likely Certify the Settlement Class. .............18

i

A.      The Requirements of Rule 23(a) Are Satisfied..................................................19

    1.      Numerosity (Rule 23(a)(1)) ...................................................................19

    2.      Commonality (Rule 23(a)(2)) ................................................................19

    3.      Typicality (Rule 23(a)(3))......................................................................20

    4.      Adequacy of Representation (Rule 23(a)(4))..........................................20

B.      The Requirements of Rule 23(b)(3) Are Satisfied..............................................21

    1.      Predominance..........................................................................................21

    2.      Superiority...............................................................................................22

IV.     The Proposed Notice Plan Complies with Rule 23 and Due Process. ...............................23

V.      The Court Should Schedule a Final Approval Hearing and Related Dates. ......................24

CONCLUSION............................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................................22

*Babcock v. C. Tech Collections, Inc.*,
    No. 14-cv-3124 (MDG), 2017 WL 1155767 (E.D.N.Y. Mar. 27, 2017)...................10

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
    140 S. Ct. 2335 (2020).............................................................................................15

Berni v. Barilla S.p.A.,
    964 F.3d 141 (2d Cir. 2020).....................................................................................18

*Brown v. DirecTV*,
    330 F.R.D. 260 (C.D. Cal. 2019)..............................................................................20

*Chen v. XpresSpa at Terminal 4 JFK LLC*,
    No. 15-cv-1347 (CLP), 2021 WL 4487835 (E.D.N.Y. Oct. 1, 2021) ......................10

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).............................................................................10, 12

*Consolidated Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995).......................................................................................19

*Cymbalista v. Jpmorgan Chase Bank, N.*A.,
    No. 20-cv-456 (RPK)(LB), 2021 U.S. Dist. LEXIS 99093 (E.D.N.Y. May 25, 2021).............18

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006).....................................................................................20

*Elkind v. Revlon Consumer Prods. Corp.*,
    No. 14-cv-2484(JS)(AKT), 2017 U.S. WL 1169552 (E.D.N.Y. Mar. 29, 2017) .....................12

*George v. Shamrock Saloon II, LLC*,
    No. 17-cv-6663(RA)(SLC), 2021 WL 3188314 (S.D.N.Y. July 28, 2021).............15

*Gross v. Wash. Mut. Bank, F.A.*,
    No. 02-cv-4135(RML), 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006)..........................9

*Hasemann v. Gerber Prod. Co.*,
    331 F.R.D. 239 (E.D.N.Y. 2019)..............................................................................22

*In re Cablevision Consumer Litig.*,
    No. 10-cv-4992(JS)(AKT), 2014 WL 1330546 (E.D.N.Y. Mar. 31, 2014) ......................18, 19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009).......................................................................................20

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................13

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)..................................................................9, 18

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................................9

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020)..........................................................10, 11, 12

**TABLE OF AUTHORITIES**
(continued)

Page

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998)........................................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   No. 05MD1720MKBJO, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ...................18

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017)......................................................................................22

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ..............................................................................18

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013)......................................................................................22

*Kindle v. Dejana*,
   315 F.R.D. 7 (E.D.N.Y. 2016)..................................................................................19

*Krakauer v. Dish Network, L.L.C.*,
   925 F.3d 643 (4th Cir. 2019) ....................................................................................18

*Kron v. Grand Bahama Cruise Line, LLC*,
   328 F.R.D. 694 (S.D. Fla. 2018)...............................................................................20

*Lavigne v. First Community Bancshares, Inc.*,
   No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D. N.M. June 5, 2018) ..................20

*Marshall v. Deutsche Post DHL*,
   No. 13-CV-1471 RJD JO, 2015 WL 5560541 (E.D.N.Y. Sept. 21, 2015)................20

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)......................................................................................20

*Rosenfeld v. Lenich*,
   No. 18-cv-6720(NGG)(PK), 2021 U.S. Dist. LEXIS 26950 (E.D.N.Y. Feb. 4, 2021) .............18

*Sandoe v. Bos. Sci. Corp.*,
   No. 18-cv-11826, 2019 WL 5424203 (D. Mass. Oct. 23, 2019) ...............................16

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011)......................................................................................20

*Tomeo v. CitiGroup, Inc.*,
   No. 13-cv-4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018).................................16

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)..............................................................................................21

*Vasco v. Power Home Remodeling Group LLC*,
   15-4623, 2016 WL 5930876 (E.D. Pa. Oct. 12, 2016) .............................................14

*Velez v. Majik Cleaning Serv., Inc.*,
   03-cv-8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)........................................16

*Victoria Perez v. Allstate Ins. Co.*,
   No. CV 11-1812 (AKT), 2019 WL 1568398 (E.D.N.Y. Mar. 29, 2019) ....................9

*Wal–Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)..............................................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................10

**TABLE OF AUTHORITIES**
(continued)

Page

*Zyburo v. NCSPlus, Inc.*,
 44 F. Supp. 3d 500 (S.D.N.Y. 2014)............................................................21

**Statutes**
New York General Business Law ("GBL") § 399................................................2, 7, 20
Telephone Consumer Protection Act ("TCPA"),
 47 U.S.C. § 227.......................................................................passim

**Rules**
Fed. R. Civ. P. 23(a) .........................................................................1
Fed. R. Civ. P. 23(b)(3)...................................................................1, 21
Fed. R. Civ. P. 23(c) ......................................................................1, 2
Fed. R. Civ. P. 23(c)(2)(B) ..................................................................23
Fed. R. Civ. P. 23(e)(1)................................................................1, 2, 10
Fed. R. Civ. P. 23(e)(1)(B) ..................................................................23
Fed. R. Civ. P. 23(e)(2)...................................................................1, 11

**Treatises**
4 William B. Rubenstein, Newberg on Class Actions § 13:10 (5th ed. 2021) ................10

## INTRODUCTION

After more than six years of extremely hard-fought litigation, plaintiffs Jarrett Jenkins, Emmot Steele, Frances Royal, Danai Ewan, Charmaine Whyte, and Kristin MacKenzie (collectively, "Plaintiffs") respectfully move the Court for preliminary approval of the Settlement reached with defendants National Grid USA Service Company, Inc., KeySpan Gas East Corporation, Niagara Mohawk Power Corporation and The Brooklyn Union Gas Company (the defendants in this Action), and Massachusetts Electric Company, the Narragansett Electric Company, Boston Gas Company, and Nantucket Electric Company (collectively, "National Grid"). The Settlement resolves this Action entirely,[2] which alleges that National Grid called Plaintiffs and Settlement Class Members on their cell phones in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A).

The Settlement requires National Grid to pay $38,500,000 into a common fund (the "Settlement Fund"), from which Settlement Class Members who file timely and valid Claim Forms will receive a *pro rata* cash payment. None of the Settlement Fund will revert back to National Grid. In addition, National Grid will implement significant and extensive policies and procedures designed to ensure that it complies with the TCPA and to make it easier for National Grid's new, current, and former customers to prevent National Grid from robo-calling them.

Plaintiffs and their counsel litigated this matter extensively for over six years. After an extensive pre-filing investigation and filing this Action, Plaintiffs survived multiple rounds of motions to dismiss, engaged in comprehensive discovery and discovery-related motion practice, worked with experts and briefed related *Daubert* motions and fully briefed class certification. With full knowledge of all relevant facts, the Parties participated in multiple mediation sessions

---

[2] Final approval of the Settlement would also dismiss the related *Mackenzie* Action (*MacKenzie. v. National Grid USA Serv. Co., Inc.*, E.D.N.Y. No. 19-cv-1916) challenging identical National Grid calling practices, and join Ms. MacKenzie to this Action. *See* Agreement § 15.

with the Honorable Wayne Andersen (Ret.) of JAMS.  The Settlement came about only after multiple all-day mediation sessions and weeks of continued negotiation by phone and video with Judge Anderson before the Parties reached an agreement in principle.  After that, the Parties negotiated the Settlement terms for months, requiring an additional mediation with Judge Andersen to resolve several outstanding areas of disagreement.

Plaintiffs seek preliminary approval of the Settlement, a holding that the Court will likely certify the Settlement Class, and approval to send notice to the Settlement Class describing the Settlement and an opportunity to claim, opt-out, object, or otherwise be heard.  The Settlement satisfies all criteria for preliminary approval.

## BACKGROUND

### I.  Procedural History

#### A.  Pre-Filing Investigation

For months before filing the initial complaint in this Action, Class Counsel thoroughly investigated the legal and factual bases for potential claims against National Grid for violations of the TCPA and New York General Business Law ("GBL") § 399-p.  Joint Decl., ¶¶ 32-34.

#### B.  Pleadings and Motions to Dismiss

Plaintiff Jarrett Jenkins initiated this action on March 9, 2015.  *See* Dkt. 1.  Subsequent amended complaints added four additional named Plaintiffs.  The over-700 docket entries in this case reflect the Parties' significant motion practice, including six motions to dismiss Plaintiffs' claims.  *See* Joint Decl., ¶¶ 35-49.  Following that motion practice, Plaintiffs filed the operative *Third Amended Class Action Complaint* on August 29, 2018.  *See* Dkts. 440, 442.  National Grid filed its Answer on September 12, 2018.  *See* Dkt. 448.

C.    **The Enormous Scope and Contentious History of Discovery**

Discovery in this case was contested and extensive.  Over more than five years, discovery included the following (set forth in more detail in the Joint Declaration, ¶¶ 55-92):

- the production and review of over 100,000 documents (aside from data);

- the production, review, and analysis of well over 400 million lines of data related to National Grid call campaigns;

- more than two dozen sets of requests for production, requests for admission, and interrogatories exchanged between the Parties;

- subpoenas to and related discovery from more than 50 third parties;

- Class Counsel taking 38 depositions;

- six expert reports and four expert declarations; and

- approximately 50 discovery-related motions, including motions to compel document production, to protect from production, to stay discovery, and for preclusion/sanctions (filed by Plaintiffs)

D.    **Class Certification and *Daubert* Briefing**

On July 31, 2019, Plaintiffs moved for class certification, supported by the expert report of Anya Verkhovskaya.  *See* Dkts. 592, 647-51.  National Grid opposed class certification, supported by two expert reports, four expert declarations and multiple employee declarations. Dkts. 627, 652-69.  Plaintiffs' reply was supported by two additional expert reports from Ms. Verkhovskaya and DeLiang Wang, Ph.D.  *See* Dkts. 639, 670-73.  The Parties filed multiple *Daubert* motions to strike each other's expert reports.  *See* Dkts. 674, 676, 687.

E.    **Settlement Negotiations**

The Parties agreed to mediate only after the class certification and *Daubert* motions were fully-briefed.  Dkt. 726.  After two all-day mediations before Judge Wayne R. Andersen (Ret.) in May 2021, the Parties reached an impasse.  *See* Dkt. 727.  The Parties nonetheless continued to communicate with Judge Andersen, and mediated again on June 29, 2021, which ended without

resolution.  Joint Decl., ¶ 112.  Over the following weeks, the Parties continued to negotiate

through Judge Andersen.  *Id.*, ¶ 113.  On July 20, 2021, with the substantial assistance of Judge

Andersen, the Parties reached an agreement in principle on the primary terms of a classwide

settlement.  *Id.*; Dkt. 729.  Through early October 2021, the Parties negotiated the details of the

Agreement and exhibits, participating in a final mediation with Judge Andersen on October 11

concerning two outstanding issues that the Parties could not resolve on their own.  Joint Decl., ¶¶

114-15.  The Parties resolved those issues with Judge Andersen's assistance and thereafter

completed their negotiations and executed the Agreement as of October 29, 2021.  *Id.*, ¶¶ 115-

117.

## II.    **The Settlement Terms**

### A.    **The Settlement Class**

The Agreement provides for class certification under Rule 23(a) and (b)(3), for settlement

purposes only, of a "Settlement Class," defined as:

> All persons residing in the United States who, from March 9, 2011 until October
> 29, 2021, received a telephone call on a cellular telephone using a prerecorded
> message or artificial voice concerning:  (1) the payment or status of a current or
> past National Grid utility bill or account; (2) an "important matter" concerning a
> current or past National Grid utility bill or account; (3) a disconnect notice
> concerning a current or past National Grid utility account; (4) an invitation from
> National Grid to attend a Customer Assistance Expo or to meet with or speak to
> the National Grid Consumer Advocacy group, National Grid Consumer Advocate,
> or National Grid Credit Department; or (5) a statement about the availability of a
> government assistance program, such as the Home Energy Assistance Program
> (HEAP), for paying invoices for a National Grid utility account.  "National Grid"
> includes utilities operating in New York as KeySpan Gas East Corporation, The
> Brooklyn Union Gas Company, Niagara Mohawk Power Corporation; in
> Massachusetts as Boston Gas Company, Colonial Gas Company (now part of
> Boston Gas), Massachusetts Electric Company, Nantucket Electric Company; and
> in Rhode Island as The Narragansett Electric Company.  The Settlement Class
> excludes (1) officers, directors and employees of National Grid as well as any
> outside counsel representing National Grid in this litigation; (2) any judge to
> whom this case is assigned, along with his or her staff, and (3) immediate family
> of any individual excluded by (1) or (2).

4

*Id.*, ¶ 2.30.

**B.**   **The Relief**

National Grid will provide both monetary relief and non-monetary relief (*i.e.*, policy and practice changes) to benefit Settlement Class Members if the Court approves the Settlement.

1.   National Grid Will Pay $38.5 Million Into a Non-Reversionary Fund.

National Grid will pay $38.5 million cash into a Settlement Fund for the benefit of the Settlement Class, none of which will revert to National Grid, if the Court approves the Settlement. *Id.*, ¶ 4.01.  Each Settlement Class Member who does not timely request exclusion will be entitled to submit a Claim Form for a *pro rata* share of the Net Settlement Fund (*i.e.*, the $38.5 million Settlement Fund minus Settlement Costs (notice and administration costs, Court-approved Class Counsel attorneys' fees and costs, Plaintiff service awards, and any payment of taxes for interest earned on the Settlement Fund)). *Id.*, ¶¶ 2.31, 5.01, 6.01, 7.03, 9.02, 9.03, 16.02.  The Claims Administrator will distribute Settlement Class Member Payments upon the Effective Date. *Id.*, ¶¶ 7.04, 9.04.

2.   National Grid Will Implement Policies and Procedures to Ensure Compliance with the TCPA.

The Settlement also includes non-monetary consideration designed to stop the conduct at the heart of this litigation—and that significantly benefits the Settlement Class.  Specifically, upon final approval, National Grid will implement the following policies and practices:[3]

**Number 1**: National Grid will ask customers opening new utility accounts during a live interaction for consent to send Automated Collection Calls to their cell phones, and will also allow customers opening accounts online to designate that National Grid and its Vendors may not place Automated Collection Calls to their cell phone numbers. *See id.*, ¶ 4.06(a)(i)-(ii).

---

[3] National Grid will confirm to Class Counsel in writing that it has complied with items one to nine below.  *See id.*, ¶ 4.08.

**Number 2**: National Grid will ask current customers providing an updated cell number during a live interaction for consent to send Automated Collection Calls to that number, and otherwise stop sending Automated Collection Calls to any cell phone number after a customer indicates (live or online) a lack of consent for Automated Collection Calls or that it is a wrong number. *Id.*, ¶ 4.06(a)(iii)-(vi).

**Number 3**: National Grid will modify its customer billing systems, and any new billing system(s), to save the customer designations made in numbers (1) and (2) above.  *Id.*, ¶ 4.06(a). National Grid will not place Automated Collection Calls to the designated cell phone numbers unless a customer provides explicit new consent.  *Id.*, ¶ 4.06(b)-(d).

**Number 4**: National Grid will notify its Third-Party Debt Collection Agencies of no consent/wrong number designations by National Grid's customers and require that those Debt Collection Agencies do not send Automated Collection Calls to those customers'  designated cellular phone numbers.  *Id.*, ¶ 4.06(e)(i).

**Number 5**: National Grid will require its Third-Party Debt Collection Agencies to report back any do-not-call or wrong number designations they receive from National Grid customers and National Grid will use that information to update its databases with the appropriate no-consent or wrong-number indicator.  *Id.*, ¶ 4.06(e)(ii).

**Number 6**: National Grid will modify its Third-Party Debt Collection Agency agreements to reflect numbers (4) and (5) above.  *Id.*, ¶ 4.06(e)(iii).

**Number 7**: Should National Grid or its vendors in the future employ outbound IVM calling campaigns, with an option to "press" a number their telephones indicating a wrong number or removing consent to receive additional debt collection Automated Collection Calls, such designation must be honored by National Grid.  *Id.*, ¶ 4.07.

**Number 8**:  National Grid will develop written TCPA compliance procedures and training for its employees responsible for making outbound collection calls.  *Id.*, ¶ 4.06(g).

**Number 9**: National Grid will ensure that all outbound prerecorded messages sent by its Credit and Collections dept. and Consumer Advocacy Group and its first-party calling Vendors to New York customers comply with GBL § 399-p(3).  *Id.*, ¶ 4.06(f).

**Number 10**:  National Grid will undertake an independent TCPA compliance review, and in its discretion adopt all reasonable recommendations resulting from that independent review.  *Id.*, ¶ 4.05.

        **C.**      **The Class Notice Plan**

The Settlement requires a comprehensive Notice Plan to the Settlement Class that requires the Parties' chosen settlement and claims administrator, Angeion Group, LLC ("Angeion" or "Claims Administrator"), to directly notify – via mail or email notice – all National Grid's current and former utility customers from January 1, 2006 to the present that can be identified with reasonable diligence.  *See id.*, ¶¶ 7.01, 7.02, 8.02, 8.04; *see also* Declaration of Steven Weisbrot ("Weisbrot Decl."), ¶¶ 13-25 (describing the direct notice campaign).

In addition to the direct notice program, a long-form notice will be posted and available to the public in English and Spanish on a Settlement Website created and maintained by Angeion.  *See* Agreement, ¶¶ 2.36, 7.05, 8.03.  The website will also include important case dates, deadlines, and documents, including an electronic Claim Form that can be completed on the website itself.  *See id.*  Angeion will also publicize the Settlement in New York, Massachusetts, and Rhode Island via streaming radio (*e.g*., Pandora and iHeart radio) and social media platforms (*e.g*., Facebook and Instagram) by targeting Settlement Class Members based on their interests and geography.  *See id.,* ¶ 8.07; Weisbrot Decl., ¶¶ 26-40, 42.  The Notice Plan

will include a paid search campaign on Google to drive potential Settlement Class Members to the Settlement Website.  *See* Agreement*, ¶ 8.02; Weisbrot Decl., ¶ 41.

### D.  Settlement Administration

Angeion will implement the Notice Plan described above, manage the claims process, and distribute the Settlement Fund.  All timely and valid claimants will receive a *pro rata* Settlement Class Member Payment.  *Id.*, ¶¶ 7.04(d), 9.02-9.04.  If economically feasible, the Claims Administrator will distribute any un-cashed payments on a *pro rata* basis to Settlement Class Members who cashed settlement checks.  *Id.*, ¶ 7.04(e).  If any additional distributions are not feasible and practical, or if there are funds remaining in the Net Settlement Fund following such additional distribution, the remaining balance of the Net Settlement Fund shall be distributed *cy pres* to the National Consumer Law Center, a nonprofit organization that, among other things, promotes and advocates compliance with the TCPA, which will be identified on the Settlement Website and subject to entry of the Final Approval Order.  *Id.*, ¶ 7.04(f).

### E.  Attorneys' Fees and Expenses and Plaintiffs' Service Awards

Class Counsel will seek approval by the Court of an award of attorneys' fees not exceeding 33% of the Settlement Fund and reimbursement of reasonable costs and expenses, to be paid from the Settlement Fund.  *Id.*, ¶ 5.01.  Plaintiffs will also request service awards of up to $10,000 each in recognition of the significant time and effort they personally invested in this litigation, including but not limited to consulting with Class Counsel, participating in an extensive discovery process (including sitting for depositions for five of the six Plaintiffs), and providing information necessary for the prosecution of this case, without which this Settlement would not be possible.  *Id.*, ¶ 6.01.

F.       **Class Members Will Release Their Collections-Related TCPA Claims.**

In exchange for the benefits afforded by the Settlement, Settlement Class Members will release National Grid only from claims arising from the conduct alleged in this case.  The release is set forth in more detail in Paragraphs 2.28 and 13.01 to 13.02 of the Settlement.

## ARGUMENT

I.       **Overview of the Class Settlement Approval Process.**

"There is a 'strong judicial policy in favor of settlements, particularly in the class action context." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *Gross v. Wash. Mut. Bank, F.A.*, No. 02-cv-4135(RML), 2006 WL 318814, at *4 (E.D.N.Y. Feb. 9, 2006) ("[T]he law looks favorably upon class action settlements because avoiding a trial conserves scarce judicial resources.").

Pursuant to Rule 23(e), a class action settlement must be approved by the presiding court before it can become effective.  The process for court approval is comprised of two stages:

(1)      Preliminary approval of the proposed settlement and direction of notice to the class; and

(2)      A final approval hearing, at which the Court considers argument concerning the fairness, adequacy, and reasonableness of the proposed settlement.

*See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).

II.      **The Proposed Settlement Meets the Standards for Preliminary Approval.**

The approval of a proposed class settlement is within the sound discretion of the Court. *See Victoria Perez v. Allstate Ins. Co.*, No. 11-cv-1812 (AKT), 2019 WL 1568398, at *1 (E.D.N.Y. Mar. 29, 2019) (citation omitted).  At the preliminary approval stage, there is no need to conduct a trial on the merits.  *See* 4 William B. Rubenstein, Newberg on Class Actions

§ 13:10 (5th ed. 2021).  Rather, "[p]reliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement … To grant preliminary approval, the court need only find that there is 'probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness.'" *Victoria Perez*, 2019 WL 1568398, at *1 (citation omitted).

In evaluating a motion for preliminary approval, the court conducts a preliminary assessment of the factors that will be evaluated at the final settlement approval stage.  Fed. R. Civ. P. 23(e)(1).  The ultimate touchstone for that analysis is whether the proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Courts in this Circuit apply the "*Grinnell* factors" in evaluating the *substantive* fairness of class settlements:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).  Courts also look at procedural fairness of the settlement to ensure that it is not the product of collusion.  *See Chen v. XpresSpa at Terminal 4 JFK LLC*, No. 15-cv-1347 (CLP), 2021 WL 4487835, at *4 (E.D.N.Y. Oct. 1, 2021).  Courts "examine both procedural and substantive fairness" in light of the strong judicial policy favoring settlements of class action suits.  *Babcock v. C. Tech Collections, Inc.*, No. 14-cv-3124 (MDG), 2017 WL 1155767, at *4 (E.D.N.Y. Mar. 27, 2017) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

Additionally, Rule 23(e)(2) establishes factors for a court's consideration, which overlap considerably with the *Grinnell* factors.  *See* Fed. R. Civ. P. 23(e)(2) (court must consider whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of any proposed award of attorney's fees, including timing of payment, and any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other); *In re Namenda*, 462 F. Supp. 3d at 311 ("The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors and focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.") (citation omitted).

The Settlement is fair, reasonable, and adequate and readily satisifes all applicable standards for preliminary class action settlement approval.

### A.     Plaintiffs and Class Counsel Zealously Represented the Class (Fed. R. Civ. P. 23(e)(2)(A)).

Plaintiffs and Class Counsel prosecuted this action on behalf of the Settlement Class with vigor and dedication for more than six years, with no guarantee of recovery.  As summarized above and further detailed in their Joint Declaration, Class Counsel thoroughly investigated the factual and legal issues involved, conducted extensive discovery, and engaged in substantial litigation of the legal issues in prosecuting the claims here.  As reflected in more than 730 docket entries, this case involved an enormous amount of legal work.  Class Counsel litigated a high number of motions or requests, including six motions to dismiss, dozens of motions to compel against both National Grid and its Third-Party Debt Collection Agencies, fully briefed a motion

for class certification and three separate *Daubert* motions, and opposed Defendants' summary judgment requests.  Joint Decl., ¶¶ 35-54, 89-107.  Class Counsel argued more than 20 hearings and conferences before Judges Brown and Lindsay.  *Id.*, ¶ 55.  Discovery was particularly extensive in scope and complexity.  Class Counsel reviewed hundreds of millions of lines of data produced by National Grid and its Vendors and Third-Party Debt Collection Agencies, took 38 depositions, defended five Plaintiff depositions, and litigated dozens of discovery-related motions.  *Id.*, ¶¶ 55-94.

Likewise, Plaintiffs were actively engaged and each (save Ms. MacKenzie whose related lawsuit was stayed) provided deposition testimony, produced documents, responded to written discovery requests and regularly communicated with Class Counsel up to and including evaluating and approving the Settlement.  *Id.*

**B.** **The Settlement Is the Product of Arm's-Length Negotiations by Experienced Counsel and Is Informed by Extensive Discovery and Litigation (Fed. R. Civ. P. 23(e)(2)(B); *Grinnell* Factor 3).**

"A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation."  *In re Namenda*, 462 F. Supp. 3d. at 311 (citation omitted); *see also Victoria Perez*, 2019 WL 1568398, at *1 (approved settlement was "the result of extensive, arms'-length negotiations by counsel, well-versed in the prosecution of [pertinent] class and collective actions," and was reached with the assistance of an "experienced class- action…mediator," which "reinforces the non-collusive nature of the settlement"); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484(JS)(AKT), 2017 U.S. WL 1169552, at *2 (E.D.N.Y. Mar. 29, 2017) (Seybert, J.) (adopting *Report and Recommendation* granting preliminary approval because "the proposed [class action] settlement was negotiated after 'serious, informed, and non-collusive negotiations.'").

12

The Settlement here is the product of extensive arms-length negotiations with the assistance of a respected mediator and retired federal district judge, the Hon. Wayne Andersen. Joint Decl., ¶¶ 108-117.  These negotiations ultimately resulted in the Parties reaching an agreement in principle, but with significant terms still requiring finalization.  *Id.*, ¶ 113.  The Parties thereafter worked hard for months to negotiate the non-monetary relief terms and the terms of the class Notice Plan, draft the Agreement and exhibits, and select the Claims Administrator.  *Id.*, ¶ 114.  Throughout the negotiations, the Parties were represented by experienced and well-qualified counsel on both sides.  Class Counsel have extensive experience prosecuting and resolving class actions and other complex cases, including large TCPA cases. Joint Decl., ¶¶ 126-132.[4]   In negotiating the Settlement, Class Counsel were well informed about the facts and law specific to this case, as a result of their substantial pre-filing investigation, their ongoing legal research, and their extensive discovery efforts, as detailed above.  *See supra.* Class Counsel were thus well-situated to evaluate the relative strengths and weaknesses of the Parties' positions, and to negotiate a fair, reasonable, and adequate settlement.  *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (presumption of fairness where parties were represented by experienced counsel and the case "proceeded well into…discovery before settlement was reached.").

**C.    The Settlement Represents a Strong Result for the Settlement Class, Particularly Given the Substantial Risk and Challenges They Face (Fed. R. Civ. P. 23(e)(2)(C); *Grinnell* Factors 1 & 4-9).**

The Settlement represents an excellent result, including substantial monetary relief and injunctive relief designed to bring National Grid into compliance with the TCPA.  This relief is particularly impressive in light of the substantial risks faced by the Settlement Class here and the

---

[4] The qualifications detailed in this *Memorandum* and in the accompanying Joint Declaration also support appointment of Plaintiffs' counsel as Class Counsel pursuant to Rule 23(g).

considerable time and effort that would still be required to successfully litigate this case through trial and an inevitable appeal (if Plaintiffs won certification of one or more proposed classes).

National Grid will pay $38.5 million, none of which will revert to National Grid, and is one of the largest TCPA class settlements ever.  Agreement, ¶¶ 4.01, 4.03.  The Settlement is good result for Settlement Class members, providing them with real, certain monetary relief without having to wait years for this Action to conclude or endure the risks that National Grid will prevail and foreclose any relief to the Settlement Class.  Class Counsel estimates that payments to the claiming Settlement Class members will range between $50 - $150 each, depending on the number of claims submitted.

The estimated actual payment to each claimant compares favorably with other approved TCPA settlements.  *See e.g., Vasco v. Power Home Remodeling Group LLC*, No. 15-cv-4623, 2016 WL 5930876, at *8, 8 n.76 (E.D. Pa. Oct. 12, 2016) (individual distributions to class member of "slightly higher than $27.00" "is consistent with" other TCPA class action settlements, including a TCPA class action settlement with Walgreens that generated $30 distributions, with Capital One that generated $34.60 distributions, and with Bank Of America that generated $20 to $40 distributions).

In addition to the monetary relief, National Grid has agreed to implement new and significant policy and practice reforms designed to prevent the TCPA violations alleged in this Action and to provide current and former National Grid customers the means to prevent robo-calls from National Grid.  *See* Section II.B.2, *supra*.  That non-monetary relief is nothing less than a wholesale revamping of National Grid's TCPA compliance procedures.  The agreed-upon changes include providing National Grid's new and current utility customers with multiple ways to prevent collection robo-calls to their cell phones, requiring that do-not-call or wrong number

designations are recorded in National Grid's computer systems and honored by National Grid

and its Vendors and Third-Party Debt Collection Agencies, instituting and conducting TCPA

employee training and compliance procedures, and undertaking an independent TCPA

compliance review.  Agreement, ¶¶ 4.05-4.07.  These changes will matter not only to Settlement

Class Members, but to all National Grid customers who will now have the means to avoid

unwanted robo-calls.  *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343

(2020) ("Americans … are largely united in their disdain for robocalls."); *George v. Shamrock*

*Saloon II, LLC*, No. 17-cv-6663(RA)(SLC), 2021 WL 3188314, at *3, *7 (S.D.N.Y. July 28,

2021) (approving TCPA class settlement with *zero* monetary relief because injunctive relief of

deleting phone numbers on National Do Not Call Registry and improving TCPA policies

"furthers the purpose of the TCPA" and "is therefore meaningful and of cognizable value").

　　　　The result achieved for the Settlement Class here is particularly strong given the

significant risks, challenges, and substantial complexities of continued litigation.  Plaintiffs'

motion for class certification was pending prior to Settlement.  While Plaintiffs strongly believe

that class certification was warranted here, National Grid has serious arguments against

certification.  If the Court denied class certification, the vast majority of Settlement Class

Members would realistically be left with no relief.  For example, National Grid argued that it

would have to challenge, on a call-by-call basis, whether each call recipient provided prior

express consent that may have permitted the robo-calls, and that this inquiry would defeat

predominance.  In addition, one of the litigation classes Plaintiffs sought to certify includes

individuals who received robo-calls to a wrong number.  Although many courts have certified

"wrong-number" classes, others have declined to do so, finding the class not ascertainable, the

individual question of who is a non-customer predominating over common questions or the

process of identifying class members unmanageable.  *See e.g.*, *Sandoe v. Bos. Sci. Corp.*, No. 18-cv-11826, 2019 WL 5424203 (D. Mass. Oct. 23, 2019) (denying class certification); *Tomeo v. CitiGroup, Inc.*, No. 13-cv-4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) (same).

Even if Plaintiffs succeeded at certifying one or more litigation classes (and avoided or prevailed on an interlocutory appeal of that order), they would then face the challenges of summary judgment and trial.  Further, the Parties would need to complete discovery, much of which the Court put on hold pending a ruling on class certification.  Joint Decl., ¶¶ 93-94.  Plaintiffs anticipate that adjudicating additional discovery disputes would be as contentious as the wide-ranging discovery disputes to date, as well as time-consuming.  *Id.*  While Plaintiffs believe that these obstacles are surmountable, they are indicative of the substantial risks that the Settlement Class would face if the litigation were to continue.  The proposed Settlement provides excellent relief while allowing Settlement Class Members to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

The Settlement also provides prompt relief.  Proceeding to trial could add years to the resolution of this litigation, given the legal and factual issues raised and likelihood of appeals.  *See Velez v. Majik Cleaning Serv., Inc.*, No. 03-cv-8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (proposed settlement "benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial").  Given the risks and delay, the Settlement satisfies Rule 23(e)(2)(C) and *Grinnell* factors 1 and 4-9.  *See Gross,* 2006 WL 318814, at *5 ("With respect to the reasonableness of the settlement fund in light of the best possible recovery, the court may give credence to the opinions of experienced attorneys in assessing this comparison.").

**D.    The Settlement Treats Settlement Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D).**

Pursuant to the Settlement, all Settlement Class Members will have the same right to a *pro rata* share of the Net Settlement Fund.  Agreement ¶¶ 4.01, 9.01-9.03.  Moreover, the non-monetary consideration—policies and procedures designed to ensure National Grid's compliance with the TCPA—will benefit all Settlement Class Members, and indeed all National Grid customers, by decreasing the likelihood that they receive a robo-call to a cellular phone without their consent in violation of the TCPA.  *Id.*, ¶¶ 4.05-4.07.

**E.    The Additional Rule 23(e) Factors Support Granting Preliminary Approval.**

Rule 23(e)(2)(C)(ii) requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  The proposed method of processing claims and distributing relief is fair, reasonable, and straightforward.  All Settlement Class Members will be eligible to submit a short Claim Form using a postage-prepaid claim form or electronically on the Settlement Website.  *Id.*, ¶¶ 7.05, 9.01.  The Claim Form will simply require Class Members to provide basic information about themselves and certify that they received one or more violative calls.  *Id.,* ¶ 9.02; Ex. C-1.  If any Settlement Class Member submits an invalid Claim Form, the Claims Administrator will notify them of the deficiency and provide them with 35 days to re-submit a corrected Claim Form.  *Id.*  Class Counsel are available to assist Settlement Class Members with curing any Claim Form deficiencies.  *Id.*

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment."  Here, the Agreement provides that Class Counsel will seek attorneys' fees and expenses in a total amount not to exceed 33% of the Settlement Fund, subject to Court approval.  *Id.*, ¶ 5.01.  A one-third percentage is consistent with the

normal range awarded in this Circuit.[5]  Class Counsel will file their motion for attorneys' fees

and expenses, in advance of the deadline for Settlement Class Members to opt-out or object, and

it will be available on the Settlement Website after it is filed.  Settlement Class Members will

thus have the opportunity to comment on or object under Fed. R. Civ. P. 23(h).

Finally, there are no agreements between the Parties other than the Settlement.  Fed. R.

Civ. P. 23(e)(3) ("the parties seeking approval must file a statement identifying any agreement

made in connection with the proposal").

## III.   The Court Should Hold That It will Likely Certify the Settlement Class.

When a settlement is reached before certification, a court must determine whether to

certify the settlement class.  *See Berni v. Barilla S.p.A.,* 964 F.3d 141, 146 (2d Cir. 2020*)*; *In re*

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720 (MKB)(JO),

2019 WL 6875472, at *14-15 (E.D.N.Y. Dec. 16, 2019).  Certification of a settlement class is

warranted when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are

satisfied.  *See In re Cablevision Consumer Litig.*, No. 10-cv-4992(JS)(AKT), 2014 WL 1330546,

at *5 (E.D.N.Y. Mar. 31, 2014) (Seybert, J.).  Certification of the Settlement Class is warranted

here.  *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995)

("The settlement class device has been recognized throughout the country as the best, most

practical way to effectuate settlements involving large numbers of claims by relatively small

claimants.") (citations and quotation marks omitted); *Krakauer v. Dish Network, L.L.C.*, 925

F.3d 643, 659, 663 (4th Cir. 2019) (TCPA claims are "amenable to class action resolution"

---

[5] *See, e.g.*, *Cymbalista v. Jpmorgan Chase Bank, N.*A., No. 20-cv-456 (RPK)(LB), 2021 U.S. Dist. LEXIS 99093, at *22 (E.D.N.Y. May 25, 2021) ("Courts in this Circuit frequently find that requests for attorney's fees which are approximately one-third of a class action's settlement amount are reasonable.") (citing *Rosenfeld v. Lenich*, No. 18-cv-6720(NGG)(PK), 2021 U.S. Dist. LEXIS 26950, at *19 (E.D.N.Y. Feb. 4, 2021) and *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019)).

because "the advantages of class resolution follow directly from the statute [which] creates a simple scheme for determining if a violation occurred, whether a defense is available, and what the damages ought to be.").

> **A.   The Requirements of Rule 23(a) Are Satisfied.**
>
> > **1.   Numerosity (Rule 23(a)(1))**

Based on the records produced by National Grid, there are millions of Settlement Class Members.  Agreement, ¶¶ 4.10, 7.02.  Numerosity is presumed with 40 or more class members.  *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *accord In re Cablevision*, 2014 WL 1330546, at *6.  Numerosity is plainly satisfied here.

> > **2.   Commonality (Rule 23(a)(2))**

"Commonality is satisfied where a *single* issue of law or fact is common to the class."  *In re Cablevision*, 2014 WL 1330546, at *6 (emphasis in original) (citing *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)).  Commonality is a "minimal burden for a party to shoulder."  *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (citation and quotation marks omitted).  In this case, Plaintiffs' and the Settlement Class Members' claims share common questions, including (1) whether calls made to Class Members' cellular telephone numbers used an artificial or prerecorded voice; (2) whether National Grid is vicariously liable for robo-calls made by its Vendors and Third-Party Debt Collection Agencies; (3) whether Class Member requests to stop calling can be identified based on the business records of National Grid or its agents; and (4) whether National Grid's alleged TCPA compliance failures were willful.  The answers to these questions can be determined through common analyses of classwide materials.  Commonality is satisfied.

3.      Typicality (Rule 23(a)(3))

Typicality is satisfied "when each class member's claim arises from the same course of events and each Class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp.*, *Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citations and quotation marks omitted).  In other words, the Plaintiffs can bring claims "for the same type of injury under the same legal theory as the rest of the class." *Marshall v. Deutsche Post DHL*, No. 13-CV-1471 RJD JO, 2015 WL 5560541, at *3 (E.D.N.Y. Sept. 21, 2015); *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) (same).

Plaintiffs bring their TCPA claims, and previously their claims under New York GBL §399-p, for the same type of injuries under the same legal theory as the Settlement Class.  Each Plaintiff received collection-related calls on a cellular telephone from or on behalf of National Grid, using an artificial or prerecorded message, without their prior express consent.  Joint Decl., ¶¶ 24-30.  Plaintiffs' claims are typical.  *See e.g.*, *Brown v. DirecTV*, 330 F.R.D. 260, 267 (C.D. Cal. 2019) (TCPA claims typical because based on same TCPA injury and same lack of prior express consent); *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 700 (S.D. Fla. 2018) (same); *Lavigne v. First Community Bancshares, Inc.*, No. No. 15-cv-934-WJ/LF, 2018 WL 2694457, at *5 (D.N.M. June 5, 2018) (same).

4.      Adequacy of Representation (Rule 23(a)(4))

Adequacy under Rule 23(a)(4) turns on "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *accord Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  Here, Plaintiffs' and the Settlement Class members' interests align because they were all harmed by the same alleged violations of the TCPA and seek the same remedy for those

20

violations.  Plaintiffs have no conflict of interests with other Class members.  *See Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (certifying TCPA class).  Further, Plaintiffs have been actively and continually involved in this litigation, expending significant time and energy to stop National Grid's alleged unlawful actions and seek compensation for others similarly harmed.  Joint Decl., ¶¶ 85-88.

The second requirement is satisfied because Plaintiffs have retained counsel who are experienced and qualified to handle these TCPA class claims. Joint Decl., ¶¶ 126-132.  Class Counsel have extensive experience representing consumer and TCPA classes, *id.*,  and have vigorously litigated this action on behalf of the Settlement Class, conducted extensive investigation and discovery, negotiated the proposed Settlement, and have and will continue to fairly and adequately protect the interests of the Settlement Class.

### B.      The Requirements of Rule 23(b)(3) Are Satisfied.

In addition to the requirements of Rule 23(a), Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

#### 1.      Predominance

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).  Rule 23(b)(3)'s predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the

21

issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (citation and quotations omitted).  Predominance is "readily met" in consumer cases where, as here, the common factual questions necessarily center upon ServCo's and ServCo's agents course of conduct.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 273 (E.D.N.Y. 2019) (same).

Here, the predominance requirement of Rule 23(b)(3) is satisfied because common questions present a significant aspect of the case and can be resolved for all Settlement Class members in a single adjudication.  Common issues predominate because the claims of the Settlement Class members arise from National Grid's and its debt collectors' alleged common practice of robo-calling consumers on their cell phones without their consent.  *Melito v. American Eagle Outfitters, Inc.*, No. 14-cv-2440 (VEC), 2017 WL 3995619, at *8 (S.D.N.Y. Sept. 11, 2017) (finding predominance for TCPA settlement class).

2.      Superiority

Because the claims are being certified for purposes of settlement, there are no issues with manageability.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there will be no trial.").  And, resolution of many thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 57 (E.D.N.Y. 2019).

C.      **The Settlement Class is Ascertainable.**

The Settlement Class is ascertainable because "it is defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobras Sec. Litig.*, 862 F.3d 250, 257, 264-65 (2d Cir. 2017).  The criteria that define the Settlement Class here are "clearly

objective," because they include objective metrics that inherently determine membership within the Settlement Class.  Persons who received five specific types of collection-related robo-calls from National Grid or its Vendors and Third-Party Debt Collection Agencies within the Class Period are Settlement Class Members.  *See* Agreement, ¶ 2.30 (Settlement Class Definition).  Anyone who did not receive such calls within the Class Period is not in the Class.  The Settlement Class is therefore ascertainable.[6]

**IV.**     **The Proposed Notice Plan Complies with Rule 23 and Due Process.**

The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Where certification of a Rule 23(b)(3) settlement class is sought, the notice must also comply with Rule 23(c)(2)(B), which requires:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notice Plan (Agreement, ¶¶ 7.05, 8.02-8.08) meets all applicable standards.  The Notice Plan, which was designed by the Parties and Angeion, includes direct notice to Settlement Class Members sent via mail or email, the establishment of a Settlement Website—where Settlement Class Members can complete a Claim Form, view the full Settlement Agreement, the detailed long-form notice, and other key case documents—and the establishment of a toll-free telephone number where Settlement Class Members can get additional information.  *Id.*  The

---

[6] In addition, and as discussed above (*see* Section II. E.), the Notice Plan requires recipients of the Claim Form to certify whether they are Settlement Class Members.

proposed forms of notice (Agreement Exhibits C-G) inform Settlement Class Members, in clear and concise terms, about the nature of this case, the Settlement, and their rights, including all of the information required by Rule 23(c)(2)(B).

In addition, notice of the Settlement will be publicized in New York, Massachusetts, and Rhode Island by streaming media (*e.g.,* Pandora and iHeart radio) and social media platforms (*e.g.*, Facebook and Instagram).  Agreement, ¶ 8.07.  The Notice Plan also includes a paid search campaign on Google to drive potential Settlement Class Members to the settlement website.  *See id.,* ¶ 8.02; Weisbrot Decl., ¶ 41.  The Court should approve the proposed Notice Plan.

## V.      The Court Should Schedule a Final Approval Hearing and Related Dates.

The next steps in the settlement approval process are to notify Settlement Class Members of the Settlement and permit them to file claims, opt out or object, and then hold a Final Approval Hearing.  To those ends, the Parties propose the following schedule:

| | |
|---|---|
| Settlement Notice Date | **February 11, 2022 or 40 days after entry of the Preliminary Approval Order, whichever date is later** |
| Last day for Plaintiffs and Settlement Class Counsel to file motion for attorneys' fees, expenses, and service awards | **60 days after Settlement Notice Date** |
| Last day for Settlement Class Member to file Claim Forms (excluding time set forth in the Settlement to correct errors or omissions in filed Claim Forms) | **90 days after Settlement Notice Date** |
| Opt-Out Deadline/Objection Deadline | **90 days after Settlement Notice Date** |
| Last day for the parties to file any motions for final settlement approval, including any responses to objections | **14 days before the Final Approval Hearing** |
| Final Approval Hearing | **_____, 2022** |

## **CONCLUSION**

For the reasons set forth above and in the accompanying materials, Plaintiffs respectfully request that the Court enter an order: (1) granting preliminary approval of the proposed Settlement; (2) holding that it will likely certify the Settlement Class for settlement purposes; (3) appointing Plaintiffs as Class Representatives representing the Settlement Class; (4) appointing Class Counsel for the Settlement Class; (5) approving the proposed Notice Plan, including the proposed forms of notice, and directing that notice be disseminated pursuant to such Notice Plan and Fed. R. Civ. P. 23(e)(1); (6) appointing Angeion as the Claims Administrator and directing Angeion to carry out the duties and responsibilities of the Claims Administrator specified in the Settlement; (7) setting deadlines for Settlement Class Members to submit claims for settlement payments, to request exclusion from the Settlement Class, or to object to the Settlement; (8) staying all non-Settlement-related proceedings in this lawsuit pending final approval of the Settlement; and (9) scheduling a Final Approval Hearing and related dates in connection with the final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

Dated:  October 29, 2021                    Respectfully submitted,

                                            By:  __/s/ Jonathan D. Selbin_____
                                                  Jonathan D. Selbin

                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                            Jonathan D. Selbin
                                            Email: jselbin@lchb.com
                                            Douglas I. Cuthbertson
                                            Email: dcuthbertson@lchb.com
                                            John T. Nicolaou
                                            Email: jnicolaou@lchb.com
                                            Avery S. Halfon
                                            Email: ahalfon@lchb.com
                                            250 Hudson Street, 8th Floor
                                            New York, NY 10013-1413
                                            Telephone: (212) 355-9500

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice*)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000


TUSA P.C.
Joseph S. Tusa
Email: joseph.tusapc@gmail.com
55000 Main Road, 2nd Fl.
P.O. Box 566
Southold, NY 11971
Telephone: (631) 407-5100

**Attorneys for Plaintiffs**
**and Proposed Class Counsel**