Gregory R. Bronner

149 West 136th Street #1

New York, NY 10030

917 861 1769

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JAN 2 6 2022   ★

LONG ISLAND OFFICE

**Jenkins v. National Grid USA Service Company, Inc., No. 2:15-cv-01219-JS-ARL (E.D.N.Y.)**

To whom it may concern:

Standing:

I believe that I am a member of the Settlement Class in the above case by virtue of

- Having had a cellular telephone at the number mentioned above
- Having lived in the service region of National Grid, and having subscribed to gas service from them until mid 2012, and possibly via having used them at a rental apartment in Brooklyn in 2018-19.
- Having received one or more automated phone calls from the defendant or its agents in 2011 or 2012 or in 2018/19

Furthermore, I am an interested member of the public, as I own rental property that subscribes to National Grid services, and most of my family members are customers of National Grid as well.

The TCPA

TCPA I.iii states

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

At the time of passage (1990 or so), cellular telephones were billed by the minute, and cellular telephone plans included a fixed number of minutes, along with a 'penalty' rate that could be quite substantial for overages against a pre-contracted number of minutes. Cellular telephone users could run up very significant bills by answering incoming calls, and such low-priority calls clogged the then very-limited cellular networks of the time; this bill was intended to balance the costs to the users (around 1-2$ per call) with potential compliance costs (~$500) per call.

Compliance with this bill was relatively straightforward – cell phones either had their own area codes (e.g. 917) or specific exchange code prefixes within an area code.

### Wireless Telephones

The TCPA specifically mentions **cellular** phones and **any service for which the called party is charged for the phone**

The TCPA does not mention **cordless** or **wifi** or other telephone connections in which a radio is used to connect the handset to a **customer controlled base station.**

### Smart Phones

In 2007, Apple release the first iPhone, likely the first mass-market smart phone. It, and subsequent smartphones contained multiple radios allowing it to function **both**

- As a cellular telephone
- As a wireless telephone

This was a tremendous boon for many users, as this allowed owners to use voice services 'for free' over wifi, or by using cellular **data** that was not billed by the minute, and for which the called party had usually contracted to buy a large bucket of data of which the voice data was usually a minute part.

In most phone operating systems, the user has a choice as to which network (cellular or wifi) calls should be routed via. In many cases, the default is to 'prefer wifi calling', meaning that many such calls to smart phones **are not to cellular phones**.

In effect, by opting into such a choice, the smart phone owner waives the obligation of the caller of attempting to determine whether the phone in question is a cellular phone or a wireless phone, as the phone number will effectively switch dynamically as the owner moves it around.

### Number Portability

Early cellular phones had numbers that were easily distinguishable from land line numbers.

The Telecommunications Act of 1996 removed this distinction, and allowed owners of landlines to retain the same number as a cellular or wireless number. Thus, at any time, a 'safe' number such as a landline can be transformed into a cellular number subject to the TCPA. Because compliance with such a rule is largely impossible, absent explicit notification to all billers, those who have availed themselves of number portability should be exempted from this settlement absent some indication that they notified National Grid that their number was explicitly a cell number.

### Number Forwarding

Many virtual phone number services such as Ooma or Google Voice or Grasshopper exist, and those numbers may be forward calls to

- A cellular telephone
- A wireless phone
- A 'soft phone' running on a user's computer
- An answering service
- Et cetera

Such numbers are not 'assigned to a cellular telephone service' within the definition of the TCPA.

### Objection

115 of the Third Amended Complaint refers to **cellular telephone numbers**, while the TCPA refers to **'numbers assigned to a cellular telephone service'**

Due to significant changes in telecommunications infrastructure, numbers are no longer specifically assigned to a cellular telephone service except at or near call connection times, or that their number had not been recently reassigned from a landline to a mobile device.

The plaintiffs have not alleged that:

1. They did not possess a 'smart phone'
2. They did not elect to receive any calls over wifi
3. They did not convert their phone from landline to cellular service during the course of their relationship with National Grid, or that they informed National Grid of this change
4. That the numbers that they provided to National Grid were direct numbers and not Number Fowarding numbers
5. That at the specific time and location when they received each call that their phone received it while acting as a cellular telephone, and not as a wireless telephone.

Furthermore nothing in the evidence suggests that this is the case.

Other members of the purported class have not been asked to certify this as well, meaning that the number of potential claimants is far smaller than the prospective class.

### Conclusion

This settlement asks that National Grid, a regulated utility providing power and gas to millions of New Yorkers, pay approximately $10 **per customer**, to a bunch of lawyers and people who received legitimate business phone calls based on potential technical violations of a statute crafted for a technological era that is long obsolete.

Most recipients of these calls suffered no discernable or measurable costs or damages beyond what users of traditional landlines experienced. The phone calls were made, in many cases, by debt collectors who are essential to the public's need to maintain safe and affordable access to power and gas, and such a settlement is not in the public interest.

For this reason, I, a member of the public and potential Class Claimant, ask that you

- Not certify the class as described
- Require affirmative proof that phone calls were unambiguously made to numbers permanently assigned to a cellular telephone.

## Further Minutia:

- I am not represented by any lawyer in this matter
- I do not wish to appear at the final approval hearing
- I have never filed an objection to any other class action hearing, nor have I engaged an attorney to do so
- I do not intend to testify at the final approval hearing, and do not wish to nominate anyone in my stead

Thank you,

*[signature]*

Gregory R. Bronner

Mr. Gregory R. Bronner
149 W 136th St.
New York, NY 10030

NEW YORK NY 100
24 JAN 2022 PM 7 L

Clerk of the Court
USDC for the eastern district
100 Federal Plaza
Central Islip NY 11722

11722-443800