## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JARRETT JENKINS, EMMOT STEELE, FRANCES ROYAL, DANAI EWAN, and CHARMAINE WHYTE, on behalf of themselves and all others similarly situated, | Case No. 15-cv-1219<br><br>Hon. Joanna Seybert, U.S.D.J.<br>Hon. Arlene R. Lindsay, U.S.M.J. |
| Plaintiffs, | |
| -against- | |
| NATIONAL GRID USA SERVICE COMPANY, INC., KEYSPAN GAS EAST CORPORATION, NIAGARA MOHAWK POWER CORPORATION, and THE BROOKLYN UNION GAS COMPANY, | |
| Defendants. | |

## PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

PLEASE TAKE NOTICE that pursuant to FED. R. CIV. P. 23 and upon the accompanying *Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement*, the Declaration of co-Class Counsel Joseph S. Tusa ("Tusa Decl.") and the Declaration of Brian Devery ("Devery Decl."), Senior Project Manager with Angeion Group, LLC ("Angeion or "Claims Administrator"), Plaintiffs Jarrett Jenkins, Emmot Steele, Francis Royal, Danai Ewan, Charmaine Whyte, and Kristen MacKenzie ("Plaintiffs"), will hereby move this Court on June 24, 2022, at 9:30 a.m. in the United States Courthouse for the Eastern District of New York, 100 Federal Plaza, Central Islip, New York 11722, Courtroom 1030, for final approval of the *Settlement Agreement and Release* (Dkt. 733-1) (the "Settlement" or "Settlement Agreement") and entry of the proposed *Final Order and Judgment,* annexed as **Exhibit A** hereto.

PLEASE TAKE FURTHER NOTICE that Plaintiffs and Class Counsel believe that the proposed Settlement is fair, reasonable, and adequate and, therefore, that the Court should enter the proposed *Final Order and Judgment*, which, among other things: (1) grants Final Approval of the

Settlement Agreement as fair, reasonable, and adequate under Rule 23 and in conformity with *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974); (2) confirms the certification of the Settlement Class under Federal Rules of Civil Procedure 23(a) and 23(b)(3) for settlement purposes; (3) confirms the appointment of Plaintiffs as the named representatives for the proposed Settlement Class; (4) confirms the appointment of Joseph S. Tusa of Tusa P.C. and Jonathan D. Selbin, Daniel M. Hutchinson, Douglas I. Cuthbertson, and John T. Nicolaou of Lieff Cabraser Heimann & Bernstein, LLP as Class Counsel; (5) confirms that the completed Notice Plan satisfied Rule 23 and due process; (6) upon the Effective Date, directs the Parties and Claims Administrator to implement the Settlement Agreement pursuant to its terms, including by (i) distributing Settlement Class Member Payments to Settlement Class Members who have filed timely and valid Claim Forms; (ii) approving other disbursements from the Settlement Fund and Net Settlement Fund as provided by the Settlement Agreement; and (iii) directing Defendants to implement the business practice changes pursuant to Section 4.06 of the Settlement Agreement; (7) upon the Effective Date, dismisses this Action and the related action *MacKenzie v. National Grid U.S.A. Service Co., Inc.*, E.D.N.Y. Case No. 2:19-cv-01916-JS, with prejudice, and in conformity with Section XIII of the Settlement Agreement; (8) retains jurisdiction over implementation of the Settlement and the terms of the Settlement, and Class Counsel's motion for attorneys' fees, expenses, and service awards; (9) awards service awards to Plaintiffs from the Settlement Fund; (10) awards attorneys' fees and the reimbursement of reasonable costs and expenses to Class Counsel, payable from the Settlement Fund; and (11) overrules all objections to the Settlement.

PLEASE TAKE FURTHER NOTICE that Defendants do not oppose Plaintiffs' motion for Final Approval, certification of the Settlement Class for settlement purposes, and entry of the proposed *Final Order and Judgment*.

Dated:  June 7, 2022

Respectfully submitted,

By: */s/ Joseph S. Tusa*
        Joseph S. Tusa
**TUSA P.C.**
Joseph S. Tusa
joseph.tusapc@gmail.com
P.O. Box 566
55000 Main Road, 2nd Floor
Southold, NY 11971
Tel. (631) 407-5100

**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
Jonathan D. Selbin
Email: jselbin@lchb.com
Douglas I. Cuthbertson
Email: dcuthbertson@lchb.com
John T. Nicolaou
Email: jnicolaou@lchb.com
Avery S. Halfon
Email: ahalfon@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500

       - and –

Daniel M. Hutchinson (*pro hac vice*)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

*Counsel for Plaintiffs
and Class Counsel*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JARRETT JENKINS, EMMOT STEELE, FRANCES ROYAL, DANAI EWAN, and CHARMAINE WHYTE, on behalf of themselves and all others similarly situated, <br><br><br>Plaintiffs, <br><br>-against- <br><br>NATIONAL GRID USA SERVICE COMPANY, INC., KEYSPAN GAS EAST CORPORATION, NIAGARA MOHAWK POWER CORPORATION, and THE BROOKLYN UNION GAS COMPANY, <br><br>Defendants. | Case No.  15-cv-1219 <br><br> Hon. Joanna Seybert, U.S.D.J. <br> Hon. Arlene R. Lindsay, U.S.M.J. |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT**

<u>**TABLE OF CONTENTS**</u>

**Page**

I.     INTRODUCTION ..................................................................................................... 1

II.    PROCEDURAL HISTORY ...................................................................................... 2

    A.    Pre-Filing Investigation................................................................................ 2

    B.    Pleadings and Motions to Dismiss .............................................................. 3

    C.    The Parties Completed Extensive Discovery and Motion Practice
        Prior to Mediation and Settlement .............................................................. 3

    D.    Class Certification and *Daubert* Briefing ................................................... 4

    E.    Settlement Negotiations............................................................................... 4

    F.    Preliminary Approval .................................................................................. 4

    G.    Class Counsel's and Plaintiffs' Motion for Attorneys' Fees and
        Service Awards ........................................................................................... 5

III.   SUMMARY OF THE SETTLEMENT................................................................... 5

IV.   ARGUMENT ......................................................................................................... 6

    A.    The Claims Administrator Implemented the Court-Approved Notice
        Plan, Complying with Rule 23 and Settlement Class Members' Due
        Process Rights ............................................................................................. 7

    B.    The Settlement is Procedurally Fair .......................................................... 10

    C.    The Settlement is Fair, Reasonable, and Adequate and in the Best
        Interests of the Settlement Class ............................................................... 11

        1.    *Grinnell* Factor #2:  The Reaction of the Class Has Been
             Overwhelmingly Positive .............................................................. 12

        2.    The Settlement Represents a Strong Result for the Settlement
             Class, Particularly Given the Substantial Risk and Challenges
             They Face (Fed. R. Civ. P. 23(e)(2)(C); *Grinnell* Factors 1 & 4-9) ................. 13

        3.    The Additional Rule 23(e) Factors Support Final Approval ........................... 16

    D.    The Court should Confirm Certification of the Settlement Class and
        Appointments of the Class Representatives and Class Counsel.................................... 17

**TABLE OF CONTENTS**
(continued)

Page

1.    The Numerosity Requirement Is Satisfied ........................................................ 18

2.    The Commonality Requirement is Satisfied .................................................... 18

3.    Plaintiffs' Claims Are Typical of The Settlement Class .................................. 19

4.    Plaintiffs and Settlement Class Counsel Adequately
      Represent The Settlement Class ...................................................................... 19

5.    The Settlement Class Satisfies Rule 23(b)(3) Predominance ......................... 19

6.    The Settlement Class Satisfies Rule 23(b)(3) Superiority .............................. 20

7.    The Settlement Class is Ascertainable ........................................................... 20

E.    The Objections to the Settlement Should be Overruled ............................................ 21

1.    Mr. Amado's Objection Should be Overruled ................................................ 22

2.    Mr. Bronner's Objection Should be Overruled ............................................... 22

3.    Mr. Wilson's Objection Should be Overruled ................................................. 23

4.    Messrs. Cabane's and Halpert's Objection Should be Overruled ................... 23

X.    CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES:**

*Abante Rooter & Plumbing v. Pivotal Payments,*
No. 16-cv-05486-JCS, 2018 U.S. Dist. LEXIS 232054 (N.D. Cal. Oct. 15, 2018) ................ 12

*Adams v. AllianceOne Receivables Mgmt., Inc.,*
No. 08-cv-00248-JAH-WVG, Dkt. 137 (S.D. Cal. Sept. 28, 2012) ........................................... 14

*Amchem Products, Inc. v Windsor,*
521 U.S. 591 (1997) ............................................................................................................ 18, 20

*Barr v. Am. Ass'n of Political Consultants,*
140 S. Ct. 2335 (2020) .............................................................................................................. 22

*Behzadi v. Int'l Creative Mgmt. Partners, LLC,*
No. 14-cv-4382(LGS), 2015 U.S. Dist. LEXIS 90117 (S.D.N.Y. July 9, 2015) ...................... 24

*Birchmeier v. Carribean Cruise Line, Inc.,*
302 F.R.D. 240 (N.D. Ill. 2014) ............................................................................................... 20

*Bostick v. Herbalife Int'l of Am.,*
No. 13-cv-02488-BRO, Dkt. No. 145 (C.D. Cal. May 14, 2015) .............................................. 14

*In re Cablevision Consumer Litig.,*
No. 10-cv-4992 JS AKT, 2014 U.S. Dist. LEXIS 44983 (E.D.N.Y. Mar. 31, 2014) ............. 18

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
504 F.3d 229 (2d Cir. 2007) ..................................................................................................... 21

*In re Comverse Tech., Inc.,*
No 06-cv-1825(NGG)(RER), 2010 U.S. Dist. LEXIS 63342 (E.D.N.Y. June 23, 2010). 14, 24

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ............................................................................... 11, 12, 13, 15, 16

*Clough v. Revenue Frontier, LLC,*
No. 17-cv-411-PB, 2019 U.S. Dist. LEXIS 102436 (D.N.H. June 19, 2019) ......................... 25

*Consolidated Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995) ........................................................................................................ 18

*Couser v. Comenity Bank,*
125 F. Supp. 3d 1034 (C.D. Cal. 2015) ............................................................................... 13, 15

2417538.10

*Cymbalista v. JPMorgan Chase Bank, N.A.,*
    No. 20-cv-456 (RPK)(LB), 2021 U.S. Dist. LEXIS 99093 (E.D.N.Y. May 25, 2021)
        *adopted by* Order Adopting Report and Recommendation (E.D.N.Y. Nov. 11, 2021) .... 17, 20

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ............................................................................ 10

*Dupler v. Costco Wholesale Corp.,*
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) .............................................................. 10

*Eldridge v. Pet Supermarket, Inc.,*
    No. 18-cv-22531, 2019 U.S. Dist. LEXIS 142999 (S.D. Fla. Aug. 21, 2019) ......................... 25

*Elkind v. Revlon Consumer Prods. Corp.,*
    No. 14-cv-2484(JS)(AKT), 2017 U.S. Dist. LEXIS 46753 (E.D.N.Y. Mar. 29, 2017) .......... 10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
    No. 05-cv-10240(CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ...................... 7

*In re GM LLC Ignition Switch Litig.,*
    No. 14-md-2543(JMF), 2020 U.S. Dist. LEXIS 239313 (S.D.N.Y. Dec. 18, 2020) .............. 21

*In re Graña Y Montero S.A.A. Sec. Litig.,*
    No. 17-cv-1105(LDH)(ST), 2021 U.S. Dist. LEXIS 153192 (E.D.N.Y. Aug. 13, 2021) ....... 11

*Hesse v. Godiva Chocolatier,*
    No. 19-cv-0972-LAP, 2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ................... 12

*Int'l Union of Elec. Workers v. Unisys Corp.,*
    Nos. 92-cv-571(JS), 93-cv-839(JS), 1994 U.S. Dist. LEXIS 16196 (E.D.N.Y. Aug. 1, 1994) 16

*Keil v. Lopez,*
    862 F.3d 685 (8th Cir. 2017) ............................................................................ 12

*In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.,*
    No. 14-md-02542 (VSB), 2021 U.S. Dist. LEXIS 107468 (S.D.N.Y. June 7, 2021) ............. 11

*Kindle v. Dejana,*
    315 F.R.D. 7 (E.D.N.Y. 2016) ......................................................................... 18

*Kochilas v. Nat'l Merch. Servs.,*
    No. 14-cv-311, 2015 U.S. Dist. LEXIS 135553 (E.D.N.Y. Oct. 2, 2015) ............................... 10

*Kondash v. Citizens Bank,*
    No. 18-cv-00288-WES-LDA, 2020 U.S. Dist. LEXIS 241588 (D.R.I. Dec. 23, 2020) ......... 14

*Langan v. Johnson & Johnson Consumer Cos.,*
    897 F.3d 88 (2d Cir. 2018) .............................................................................. 20

*Larson v. Harman-Mgmt. Corp.*,
   No. 16-cv-00219-DAD-SKO, 2020 U.S. Dist. LEXIS 107938 (E.D. Cal. June 18, 2020) ... 12

*Lowenschuss v. Bluhdorn*,
   613 F.2d 18 (2d Cir. 1980) ........................................................................................ 14

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
   No. 11-md-2262 (NRB), 2020 U.S. Dist. LEXIS 204123 (S.D.N.Y. Oct. 27, 2020) ............ 10

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
   327 F.R.D. 483 (S.D.N.Y. 2018) ................................................................................ 21

*In re Luckin Coffee Inc. Sec. Litig.*,
   No. 20-cv-1293(JPC), 2021 U.S. Dist. LEXIS 125376 (S.D.N.Y. July 6, 2021) ..................... 21

*Maley v. Del. Glob. Techs. Corp.*,,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................ 14

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
   289 F.R.D. 674 (S.D. Fla. 2013) ................................................................................ 20

*Marshall v. Deutsche Post DHL & DHL Express (USA) Inc.*,
   No. 13-cv-1471(RJD)(JO), 2015 U.S. Dist. LEXIS 125869 (E.D.N.Y. Sep. 21, 2015) ........ 10

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ...................................................................................... 10

*Melito v. Experian Mktg. Sols., Inc.*,
   923 F.3d 85 (2d Cir. 2019) ........................................................................................ 15

*Melito v. Am. Eagle Outfitters, Inc.*,
   No. 14-cv-2440(VEC), 2017 U.S. Dist. LEXIS 146343 (S.D.N.Y. Sep. 11, 2017) ............ 6, 20

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ........................................................................ 13

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
   No. 15-cv-9936(LGS), 2019 U.S. Dist. LEXIS 36942 (S.D.N.Y. Mar. 7, 2019) .................... 14

*In re Nissan Radiator*,
   No. 10-cv-7493 (VB), 2013 U.S. Dist. LEXIS 116720 (S.D.N.Y. May 30, 2013) .................. 24

*Oladapo v. Smart One Energy, LLC*,
   No. 14-cv-7117(LTS)(BCM), 2017 U.S. Dist. LEXIS 187299 (S.D.N.Y. Nov. 9, 2017) ....... 12

*In re PaineWebber Ltd. P'ships. Litig.*,
   147 F.3d 132 (2d Cir. 1998) ........................................................................................6

*In re Pall Corp.*,
   No. 07-cv-3359(JS)(ARL), 2013 U.S. Dist. LEXIS 89537 (E.D.N.Y. June 25, 2013) ........... 24

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 F. App'x 760 (2d Cir. 2020) ..........................................................................................6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................... 20

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017) ................................................................................ 20

*Precision Assocs. v. Panalpina World Transp., Ltd.*,
   No. 08-cv-42(JG)(VVP), 2013 U.S. Dist. LEXIS 121795 (E.D.N.Y. Aug. 27, 2013) ........... 13

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) .......................................................................... 10

*Rivero v. America's Recovery Sols., LLC*,
   No. 13-cv-3359(ENV)(LB), 2015 U.S. Dist. LEXIS 176449 (E.D.N.Y. Nov. 30, 2015)
   *adopted by* 2016 U.S. Dist. LEXIS 22562 (E.D.N.Y. Feb. 14, 2016) ......................................... 22

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ............................................................................... 19

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*,
   58 F. Supp. 3d 424 (S.D.N.Y. 2014) ................................................................... 13

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011) ............................................................................... 19

*Somogyi v. Freedom Mortg. Corp.*,
   495 F. Supp. 3d 337 (D.N.J. 2020) ..................................................................... 12

*Steinfeld v. Discover Fin. Servs.*,
   No. 12-cv-01118, Dkt. 96 (N.D. Cal. Mar. 10, 2014) ................................................. 14

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ........................................................................................... 19

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ............................................................................... 12

*Thomas v. Dun & Bradstreet Credibility Corp.*,
   No. 15-cv-03194-BRO(GJSX), 2017 U.S. Dist. LEXIS 235064 (C.D. Cal. Mar. 23, 2017) .. 12

*Tyson Foods, Inc. v. Bouaphakeo*,

vi

577 U.S. 442 (2016) ................................................................................................... 19, 20

*In re U.S. Foodservice Inc. Pricing Litig.,*
    729 F.3d 108 (2d Cir. 2013) ..................................................................................... 19, 20

*Vasco v. Power Home Remodeling Group LLC,*
    No. 15-cv-4623, 2016 U.S. Dist. LEXIS 141044 (E.D. Pa. Oct. 12, 2016) ............................ 15

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) .......................................................................................... 23

*Wal-Mart Stores, Inc. Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) .......................................................................................... 10, 13

*Weil v. Long Island Sav. Bank*, FSB,
    188 F. Supp. 2d 258 (E.D.N.Y. 2001) ............................................................................ 14

*Zondlo v. Allied Interstate, LLC,*
    290 F. Supp. 3d 296 (M.D. Pa. 2018) ............................................................................ 22

## STATUTES & RULES

Telephone Consumer Protection Act, 47 U.S.C. 227 *et seq.* ................................................. *passim*

Fed. R. Civ. P. 23     ....................................................................................................... *passim*

New York General Business Law § 399-p ............................................................................... 2, 6

## MISCELLANEOUS:

Herbert Newberg & Alba Conte, *Newberg on Class Actions* (4th Ed. 2002) ............................... 13

2417538.10

## I.   **INTRODUCTION**

After more than six years of intense litigation with substantial work and time remaining before any litigated resolution, Plaintiffs submit that the Settlement[1] achieved in this TCPA class action is an outstanding result for the Settlement Class. Defendants[2] have agreed to pay $38,500,000 into a non-reversionary cash fund to pay Settlement Class Members who submit valid claims, one of the highest TCPA class action settlements, ever.[3] As important, National Grid will also overhaul its outbound calling, account creation, customer consent revocation tracking, and employee training policies, practices and procedures to avoid the same types of conduct underlying the alleged TCPA violations in this case, and will require its debt collectors to follow similar compliance practices.

These results were hardly assured. Even after many years of litigation, numerous dismissal motions, dozens of discovery motions and massive amounts of discovery, there was substantial uncertainty about the outcome. National Grid vigorously opposed class certification. Had Plaintiffs prevailed at class certification, National Grid stated that it would move for summary judgment. Among its defenses, National Grid argued that many, if not most, Settlement Class Members provided "prior express consent" that would eliminate their TCPA claims. After summary judgment, an uncertain trial and appeals process awaited. Weighed against these uncertainties and years of additional delay, the Settlement provides Settlement Class Members with immediate, certain, and substantial benefits, more than most TCPA settlements.

---

[1] All capitalized terms are defined in the *Class Action Settlement Agreement and Release. See* Dkt. 733-1 (the "Settlement," "Settlement Agreement" or "Agmt. ¶").

[2] "Defendants" or "National Grid" are National Grid USA Service Co., Inc., KeySpan Gas East Corporation, Niagara Mohawk Co. and The Brooklyn Union Gas Co. along with affiliates Massachusetts Electric Co., the Narragansett Electric Co., Boston Gas Co., and Nantucket Electric Co.

[3] Per Class Counsel's research, this is by far the highest TCPA class action settlement to date in the Second Circuit and the sixth largest settlement in the history of the TCPA. The only larger TCPA settlements include: (1) *Aranda v. Caribbean Cruise Line, Inc.*, 12-cv-4069 (N.D. Ill.) ($76 million); (2) *Perez v. Rash Curtis & Associates*, 16-cv- 3396 (N.D. Cal.) ($75.6 million payment after a jury verdict); (3) *In re Capital One TCPA Litigation*, 12-cv-10064 (N.D. Ill.) ($75.5 million); (4) *Hageman v. AT&T Mobility LLC*, 13-cv-50 (D. MT.) ($45 million); (5) *Michael Wilkins, v. HSBC Bank Nevada, N.A.*, 14-cv-190 (N.D. Ill.) ($39,975,000).

The reaction of the Settlement Class has been overwhelmingly favorable. Out of approximately 3.6 million Settlement Class Members, more than 415,000 filed claims to share in a *pro rata* distribution of the Net Settlement Fund. By contrast, 70 Settlement Class Members requested exclusion, and only five filed objections. That positive reaction follows the extensive Court-approved Notice Plan that included individual notice (by mail and email) to over 12 million current and former National Grid utility customers. Individual notice was supplemented by a Settlement Website, radio campaign, Internet banner and search notices, and social media outreach notices on Facebook and Instagram. After Class Counsel moved for the payment of attorneys' fees and expenses, and service awards for Plaintiffs (Dkts. 732-733; the "Fee Motion"), those submissions were promptly posted to the Settlement Website. The Notice Plan was the best notice practicable under the circumstances and satisfied due process.

The Parties settled after months of arm's-length negotiation between experienced counsel assisted by JAMS mediator and retired federal district judge, the Hon. Wayne Andersen. Class Counsel possess extensive experience litigating and settling consumer and TPCA class actions. Based upon their investigation, the information gained during litigation and during settlement negotiations, Class Counsel believe that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

## II.   **PROCEDURAL HISTORY**[4]

### A.   **Pre-Filing Investigation**

For months before filing the initial complaint, Class Counsel thoroughly investigated the legal and factual bases for potential claims against National Grid for violating the TCPA and New York General Business Law ("GBL") § 399-p. *See PA Joint Decl.*, ¶¶ 32-34.

---

[4] The procedural history of this Action is detailed in Class Counsel's *Joint Declaration* submitted in support of Preliminary Approval of the Settlement. *See* Dkt. 733 (the "*PA Joint Decl.*").

B.      **Pleadings and Motions to Dismiss**

Plaintiff Jarrett Jenkins initiated this Action on March 9, 2015.  *See* Dkt. 1.  Subsequent amended complaints added four additional named Plaintiffs.  The 700+ docket entries in this case reflect the Parties' significant motion practice, including six motions to dismiss Plaintiffs' claims.  *See PA Joint Decl.*, ¶¶ 35-49.  Following that motion practice, Plaintiffs filed the operative *Third Amended Class Action Complaint* on August 29, 2018.  *See* Dkts. 440, 442.  National Grid filed its Answer on September 12, 2018.  *See* Dkt. 448.

C.      **The Parties Completed Extensive Discovery and Motion Practice Prior to Mediation and Settlement.**

Discovery in this case was a massive undertaking and provided Plaintiffs with comprehensive knowledge about their claims and attendant litigation risks prior to negotiating the Settlement.  Discovery and most discovery-related motion practice took place under the supervision of then-Magistrate Judge Gary Brown, and thereafter Magistrate Judge Arlene Lindsay.  Over more than five years, discovery included the following:

- the production and review of over 100,000 documents (aside from data);

- the production, review, and analysis of well over 400 million lines of data totaling hundreds of gigabytes, related to National Grid call campaigns;

- more than two dozen sets of requests for production, requests for admission, and interrogatories exchanged between the Parties;

- subpoenas and related discovery concerning more than 50 third parties;

- Class Counsel taking 38 depositions;

- six expert reports and four expert declarations; and

- almost 50 discovery-related motions, including motions to compel document production, to stay discovery, and for preclusion/sanctions.

*PA Joint Decl.*, ¶¶ 55-92.

### D.      Class Certification and *Daubert* Briefing

On July 31, 2019, Plaintiffs moved for class certification, supported by the expert report of Anya Verkhovskaya.  *See* Dkts. 592, 647-51.  National Grid opposed class certification, supported by two expert reports, four expert declarations, and multiple employee declarations.  *See* Dkts. 627, 652-69.  Plaintiffs' reply was supported by two additional expert reports from Ms. Verkhovskaya and DeLiang Wang, Ph.D.  *See* Dkts. 639, 670-73.  The Parties filed multiple *Daubert* motions to strike each other's expert reports.  *See* Dkts. 674, 676, 687.

### E.      Settlement Negotiations

The Parties agreed to mediate only after the class certification and *Daubert* motions were fully briefed.  *See* Dkt. 726.  After two all-day mediations before Hon. Wayne R. Andersen (Ret.) in May 2021, the Parties reached an impasse.  *See* Dkt. 727.  They nonetheless continued to communicate with Judge Andersen, and mediated on June 29, 2021, which again ended without resolution.  *PA Joint Decl.*, ¶ 112.  Over the following weeks, the parties continued to negotiate through Judge Andersen.  *Id.*, ¶ 113.  On July 20, 2021, with the substantial assistance of Judge Andersen, the Parties reached an agreement in principle.  *Id.*; Dkt. 729.  Through early October 2021, the Parties negotiated the details of the Settlement Agreement and exhibits, participating in a final mediation with Judge Andersen on October 11, 2021 concerning issues that the Parties could not resolve on their own.  *PA Joint Decl.*, ¶¶ 114-15.  The Parties resolved those issues with Judge Andersen's assistance and executed the Settlement Agreement on October 29, 2021.  *Id.*, ¶¶ 115-17.

### F.      Preliminary Approval

On October 29, 2021, Plaintiffs moved for preliminary approval of the Settlement and for approval to send notice.  *See* Dkts. 732 & 733.  The Court granted that motion on November 8, 2021.  Dkt. 736 (the "*PA Order*").  The *PA Order* scheduled the Final Approval hearing and established deadlines for Settlement Class Members to submit claims, exclusion requests, and

objections.  *See id.* at 11-15.  The Court later extended those deadlines until May 22, 2022, upon the Parties' request.  *See* 4/28/22 Elec. Order.[5]

G.     **Class Counsel's and Plaintiffs' Motion for Attorneys' Fees and Service Awards**

On April 12, 2022, Class Counsel and Plaintiffs filed the Fee Motion requesting attorneys' fees, reimbursement of expenses, and service awards for Plaintiffs.  The next day, the filed motion was posted to the "Important Documents" tab of the Settlement Website.  *See* Devery Decl., ¶ 31.

III.     **SUMMARY OF THE SETTLEMENT**

Plaintiffs filed the Settlement Agreement with their preliminary approval motion and posted it on the Settlement Website (www.nationalgridtcpasettlement.com) on October 29, 2021.  *See* Devery Decl., ¶ 30.  The Settlement's material terms are summarized in the preliminary approval and Fee Motion papers.  *See* Dkts. 732, 733, 742.  National Grid will pay $38.5 million into a non-reversionary Settlement Fund to provide Settlement Payments to Settlement Class Members who file timely and valid Claim Forms.  The Settlement Fund will also pay all Settlement expenses, including notice and administration costs and Court-approved service awards, Class Counsel's attorneys' fees and litigation expenses.  Agmt., ¶ 4.01; *see also* ¶¶ 2.31, 5.01, 6.01, 7.03, 9.02, 9.03, 16.02.

In addition, National Grid has agreed to extensive changes to its business policies, practices, and procedures to prevent the conduct at the heart of this case.  Among other things, National Grid will:  (i) ask new and existing customers providing a new cellular number whether they consent to receive Automated Collection Calls on their cellular telephones; (ii) avoid calling the cellular telephone numbers of customers who indicated that they did not consent to receive Automated Collection Calls and require National Grid's Third Party Debt Collection Agencies to do the same; (iii) require its Third Party Debt Collection Agencies to share with National Grid any do-not-call and wrong number designations they have received to prevent further Automated Collection Calls to

---

[5]  Because May 22, 2022 was a Sunday, the Parties and Claims Administrator accepted as timely any claims, exclusion requests, or objections postmarked on or before May 23, 2022.

those persons on their cellular telephones; (iv) develop written TCPA compliance policies and training for its employees; (v) ensure compliance with GBL §399-p outbound prerecorded messages; and (vi) undertake an independent TPCA compliance review. *See id.*, Agmt., ¶¶ 4.05, 4.06; *see also* Dkts. 732 at 5-7, 733 at 4-6, 742 at 2-4 (describing the business practice changes in greater detail).[6]

In consideration for the Settlement benefits agreed to by National Grid, Settlement Class Members who do not exclude themselves from the Settlement Class will release the claims defined in Section 13.01 of the Settlement Agreement against the Released Parties. *See* Agmt., ¶ 2.28.

In the *PA Order*, this Court preliminarily found the Settlement fair, reasonable and adequate:

> The Court preliminarily finds that the Settlement relief provided—(a) a non-reversionary settlement fund of $38.5 million and (b) changes to National Grid's policies, practices, and procedures intended to assure compliance with the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*—is fair, reasonable, and adequate taking into account, *inter alia*, the costs, risks, and delay of further litigation, trial and appeal, the alleged harm to Settlement Class Members, the proposed method of distributing payments to the Settlement Class (*i.e.*, payments to Settlement Class Members who submit valid Claim Forms by mailed checks or electronic distributions), and the absence of any agreement required to be identified under Rule 23(e)(3).").

Dkt. 736, ¶ 7. There have been no changes to the Settlement since the *PA Order.*

## IV.   **ARGUMENT**

A court should approve a class action settlement if, taken as a whole, the settlement is fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2); *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020). "In general, the approval of a class settlement is within the district court's discretion, 'which should be exercised in light of the general judicial policy favoring settlement.'" *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-2440(VEC), 2017 U.S. Dist. LEXIS 146343, at *28 (S.D.N.Y. Sep. 11, 2017) (citation omitted); *see also In re PaineWebber Ltd. P'ships. Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (discussing "the strong judicial policy in favor of settlements, particularly in the

---

[6] Final approval of the Settlement would also dismiss the related *Mackenzie* Action (*MacKenzie. v. National Grid USA Serv. Co., Inc.*, E.D.N.Y. No. 2:19-cv-01916-JS), challenging identical National Grid calling practices, and join Ms. MacKenzie to this Action. *See* Agmt., § XV.

class action context."); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240(CM), 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.").

This Settlement satisfies all of the relevant criteria, and merits final approval.

### A.   The Claims Administrator Implemented the Court-Approved Notice Plan, Complying with Rule 23 and Settlement Class Members' Due Process Rights.

The comprehensive Court-ordered Notice Plan was successfully implemented by the Claims Administrator, Angeion.   It provided Settlement Class Members with easy-to-understand notice of the Settlement, their rights, and important deadlines and contact information. The Notice Plan was the "best notice practicable" under the circumstances, as evidenced—among other things—by the high number of Settlement Class Members who filed claims to share in the Settlement proceeds.

The Notice Plan provided direct notice to not just the estimated 3.6 million Settlement Class Members, but also to millions of other current and former National Grid customers, and publication notice to millions more in National Grid's service region.   *See* Tusa Decl., Ex. A (annexing letter from National Grid estimating the Settlement Class size).   The Parties designed the Notice Plan to provide notice beyond the defined Settlement Class, because while the discovery during the litigation identified a portion of the Settlement Class, significant additional discovery, time, and cost would be needed to identify the remainder.   Moreover, many Settlement Class Members likely moved since receiving utility service from National Grid.

The process of assembling the email and mail notice lists began with National Grid searching its records to compile account and contact information for current and past customers on or after January 1, 2006 and on or before October 29, 2021.   *See* Agmt., ¶ 7.02   Thereafter, National Grid provided two files containing over 24 million account records to Angeion and Class Counsel. Devery Decl., ¶ 5.   Angeion deduplicated those records to 12,514,285 unique entries.   *Id.*, ¶ 7.

Pursuant to the Settlement Agreement and *PA Order*, this list was used to send individual notice by email whenever possible. *See* Agmt., ¶ 8.04. Angeion examined the records for valid email addresses, and worked with information vendors to correct invalid addresses and find additional, valid email addresses for records missing an email address. Devery Decl., ¶¶ 8, 10, 11. Beginning on January 12, 2022, Angeion caused direct notice to be sent via email to 7,062,567 current and former National Grid customers with valid email addresses. *Id.*, ¶¶ 13, 14. For any email notices returned as undelivered, Angeion attempted to re-email, but if still undeliverable, mailed that person a postcard notice. *Id.*, ¶ 17. On April 11, 2022, Angeion sent a "reminder" email notice to 6,426,394 email recipients who had not yet filed a claim, objection, or exclusion request. *Id.*, ¶ 25.

Beginning on January 19, 2022, Angeion mailed 4,403,105 postcard notices via first class mail to all current or former customers whose records were not associated with a valid email address, or for whom an email had bounced-back and could not be delivered by subsequent emails. Devery Decl., ¶¶ 16, 17. For any returned postcards with forwarding addresses, Angeion sent an additional postcard notice to the forwarding address. *Id.*, ¶ 18. For the approximately 925,000 returned postcards without forwarding addresses, Angeion conducted a "skip-trace" to locate updated address information, identifying 734,644 additional postal addresses, which Angeion used to re-mail the postcard notice. *Id.*, ¶¶ 19, 20. In April 2022, Angeion sent another 117,877 postcard notices to corrected addresses. *Id.*, ¶¶ 21-24. In total, the individual notice program sent: (1) 7,062,567 original and second email notices (of which 831,524 were not delivered); (2) 4,403,105 original postcard notices; (3) 768,757 postcard notices to supplement email notices that bounced-back; (4) 4,021 postcard notices using USPS forwarded addresses; and (5) 852,521 post card notices to supplement undeliverable post card notices without forwarding addresses. *Id.*, ¶¶ 13-24.

To supplement the individual notice program, on January 12, 2022, Angeion created a Settlement Website, (www.nationalgridtcpasettlement.com), and a toll-free telephone number with

an Interactive Voice Response ("IVR") system to provide automated responses to Settlement Class Member questions. *Id.*, ¶¶ 30, 37; *see* Agmt., ¶ 7.05. Among other information, the Settlement Website contains the Settlement Agreement and Court-approved short-form and long-form notices in English and Spanish. *Id.*, ¶ 30.[7] It also includes the *PA Order* and Fee Motion. *Id.*, ¶¶ 30, 31. The Settlement Website also includes the date and time of the Final Approval Hearing,[8] and explanations as to how Settlement Class Members can file a paper or electronic Claim Form, opt-out or object to the Settlement, and deadlines for doing so. *Id.* Angeion reports that as of May 22, 2022, a total of 894,761 persons visited the Settlement Website and 32,367 persons called the toll-free number, where anyone can get answers to questions about the Settlement. *See id.*, ¶¶ 34, 37.

As a further supplement to direct and website notice, Angeion published notice digitally using Internet banner and search advertisements, on Facebook and Instagram, and on streaming radio platforms Pandora and iHeart Radio. *Id.*, ¶¶ 26-29. The forms of these notices were provided to the Court, *see* Settlement at Exs. E-G, and approved in the *PA Order*. Angeion reports that it published 14,876,870 digital banner ad impressions, 39,725,632 social media impressions on Facebook and Instagram, 901,972 streaming radio plays on Pandora and an additional 823,142 plays on iHeart Radio. *Id.* The social media and radio notices were largely targeted to Massachusetts, New York, and Rhode Island, where National Grid provides utility service. *Id.*, ¶ 28.

The Notice Plan completed under the Parties' supervision as set forth in the Settlement Agreement and approved in the *PA Order* constitutes the "best notice practicable under the circumstances," as required by Rule 23(c) and (e), and used notice by "mail, electronic means, [and] other appropriate means." FED. R. CIV. P. 23(c)(2)(B); *In re Emulsion (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 527 F. Supp. 3d 269, 273 (E.D.N.Y. 2021) (discussing 2018 amendments to

---

[7]  The IVR was supposed to be recorded in English and Spanish, Agmt., ¶ 7.06, but was mistakenly only recorded in English. *See* Devery Decl., ¶ 40.

[8]  The Settlement Website was updated following the Court's May 25, 2022 Electronic Order adjourning the Final Approval Hearing to June 24, 2022 at 9:30 a.m. Devery Decl., ¶ 35.

Rule 23(c)). That is especially true where individual notice is supplemented by Internet, radio and/or social media notice. *See In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB), 2020 U.S. Dist. LEXIS 204123, at *59 (S.D.N.Y. Oct. 27, 2020); *Kochilas v. Nat'l Merch. Servs.*, No. 14-cv-311, 2015 U.S. Dist. LEXIS 135553, at *5-6, 17-18 (E.D.N.Y. Oct. 2, 2015).

In compliance with the Class Action Fairness Act, notice of the Settlement was sent by National Grid and Angeion to appropriate federal and state officials. *See* Devery Decl., ¶ 4. None of these officials raised any concerns or objected to the Settlement. *Id.*

### B.     The Settlement is Procedurally Fair.

"A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *accord Marshall v. Deutsche Post DHL & DHL Express (USA) Inc.*, No. 13-cv-1471(RJD)(JO), 2015 U.S. Dist. LEXIS 125869, at *10 (E.D.N.Y. Sep. 21, 2015) (first step in final approval process is confirmation of "procedural" fairness).

There is "a presumption of [procedural] fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted)); *accord Elkind v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484(JS)(AKT), 2017 U.S. Dist. LEXIS 46753, at *4 (E.D.N.Y. Mar. 29, 2017) (Seybert, J.) (adopting Report and Recommendation granting preliminary approval because "the proposed [class action] settlement was negotiated after 'serious, informed, and noncollusive negotiations.'"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 238 (E.D.N.Y. 2010); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237

F.R.D. 26, 33 (E.D.N.Y. 2006).   A further presumption of fairness attaches to a class action settlement reached after meditation before an experienced jurist.   *See In re Graña Y Montero S.A.A. Sec. Litig.*, No. 17-cv-1105(LDH)(ST), 2021 U.S. Dist. LEXIS 153192, at *29 (E.D.N.Y. Aug. 13, 2021); *In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*, No. 14-md-02542 (VSB), 2021 U.S. Dist. LEXIS 107468, at *22 (S.D.N.Y. June 7, 2021).

As detailed in Class Counsel's declarations in support of preliminary approval and the Fee Motion, *Joint PA Decl.*, ¶¶ 108-117 & Dkt. 742-1, ¶ 29, the Parties negotiated for several months at arm's-length with the assistance of the Hon. Wayne Andersen (Ret.) of JAMS as mediator.   Class Counsel was well positioned to negotiate the Settlement, after years of litigation and discovery prior to mediation, and given their extensive experience litigating and settling other complex class actions, including some of the largest TCPA class action settlements.[9]

The Court should conclude the Settlement is procedurally fair, and therefore satisfies the third *Grinnell* factor, listed with the other *Grinnell* factors immediately below.

### C.   The Settlement is Fair, Reasonable, and Adequate and in the Best Interests of the Settlement Class.

Substantive fairness is determined by compliance with Rule 23(e) using the criteria set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (the "*Grinnell* factors"):

> (1) [T]he complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Id.* at 463.   Except for criteria #2 ("the reaction to the class to the settlement"), which could not be properly evaluated until after notice was disseminated and the claims/objection/opt-out deadline

---

[9]   Class Counsel's submitted their declarations setting forth their experience with the motions for preliminary approval and attorneys' fees.   *See* Dkts. 733, 733-2, 742-2, 742-3.

had passed, the Court preliminarily determined that the Settlement complied with each *Grinnell* factor.  Dkt. 736 (*PA Order*), ¶ 9.  The Notice Plan is now complete and the Settlement Class reaction has been overwhelmingly positive, as discussed immediately below.  The remaining *Grinnell* factors, previously evaluated by the Court, are also discussed below.

1.   *Grinnell* **Factor #2:  The Reaction of the Settlement Class Has Been Overwhelmingly Positive.**

Of the approximately 3.6 million estimated Settlement Class Members, as of May 31, 2022, over 415,000 filed timely claims with the Claims Administrator to share in the Settlement proceeds. Devery Decl., ¶ 41.  By contrast, only 70 Settlement Class Members requested exclusion and only five objected.  *Id.*, ¶¶ 42, 43.  Those exclusion requests and objections represent a negligible percentage of the Settlement Class, and compare favorably to other TCPA settlements.

The 11% claims rate achieved here is excellent for a consumer class action such as this one, and by far exceeds far lower claims rates routinely accepted in this Circuit and elsewhere.  *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("we note that a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329, n.60 (3d Cir. 2011) (*en banc*) ("'consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns.'") (citation omitted); *Hesse v. Godiva Chocolatier*, No. 19-cv-0972-LAP, 2022 U.S. Dist. LEXIS 72641, at *29 (S.D.N.Y. Apr. 20, 2022) (agreeing that the claims rate of 2.83 percent is "'commendable for a large nationwide consumer class action like this one,'" and thus "the Court finds that this factor favors the Settlement."); *Oladapo v. Smart One Energy, LLC*, No. 14-cv-7117(LTS)(BCM), 2017 U.S. Dist. LEXIS 187299, at *40, n.12 (S.D.N.Y. Nov. 9, 2017) ("In a 'claims made' settlement such as this, … response rates of 10% or less are common."). That is also true in comparison to other TCPA class actions.  *See e.g., Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 345 (D.N.J. 2020) (granting final approval in TCPA class settlement with 5% claims rate); *Larson v. Harman-Mgmt. Corp.*, No. 16-cv-00219-DAD-SKO, 2020 U.S. Dist. LEXIS

107938, at *15 (E.D. Cal. June 18, 2020) (same; 7.5% claims rate); *Abante Rooter & Plumbing v. Pivotal Payments*, No. 16-cv-05486-JCS, 2018 U.S. Dist. LEXIS 232054, at *13 (N.D. Cal. Oct. 15, 2018) (same; 2% claims rate); *Thomas v. Dun & Bradstreet Credibility Corp.*, No. 15-cv-03194-BRO(GJSX), 2017 U.S. Dist. LEXIS 235064, at *28 (C.D. Cal. Mar. 23, 2017) (same; 6.02% claims rate); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (C.D. Cal. 2015) (same; 7.7% claim rate).

The positive reaction by the Settlement Class described above, following extensive notice, supports that the Settlement is fair, reasonable, and adequate. *See Wal-Mart Stores*, 396 F.3d at 118 ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'") (quoting Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002), §11.41, at 108); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 433 (S.D.N.Y. 2014) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate.")); *Precision Assocs. v. Panalpina World Transp., Ltd.*, No. 08-cv-42(JG)(VVP), 2013 U.S. Dist. LEXIS 121795, at *59 (E.D.N.Y. Aug. 27, 2013) ("relatively small number of opt-outs and absence of objections from class members" supported final approval); *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (same).

> **2.  The Settlement Represents a Strong Result for the Settlement Class, Given the Substantial Risks and Challenges They Face (FED. R. CIV. P. 23(e)(2)(C); *Grinnell* Factors 1 & 4-9).**

The Settlement provides a non-reversionary $38.5 million cash payment by National Grid and substantial changes to its business practices discussed above.  While Class Counsel has not placed a monetary value on those changes to National Grid's business practices, those changes add substantial, prospective additional value and benefit to the Settlement Class. *See Pitas v. Wells Fargo Merch. Servs.*, No. 17-cv-04583 (AKT), 2021 U.S. Dist. LEXIS 240046, at *8 (E.D.N.Y. July 22, 2021) ("The terms of the Settlement provide substantial and direct benefits to the Settlement Class,

including substantial monetary benefits and substantial valuable non-monetary relief (*i.e.*, practice changes);"); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15-cv-9936(LGS), 2019 U.S. Dist. LEXIS 36942, at *7 (S.D.N.Y. Mar. 7, 2019) ("'Considering the non-monetary benefits and relief created by counsel's efforts is important because it encourages attorneys to obtain meaningful affirmative relief.'") (citation omitted); *Bostick v. Herbalife Int'l of Am.*, No. 13-cv-02488-BRO, Dkt. No. 145 at *54-57 (C.D. Cal. May 14, 2015) ("In considering the fairness and reasonableness of a fee request, a district court should recognize the value of nonmonetary relief and may increase an award 'to reflect the benefits to the public flowing from th[e] litigation.'") (citations omitted).

The Settlement provides a very strong recovery for the Settlement Class, especially considering the risks of continued litigation and considerable time and effort that would be required to successfully litigate this case through trial and inevitable appeals (assuming Plaintiffs won certification of one or more proposed classes).  The Settlement will pay over 415,000 Settlement Class Members monetary relief now.  It delivers additional value by requiring meaningful business practice changes that will matter not only to Settlement Class Members, but to former, current, and future National Grid utility customers.  *See Lowenschuss v. Bluhdorn*, 613 F.2d 18, 19 (2d Cir. 1980) (settlement approved where further litigation would have been "expensive and protracted" with no guarantee of any relief to class); *In re Comverse Tech., Inc.*, No 06-cv-1825(NGG)(RER), 2010 U.S. Dist. LEXIS 63342, *15 (E.D.N.Y. June 23, 2010) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.") (citation omitted); *Maley v. Del. Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002) ("In assessing the Settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation."); *Weil v. Long Island Sav. Bank, FSB*, 188 F. Supp. 2d 258, 264 (E.D.N.Y. 2001) ("It is axiomatic that anything can happen at trial.").

Class Counsel estimates that payments to the claiming Settlement Class Members will be approximately $50 each, which is within the range estimated in the motion for preliminary approval. *See* Dkt. 732 at 14.[10] Those estimated payments compare favorably with other approved TCPA settlements. *See e.g., Kondash v. Citizens Bank*, No. 18-cv-00288-WES-LDA, 2020 U.S. Dist. LEXIS 241588, at *3 (D.R.I. Dec. 23, 2020) (class members received approximately $44 each); *Vasco v. Power Home Remodeling Group LLC*, No. 15-cv-4623, 2016 U.S. Dist. LEXIS 141044, at *23, n.76 (E.D. Pa. Oct. 12, 2016) (distributions to class members of "slightly higher than $27.00" "is consistent with" other TCPA class action settlements, including a TCPA class action settlement with Walgreens that generated $30 distributions, with Capital One that generated $34.60 distributions, and with Bank Of America that generated $20 to $40 distributions); *Couser*, 125 F. Supp. 3d at 1044 (approving $13.75 per claimant "in light of the large number of Class Member claimants and high claims rate [and] the amount of the Settlement Fund "); *Steinfeld v. Discover Fin. Servs.*, No. 12-cv-01118, Dkt. 96 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-cv-00248-JAH-WVG, Dkt. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each).

And while a higher recovery may have been possible after a successful trial (assuming Plaintiffs prevailed on the motions for class certification and summary judgment), that is not the appropriate comparison. *See Grinnell*, 495 F.2d at 462 ("Such procedure would emasculate the very purpose for which settlements are made."). If National Grid prevailed at class certification, summary judgment, or trial, Settlement Class Members would receive nothing, and National Grid's business practices would largely remain the same.

While Plaintiffs believe they would have prevailed in ongoing litigation, that result is far from assured. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019) (affirming denial of

---

[10] Class Counsel estimates that amount by taking the Settlement payment ($38.5 million), subtracting Angeion's estimate of Settlement notice, administration and distribution costs, Class Counsel's requests for attorneys' fees ($12.705 million), reimbursement of costs ($1,052,082.51), and Plaintiff service awards ($55,000), and then dividing by the current number of Settlement Class Member claims submitted.

objection to TCPA class settlement claiming that the amount recovered was insufficient, for among other reasons, "the litigation risks in this case were real on both the law and the facts."); *Int'l Union of Elec. Workers v. Unisys Corp.*, Nos. 92-cv-571(JS), 93-cv-839(JS), 1994 U.S. Dist. LEXIS 16196, at *10 (E.D.N.Y. Aug. 1, 1994) (Seybert, J.) (granting final approval and observing that, "there is a significant risk that the Plaintiffs might not be able to establish liability on the part of the Defendants as to one or more of the settlement subclasses."). Given the Settlement's value and litigation risks, the Settlement satisfies Rule 23(e)(2)(C) and *Grinnell* factors 1 and 4-9.

### 3.    The Additional Rule 23(e) Factors Support Final Approval.

Plaintiffs and Class Counsel zealously represented the Settlement Class throughout the Settlement process. FED. R. CIV. P. 23(e)(2)(A).  In granting preliminary approval, this Court held that Plaintiffs and Class Counsel adequately represented the Settlement Class.  Dkt. 736 (*PA Order*), ¶ 11.  As detailed herein and at preliminary approval, following a pre-filing investigation and more than seven years of litigation that included extensive motion practice and discovery, Class Counsel zealously represented the Settlement Class during Settlement negotiations and mediation before Judge Andersen.  *See PA Joint Decl.*, ¶¶ 35-54, 89-107.  After the Parties' reached an agreement in principle, Class Counsel continued negotiating the terms of a favorable Settlement Agreement, and then zealously represented the Settlement Class by moving for preliminary approval, implementing the Notice Plan, and communicating with Settlement Class Members.  *See e.g.*, Dkt. 741 (letter withdrawing objection after further investigation and discussions with Class Counsel).  These efforts satisfy FED. R. CIV. P. 23(e)(2)(A).

The Settlement will be distributed in a manner that treats Settlement Class Members equitably to each other.  FED. R. CIV. P. 23(e)(2)(D).  All who filed a timely and valid Claim Form

16

will participate in a *pro rata* distribution of the Net Settlement Fund.  *See* Agmt., ¶¶ 4.01, 9.01-9.03.[11]

"Distribution plans which distribute the settlement award based on each class member's *pro rata*

share, have been found to be fair and rational."  *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-cv-

456 (RPK)(LB), 2021 U.S. Dist. LEXIS 99093, at *20 (E.D.N.Y. May 25, 2021).

      If funds remain after distribution to claiming Settlement Class Members due to checks that

are uncashed or returned undeliverable and where Angeion cannot identify an updated address, such

residual amounts will be distributed to the Settlement Class as part of a second distribution, if

economically feasible.  *See* Agmt., ¶ 7.04(e).  If not economically feasible, *i.e.* the secondary

distributions are under $1.00, residual Settlement proceeds will be distributed *cy pres* to the National

Consumer Law Center, if approved by the Court.  *Id.*, ¶ 7.04(3).  No funds revert to National Grid.

      The proposed method of distributing the Settlement benefits is fair and reasonable.  FED. R.

CIV. P. 23(e)(2)(C)(ii) (court to consider "the effectiveness of any proposed method of distributing

relief to the class, including the method of processing class-member claims").  The Court's *Preliminary*

*Approval Order* previously considered the distribution plan.  *See* Dkt. 736 (*PA Order*), ¶¶ 7, 22.

      Finally, there are no agreements between the Parties other than the Settlement.  FED. R. CIV.

P. 23(e)(3) ("the parties seeking approval must file a statement identifying any agreement made in

connection with the proposal").

    **D.**    **The Court should Confirm Certification of the Settlement Class and**
                **Appointments of the Class Representatives and Class Counsel.**

      The Settlement Agreement agreed to certification of the Settlement Class (*see* Agmt., § III),

which the Court endorsed at preliminary approval.  *See* Dkt. 736 (*PA Order*), ¶¶ 11-14 (conditionally

certifying the Settlement Class as complying with Rule 23(a)(1)-(4) and (b)(3) and appointing

Plaintiffs as the Settlement Class Representatives and Class Counsel); *see also* Dkt. 732 (*Plaintiffs'*

---

[11]  The Net Settlement Fund is defined as the $38.5 million Settlement payment, less payments from the
Settlement Fund for settlement costs and administration, taxes, and Court-approved Plaintiff service award
and Class Counsel attorneys' fees.  Agmt., ¶¶ 2.21, 2.33, 2.44.

*Mem. of Law in Support of Preliminary Approval*) at 18-23 (discussing class certification standards and compliance). The Court should now confirm its class certification rulings. *See e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997) (approving use of settlement classes).

A class will be certified where the four requirements of Rule 23(a) are satisfied—numerosity, commonality, typicality and adequacy of representation—plus the requirements of any one of the sub-sections of Rule 23(b). *See* FED. R. CIV. P. 23. Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3). The Rule 23 certification requirements "should be 'given liberal rather than restrictive construction ....'" *In re Cablevision Consumer Litig.*, No. 10-cv-4992 JS AKT, 2014 U.S. Dist. LEXIS 44983, at *14 (E.D.N.Y. Mar. 31, 2014) (Seybert, J.) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### 1. The numerosity requirement is satisfied.

National Grid reports that there are approximately 3.6 million members of the Settlement Class based on an analysis of its records. Tusa Decl., Ex. A. Numerosity is presumed with 40 or more class members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### 2. The commonality requirement is satisfied.

FED. R. CIV. P. 23(a)(2) requires only that there be one or more questions of law or fact common between the claims of the Plaintiffs and the class. "Commonality is satisfied where a single issue of law or fact is common to the class." *In re Cablevision Consumer Litig.*, 2014 U.S. Dist. LEXIS 44983, at *15 (emphasis in original) (citing *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)). Commonality is a "minimal burden for a party to shoulder." *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (citation and quotation marks omitted).

Here, whether Plaintiffs and Settlement Class Members possess TCPA claims based on National Grid's outbound collection calling is just such a common question. Dkt. 736 (*PA Order*), ¶ 11 ("there are common questions of law and fact").

### 3.   Plaintiffs' claims are typical of the Settlement Class.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3).  Typicality is satisfied "when each class member's claim arises from the same course of events and each Class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citations omitted); *see also Robidoux v. Celani,*, 987 F.2d 931, 937 (2d. Cir. 1993) (the typicality requirement is usually met "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented, ….").

Like commonality, which is closely linked to typicality, Plaintiffs' and the Settlement Class's claims all arise from the same course of National Grid's conduct resulting in the same TCPA claims. "Plaintiffs' claims are typical of those of the Settlement Class Members." Dkt. 736 (*PA Order*), ¶ 11.

### 4.   Plaintiffs and Class Counsel Adequately Represent the Settlement Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).  This requirement is satisfied when the class representatives' attorneys are qualified and the class representatives have no interests conflicting with the class.  *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975).  Plaintiffs assert claims that are substantially similar to those of other Settlement Class Members and their efforts demonstrate they have vigorously prosecuted the case and will continue to do so.  Class Counsel have further demonstrated their extensive experience in litigating consumer class actions, including TPCA class actions.  *See* Dkts. 733, 733-2, 742-2, 742-3.  The Court previously found that Plaintiffs and Class Counsel adequately represent the Settlement Class.  *See* Dkt. 736 (*PA Order*), ¶ 11.

### 5.   The Settlement Class Satisfies Rule 23(b)(3) Predominance.

To certify a Rule 23(b)(3) class, common issues of law or fact should predominate over individual issues.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *In re U.S. Foodservice Inc.*

*Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (predominance satisfied if common issues "are more substantial the issues subject to only individualized proof."). Predominance is a test "readily met" in consumer class actions. *Amchem*, 521 U.S. at 624. The predominant issue in this case is the Settlement Class's claims that National Grid and its Third-Party Debt Collection Agencies made calls to cellular telephones using prerecorded and artificial recordings that violate the TCPA. *See Melito*, 2017 U.S. Dist. LEXIS 146343, at \*22-23 (finding predominance for TCPA settlement class).

The Settlement Class asserts that National Grid's defenses to these claims can be resolved classwide, which also supports predominance. *See Tyson Foods*, 577 U.S. at 457 (defense applicable classwide can be a predominate issue); *In re US Food Service Pricing Litig.*, 729 F.3d at 119 (same); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) (in TCPA case, prior express consent defense was "a question/defense common to the class as a whole.").

### 6.     The Settlement Class Satisfies Rule 23(b)(3) Superiority.

The resolution of many thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Cymbalista*, 2021 U.S. Dist. LEXIS 99093, at \*39 (discussing superiority of settlement); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 57 (E.D.N.Y. 2019). That is especially true for a settlement class like the one here because "a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620. Superiority is satisfied.

### 7.     The Settlement Class is Ascertainable.

While not required directly by Rule 23, a class should also be objectively ascertainable. This is only a "modest threshold" for certification. *In re Petrobras Sec. Litig.*, 862 F.3d 250, 269 (2d Cir. 2017). Ascertainability presents no difficulties here. Moreover, the Claim Form requires claimants to certify they are members of the Settlement Class. *See Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 91, n.2 (2d Cir. 2018) (approving use of affidavits to identify purchasers of products in

a class action); *Birchmeier v. Carribean Cruise Line, Inc.*, 302 F.R.D. 240, 249 (N.D. Ill. 2014) (approving the use of "the combination of documentary evidence [(*i.e.*, phone service records)] and a sworn statement" sufficient to ascertain class members).

### E.     The Objections to the Settlement Should be Overruled.

Five persons filed four objections to the Settlement.[12]  None sufficiently proved their membership in the Settlement Class.  *See* FED. R. CIV. P. 23(e) (requiring objectors to be a "class member").  The *PA Order* requires any objector to explain "the basis upon which the objector claims to be a Settlement Class Member.  Dkt. 736, ¶ 25.  An objector to a settlement has the burden of proving class membership.  *See In re Libor-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 499 (S.D.N.Y. 2018).  Without proving Settlement Class membership, the objectors lack standing to object.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007); *In re GM LLC Ignition Switch Litig.*, No. 14-md-2543(JMF), 2020 U.S. Dist. LEXIS 239313, at *257, n.4 (S.D.N.Y. Dec. 18, 2020).  Class Counsel attempted to confirm whether the objectors are Settlement Class Members, but can only confirm that Mr. Amado is a member of the Settlement Class.[13]  Tusa Decl., ¶ 6.

Even assuming membership in the Settlement Class, none of the objections are meritorious.

---

[12]  Three objections are not counted because the objections were withdrawn or because the same person filed an exclusion request.  Mr. Anklowitz and Mr. Dlott withdrew their objections (Dkts. 740 and 750) after speaking with Class Counsel. *See* Dkts. 741 and 752.  Mrs. Sivilich submitted an objection (Dkt. 738) and also a separate, timely request for exclusion from the Settlement.  *See* Devery Decl., at n.4, Ex. H (annexing exclusion requests).  A class member cannot opt-out and maintain standing to object.  *See In re Luckin Coffee Inc. Sec. Litig.*, No. 20-cv-1293(JPC), 2021 U.S. Dist. LEXIS 125376, at *8 (S.D.N.Y. July 6, 2021) ("Courts regularly hold that one who opts out of the class lacks standing to object."); *see also* Dkt. 736 (*PA Order*), ¶ 25 (same). To preserve her stated preference to not waive her claims, Mrs. Sivilich is being counted as an opt-out and not as an objector.  Even still, her objection that she found the postcard difficult to read is not a basis for not finally approving the Settlement.  The Court-approved postcard notice was in a font size regularly used in class action settlements, and is necessary to include the information that must provided to Settlement Class Members.  *See* Devery Decl., at n. 4.

[13]  Class Counsel wrote to all the objectors offering to discuss the Settlement and their objections.  *See* Tusa Decl., ¶ 5 and Ex. B (attaching letters).  Except for an email received from Messrs. Cabane and Halpert, none responded.

2417538.10

### 1.      Mr. Amado's Objection Should be Overruled.

Mr. Amado objects that the robo-calls at issue in this case are a "nuisance" which do "not negatively affect one's life in any way." Dkt. 743. He describes the lawsuit as "frivolous," positing that it may cause National Grid to increase his utility rates. *Id.* Plaintiffs believe the Settlement's substantial monetary and non-monetary benefits are the opposite of frivolous. While Mr. Amado does not believe robo-calls are particularly problematic, most everyone else, including Congress and the Supreme Court, disagrees. *See Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020) ("Americans passionately disagree about many things. But they are largely united in their disdain for robocalls."). Further, National Grid cannot increase utility rates without state regulatory approval, even if National Grid tried to offset the settlement costs in that manner.

### 2.      Mr. Bronner's Objection Should be Overruled.

Mr. Bronner objects that the TCPA does not apply to certain types of calls. *See* Dkt. 737. For example, he does not believe that calls made to forwarded cell phone numbers, or calls made over wireless networks are actionable under the TCPA. *See id.* Those are not objections to the Settlement, so much as arguments that Congress should amend the statute, because each of these types of calls are redressable by the TCPA. *See e.g., Zondlo v. Allied Interstate, LLC*, 290 F. Supp. 3d 296 (M.D. Pa. 2018) (judgment awarded in TCPA case for calls to ported cell phone number); *Rivero v. America's Recovery Sols., LLC*, No. 13-cv-3359(ENV)(LB), 2015 U.S. Dist. LEXIS 176449 (E.D.N.Y. Nov. 30, 2015) *adopted by* 2016 U.S. Dist. LEXIS 22562 (E.D.N.Y. Feb. 14, 2016) (judgment awarded in TCPA case for wireless network calls).

Further, Mr. Bronner's assertion that the Settlement will pay "approximately $10 per customer" is not accurate. Only Settlement Class Members, not all "customers," can file claims. Settlement Class Members that file claims will receive an estimated $50 each. Tusa Decl., ¶ 8; *see also* Section IV.C.2 above (detailing monetary relief in other TCPA class settlements).

### 3. Mr. Wilson's Objection Should be Overruled.

Mr. Wilson does not believe the TCPA should be enforced, especially against debt collectors. *See* Dkt. 739.  He is entitled to that opinion, but that is not a basis to deny Settlement approval.

### 4. Messrs. Cabane's and Halpert's Objection Should be Overruled.

Messrs. Cabane and Halpert first object to Class Counsel's attorneys' fee and expenses motion, maintaining without support that the requested fee is "excessive."  Dkt. 745 at 1.  Not so. The objection fails, among other reasons, because it examines the amounts requested divorced from the actual and significant time and effort expended by Class Counsel over seven years and on a purely contingent basis with no guarantee of success.  It also ignores the important results Class Counsel achieved on behalf of the Settlement Class, and the risks averted.  Among other things, they do not mention the significant non-monetary, business practice changes required by the Settlement. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) (affirming fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund").  As demonstrated in detail in Class Counsel's Fee Motion, the requested request fee is more than reasonable under either the percentage or lodestar methodologies.  Dkt. 742 (*Mem. in Support of Fee Motion*) at 11-23 (citing decisions).  Where Class Counsel's lodestar approximately equals the requested fee, like here, such fee requests are nearly always found to be reasonable.  *Id.* at 22-23 ("The trivial [1.1] multiplier in this case, which may become a negative multiplier before the case in concluded, is well below the range of multipliers regularly approved by courts in the Second Circuit pursuant to lodestar cross checks of percentage-of-fund awards.") (citing cases).  Class Counsel's lodestar only marginally exceeded the requested fee when they filed their Fee Motion in April 2022, and is now even less given ongoing work performed by Class Counsel since that time as they continued to oversee implementation of the Settlement and dissemination of notice.  As to their objection over Class Counsel's hourly-rates, Class Counsel has also proven their rates to be in-line

(or less) than rates approved in other similar settlements within this Circuit. *See* Dkt. 742 (Fee Motion) at 21-22 (citing decisions). Those rates would have been reasonable even using this Court's analysis in a 10-year old decision. *In re Pall Corp.*, No. 07-cv-3359(JS)(ARL), 2013 U.S. Dist. LEXIS 89537, at *10-11 (E.D.N.Y. June 25, 2013) (Seybert, J.) (noting that "'Courts regularly award lodestar multipliers from two to six times lodestar" and approving class counsel billing rates "ranging from $125 to $880 per hour") (quoting *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-cv-0486, 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012) and citing *In re Converse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *4-5 (E.D.N.Y. June 24, 2010)).

Second, Messrs. Cabane's and Halpert's objection to the requested service awards is mistaken: Plaintiffs do not request $55,000 service awards for each one of the Plaintiffs, but a total of $55,000 ($10,000 to each Plaintiff except Ms. MacKenzie, who requests $5,000). *See* Dkt. 742 at 1, 24. These objectors acknowledge the requested awards are reasonable. *See* Dkt. 745 at 1 ($2500-$10,000 service awards "may be appropriate.").

Third, they object that the Settlement is unclear as to whether they may submit a claim without waiving their objections. *See* Dkt. 754 at 3. On May 13, 2022, Class Counsel responded to them in writing that it was permissible to do both. *See* Tusa Decl. at Ex. B.

Fourth, Mr. Cabane and Mr. Halpert believe the per-claimant settlement recovery should be higher. But as discussed above, considering the risks the Settlement provides an excellent recovery. In addition, the per-claimant recovery is a product of the robust notice regime implemented by Angeion, which led to the submission of a high number of claims. *See Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14-cv-4382(LGS), 2015 U.S. Dist. LEXIS 90117, at *6 (S.D.N.Y. July 9, 2015). Plaintiffs should not be faulted for these exceptional results. Nevertheless, if Messrs. Cabane and Halpert want to file their own claims seeking higher individual damages they could have opted-out of the Settlement to do so. *See e.g.*, *In re Nissan Radiator*, No. 10-cv-7493 (VB), 2013 U.S. Dist.

LEXIS 116720, at *33 (S.D.N.Y. May 30, 2013) (Class Members here have the ability to opt-out if they do not like the terms of the settlement.").

Finally, Messrs. Cabane and Halpert object to class certification arguing that varying content of the robo-calls defeats typicality.  *First*, they are mistaken, as all Settlement Class Members received calls related to the payment of a utility account.  *See* Agmt., ¶ 2.30.  *Second*, the content of calls made to cells phones in a TCPA case will not destroy typicality.  *See Eldridge v. Pet Supermarket, Inc.*, No. 18-cv-22531, 2019 U.S. Dist. LEXIS 142999, at *14-16 (S.D. Fla. Aug. 21, 2019); *Clough v. Revenue Frontier, LLC*, No. 17-cv-411-PB, 2019 U.S. Dist. LEXIS 102436 (D.N.H. June 19, 2019).

## V.   **CONCLUSION**

For all of these reasons, Plaintiffs and Class Counsel submit that the Settlement is fair, reasonable, and adequate and they respectfully request that the Court grant final approval to the proposed Settlement Agreement and enter the proposed *Final Order and Judgment* annexed as **Exhibit A** to the Notice of Motion or such other final order and judgment adjudicating those same results.

DATED:  June 7, 2022

Respectfully submitted,

**TUSA P.C.**

By:  _/s/_ Joseph S. Tusa
Joseph S. Tusa
joseph.tusapc@gmail.com
55000 Main Road
P.O. Box 566
Southold, NY  11971
Tel. (631) 407-5100

25

**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**
Jonathan D. Selbin
Email: jselbin@lchb.com
Douglas I. Cuthbertson
Email: dcuthbertson@lchb.com
John T. Nicolaou
Email: jnicolaou@lchb.com
Avery S. Halfon
Email: ahalfon@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500

- and –

Daniel M. Hutchinson (*pro hac vice*)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

*Attorneys for Plaintiffs*
*Class Counsel*